Adam M. Apton (SBN 316506)
**LEVI & KORSINSKY LLP**
Email: aapton@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel:  (213) 985-7290

*Attorneys for Plaintiff Sergio Vazquez*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO VAZQUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MASIMO CORPORATION, JOSEPH KIANI, MICAH YOUNG<br><br>Defendants. | Master File No.  '23CV1546 L    DEB<br><br>**CLASS ACTION**<br><br>**COMPLAINT FOR VIOLATION OF THE FEDERAL SECURITIES LAWS**<br><br>**DEMAND FOR JURY TRIAL**<br><br>Judge: |

Plaintiff Sergio Vazquez ("Plaintiff"), individually and on behalf of all other persons similarly situated, by their undersigned attorneys, alleges in this Complaint for violations of the federal securities laws (the "Complaint") the following based upon knowledge with respect to their own acts, and upon facts obtained through an investigation conducted by his counsel, which included, *inter alia*: (a) review and analysis of relevant filings made by Masimo Corporation. ("Masimo" or the "Company") with the United States Securities and Exchange Commission (the

1

"SEC"); (b) review and analysis of Masimo's public documents, conference calls, press releases, and stock chart; (c) review and analysis of securities analysts' reports and advisories concerning the Company; and (d) information readily obtainable on the internet.

Plaintiff believes that further substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery. Most of the facts supporting the allegations contained herein are known only to the defendants or are exclusively within their control.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of all investors who purchased or otherwise acquired Masimo common stock between February 28, 2023 and July 17, 2023, inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws (the "Class").

2.      Defendants provided investors with material information concerning Masimo's revenue and sales for the second quarter of fiscal 2023 and expected revenue for the full-year 2023. Defendants' statements included, among other things, Masimo's ability to deliver clinically proven new products to the healthcare markets thereby supporting Defendants' decision to forecast revenue of $550 million to $565 million for the quarter and *increase* its earnings-per-share estimates to between $3.59 per share and $3.69 per share. Defendants' statements in this regard prompted an immediate and dramatic increase in the price of Masimo's common stock. From a closing price of $167.31 per share on February 28, 2023 at the start of the Class Period, Masimo's stock price climbed to $184.97 per share the following day on March 1, 2023 on unusually high volume.

3.      Defendants provided these overwhelmingly positive statements to investors while, at the same time, disseminating materially false and misleading

statements and/or concealing material adverse facts. This caused Plaintiff and other shareholders to purchase Masimo's securities at artificially inflated prices.

4.     The truth emerged on July 17, 2023, when Masimo issued a press release announcing its second quarter 2023 earnings. Defendants announced lower than expected revenue for the second quarter of fiscal 2023 and preliminarily decreased full-year revenue estimates for both healthcare and non-healthcare segments.

5.     Investors and analysts reacted immediately to Masimo's revelation. The price of Masimo's common stock declined dramatically. From a closing market price of $147.16 per share on July 17, 2023, Masimo's stock price fell to $117.73 per share on July 18, 2023, a decline of nearly 20% in the span of just a single day.

## **JURISDICTION AND VENUE**

6.     Plaintiff brings this action, on behalf of himself and other similarly situated investors, to recover losses sustained in connection with Defendants' fraud.

7.     The claims asserted herein arise under and pursuant to §§10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. §240.10b-5).

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§1331 and 1337, and Section 27 of the Exchange Act, 15 U.S.C. §78aa.

9.     Venue is proper in this District pursuant to §27 of the Exchange Act and 28 U.S.C. §1391(b), as Defendant Masimo is headquartered in this District and a significant portion of its business, actions, and the subsequent damages to Plaintiff and the Class, took place within this District.

10.     In connection with the acts, conduct and other wrongs alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including but not limited to, the United States mail,

interstate telephone communications and the facilities of the national securities exchange.

## THE PARTIES

11.     Plaintiff purchased Masimo common stock at artificially inflated prices during the Class Period and was damaged upon the revelation of the Defendants' fraud. Plaintiff's certification evidencing his transaction(s) in Masimo is attached hereto.

12.     Masimo Corporation is a Delaware corporation with its principal executive offices located at 52 Discovery, Irvine, California 92618. During the Class Period, the Company's common stock traded on the NASDAQ Stock Market (the "NASDAQ") under the symbol "MASI."

13.     Defendant Joseph Kiani ("Kiani") was, at all relevant times, the Chairman of the Board and Chief Executive Officer of Masimo.

14.     Defendant Micah Young ("Young") was, at all relevant times, the Executive Vice President, Chief Administrative Officer and Chief Financial Officer of Masimo.

15.     Defendants Kiani and Young are sometimes referred to herein as the "Individual Defendants." Masimo together with the Individual Defendants are referred to herein as the "Defendants."

16.     The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Masimo's reports to the SEC, press releases, and presentations to securities analysts, money and portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available

to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

17.    Masimo is liable for the acts of the Individual Defendants, and its employees under the doctrine of respondeat superior and common law principles of agency as all the wrongful act complained of herein were carried out within the scope of their employment with authorization.

18.    The scienter of the Individual Defendants, and other employees and agents of the Company are similarly imputed to Masimo under respondeat superior and agency principles.

## SUBSTANTIVE ALLEGATIONS

### A.    Company Background

19.    Masimo is a global medical technology company that develops, manufactures, and markets a variety of noninvasive monitoring technologies. In 2022, the Company announced a change in its organizational structure creating two reportable segments, healthcare and non-healthcare, designed to accelerate growth strategies and strengthen its focus on patient care.

20.    The Company's healthcare business segment consists of patient-monitoring technologies, hospital automation and connectivity solutions, remote monitoring devices, and consumer health products. These products are sold to hospitals, emergency medical providers, home care providers, physician offices, veterinarians, long-term care facilities, and consumers through the company's direct sales force, distributors, and original equipment manufacturer partners.

21.     Masimo's non-healthcare business segment consists of premium and luxury audio, and related integration technologies. These consumer audio products are sold direct-to-consumers or through authorized retailers and wholesalers.

**B.**     **The Defendants Materially Misled Investors Concerning Masimo's Second Quarter Earnings and 2023 Full Year Guidance**

*February 28, 2023*

22.     On February 28, 2023, before the market opened, Masimo issued a press release announcing its fourth quarter and full-year 2022 financial results. The press release also provided Masimo's first quarter and full-year financial guidance for 2023, stating in pertinent part:

> Joe Kiani, Chairman and Chief Executive Officer of Masimo, said, "2022 was a momentous year for Masimo. Our healthcare business outperformed expectations. We continued to innovate and deliver clinically proven new products in our professional healthcare markets. In addition, we accelerated our strategy to capture the vast consumer health market opportunity with the acquisition of Sound United and the introduction of new wearable technologies such as our W1™ biosensing watch. The acquisition has provided us with immediate scale across consumer engineering, sales, marketing and distribution that would have otherwise taken many years of dilutive investment to build. Instead, we've already completed the integration and are working to realize the tremendous potential of the hearables, wearables and telemonitoring markets unlocked by our unique combination of healthcare and consumer technology capabilities."
>
> . . .

6

**First Quarter 2023 and Full-Year 2023 Financial Guidance**

The Company provided the following estimates for its full-year 2023 guidance:

| (in millions, except earnings per diluted share) | Q1 2023 Guidance[1] | | Updated Full-Year 2023 Guidance[1] | |
|---|---|---|---|---|
| | GAAP | Non-GAAP | GAAP | Non-GAAP |
| Consolidated revenue | $550 to $565 | $550 to $565 | $2,415 to $2,460 | $2,415 to $2,460 |
| Healthcare revenue | $340 to $345 | $340 to $345 | $1,450 to $1,465 | $1,450 to $1,465 |
| Non-healthcare revenue | $210 to $220 | $210 to $220 | $965 to $995 | $965 to $995 |
| Consolidated operating profit | $43 to $46 | $72 to $75 | $319 to $324 | $400 to $405 |
| Consolidated earnings per diluted share | $0.41 to $0.46 | $0.81 to $0.86 | $3.59 to $3.69 | $4.70 to $4.80 |

(1) Updated guidance provided February 28, 2023.

- For our healthcare segment, our first quarter and full-year 2023 revenue guidance includes year-over-year foreign currency headwinds of $5.0 million and $3.0 million, respectively.

23.    On the same day, Defendants held an earnings call that included Defendants Kiani and Young on behalf of Masimo. During the call, Defendants Kiani and Young provided analysts with detailed information concerning the Company's ability to deliver clinically proven new products in the professional healthcare markets and insight into the Company's projections for the upcoming fiscal year. These statements misled investors by failing to disclose material information concerning Defendants' inability to accurately project sales and revenue.

24.    During opening remarks, Young stated as follows:

Fiscal year 2022 was a dynamic year as we position our company for success in capturing profitable share within the massive new markets for wearables, hearables, and telemonitoring. We achieved reported revenues of $2.036 billion and pro forma revenues of $2.293 billion, representing 11% constant currency growth.

We also delivered operating profit dollar growth of 23% and EPS growth of 15%. Considering we are integrating the new consumer business over the past year, we view these results as a great achievement for the Masimo team around the world.

Now, I'd like to provide an update on our full year 2023 financial guidance that we initially outlined at our Investor Day back on

7

December 13th. For the full year 2023, we are now projecting a consolidated revenue range of $2.415 billion to $2.460 billion, representing 6% to 8% growth on a pro forma and constant currency basis.

Compared to our prior guidance, this represents an increase of $73 million at the midpoint of the range which is comprised of an increase of $58 million due to foreign exchange improvement and an increase of $15 million due to our improved sales expectations.

For our Healthcare segment, we are now projecting revenues of $1.450 billion to $1.465 billion, representing 8% to 10% constant currency growth. This represents an increase of $23 million at the midpoint of our guidance range.

For the Consumer Non-Healthcare segment, we are projecting -- we are now projecting revenues of $965 million to $995 million, representing 2% to 5% constant currency growth. This represents an increase of $50 million at the midpoint of our guidance range.

We are also projecting consolidated non-GAAP operating profit ranging from $400 million to $405 million, representing 10% to 12% growth. This represents an increase of $35 million at the midpoint of our guidance range due to foreign exchange improvement and improved operational expectations.

Moving further down the P&L. We are now projecting non-operating expense of $46 million to $48 million which reflects higher interest expense on the portion of our debt that has a floating rate and we are projecting a tax rate of 26.5% and weighted average shares outstanding of 55 million.

Based on these assumptions, we are projecting a non-GAAP EPS range of $4.70 to $4.80. Compared to prior guidance, this represents an increase of $0.40 at the midpoint of the range due to foreign exchange improvement and improved operational expectations partially offset by the higher interest expense.

. . .

8

As you can see our outlook for 2023 reflects solid growth in the business, while incorporating the strategic investments required to deliver on our consumer health initiatives and build a strong foundation for sustainable growth.

25.     During the question-and-answer segment of the call, Defendant Young perpetuated the false impression they gave to several analysts investors during their opening remarks. Defendant Young stated in pertinent part as follows:

<Q: Marie Thibault -BTIG- analyst> Okay. That's very good to hear. Thanks for that helpful detail. Like Rick said, there's a lot of good topics here, but maybe I'll leave some juicy ones for my peers. And just try to better understand, the $15 million that you called out that you increased guidance by in addition to the FX benefit or the FX lesser headwind, what really drove that improved sales expectation? It certainly sounds like you had a really strong finish to the year, but was there something more to it? Thanks for taking the questions.

<A: Micah Young> No, I think as we start to look, Marie, we had a strong finish to the year. So we basically are holding our top-line guidance from a standpoint of growth rate. So, we're still feeling very good about 2023. It's going to be an exciting year for us, and as we get closer to these product launches, it's giving us more confidence. ***So we're holding that overall growth rate of 6% to 8%, 8% to 10% for healthcare and about 2% to 5% for non-healthcare.*** And on the non-healthcare side, the Consumer Audio we're just being thoughtful that we mentioned at Investor Day. We – thoughtful and prudent about the guidance. We'll see how things play out but right now those premium and luxury brands of Bowers & Wilkins Denon and Marantz are holding up very well.

(Emphasis added.)

26.     Defendants' false and/or materially misleading statements were material. Indeed, Defendants' statements on February 28, 2023 prompted an immediate rise in the price of Masimo's stock. From a closing price of $167.31 per share on February 28, 2023, Masimo's stock price climbed to $175.93 the following day on March 1, 2023 on unusually high volume. The truth about Masimo's revenue

shortfall and Defendants' forecasting processes would have altered the total mix of information available to investors. Defendants failed to disclose this information and, in so doing, allowed the statements they made to be materially misleading.

*May 9, 2023*

27.    On May 9, 2023 before the market opened, Masimo issued a press release announcing its first quarter 2023 financial results. The press release stated, in pertinent part, that:

> Joe Kiani, Chairman and Chief Executive Officer of Masimo, said, "We started 2023 with solid performance. New hospital wins and strong uptake of rainbow® Pulse CO-Oximetry, Nomoline® Capnography, Sedline® and O3® brain monitoring drove double-digit constant currency growth in our healthcare segment and helped us beat expectations. Our consumer business also came in ahead of expectations due to higher-than-expected demand for out hearables. Our consumer health strategy is building momentum, with Opioid Halo™, Stork™ and Freedom™ now available for pre-order. ***Our strong performance this quarter reflects our long track record of innovation in our professional healthcare business, our thoughtful stewardship of our established luxury and premium consumer audio brands, and our progress marrying the two to build a trusted, clinically proven consumer health business.***"

(Emphasis added.)

28.    The press release further stated the Company's updated full-year financial guidance for 2023:

**Updated Full-Year 2023 Financial Guidance**

The Company provided the following estimates for its updated full-year 2023 guidance:

| (in millions, except earnings per diluted share) | Updated Full-Year 2023 Guidance[(1)] | |
| --- | --- | --- |
| | GAAP | Non-GAAP |
| Consolidated revenue | $2,415 to $2,460 | $2,415 to $2,460 |
| Healthcare revenue | $1,450 to $1,465 | $1,450 to $1,465 |
| Non-healthcare revenue | $965 to $995 | $965 to $995 |
| Consolidated operating income | $309 to $314 | $400 to $405 |
| Consolidated earnings per diluted share | $3.46 to $3.55 | $4.70 to $4.80 |

[(1)] Guidance provided May 9, 2023.

- For our healthcare segment, full-year 2023 revenue guidance includes year-over-year foreign currency headwinds of $3 million.

29.     On the same day the Company released its first quarter 2023 earnings, Masimo hosted an earnings call that included Defendants Kiani and Young. During the call, Young commented on the Company's financial strength and continuing growth:

> For the first quarter, we achieved consolidated revenue of $565 million and non-GAAP earnings per share of $0.87. For our healthcare segment, first quarter revenues were $347 million, representing 16% constant currency growth . . . . For our non-healthcare segment, first quarter revenues were $218 million, representing an expected decline of 9% on a pro forma and constant currency basis. This was in line with our guidance as this business faced a tough year-over-year comparison due to the fulfillment of backordered products in the prior year quarter that drove 22% constant currency growth, right before the acquisition closed.
>
> . . .
>
> ***To summarize, we delivered first quarter results at the high end of our guidance as our healthcare business again realized steady gains in market share across the portfolio. In our non-healthcare segment, we saw impressive growth from our hearables products despite a difficult year-over-year comparison.*** And we have an exciting lineup of new products rolling out this year, that will help us advance our strategy, drive long-term growth and improve lives whether in the home or in the hospital.

11

(Emphasis added.)

30.     During the question-and-answer segment of the call, Defendants Kiani and Young reaffirmed Masimo's projection for the 2023 full-year guidance, stating in part:

> <Q: Mike Matson -Needham & Company- analyst> So I know there was an earlier question but I guess I want to get more specific the consensus I'm looking at it's $591 million of revenue a $1.11 on EPS. Is that -- are you guys comfortable with that? Do you think the street has analysts have modeled it correctly for the second quarter?
>
> <A: Joe Kiani> Yeah. I think Mike when I look at the numbers right now, it looks like there was a consideration for the seasonality of both businesses where they traditionally stepped down in Q2. And the comps from last year if you -- as I mentioned before healthcare is up against a 19% comp on the growth rate last year in Q2 and non-healthcare is up against a 10% comp in Q2 last year.
>
> So I think you've got to look at that consider that we still will see pretty heavy year-over-year currency headwinds as well similar to what we saw in Q1. And then of course the -- it starts to turn I believe into more of a tailwind in the back half on currency. So make sure that you're thinking through that as well.
>
> <A: Micah Young> Yes. But we reiterated the full year guidance. So while the quarters might not be exactly the way you guys have put out there we feel really good about the whole year.

<u>June 8, 2023</u>

31.     Masimo presented at the Jefferies Healthcare Conference on June 8, 2023. During the call, Eli Kammerman, Masimo's VP of Business Development & Investor Relations, was asked about the "materiality" of Masimo's hospital automation product line and its growing potential. Kammerman stated:

> Yes. Hospital automation today accounts for roughly 2 to 3 percentage points of our Healthcare segment sales. ***And it's growing in a***

12

***somewhat lumpy fashion because of the long-term nature of the selling cycle, but the growth rate is in the neighborhood of 20% to 40%.*** So it is a meaningful chunk of the business, and it will become a meaningful contributor to growth over the next few years.

(Emphasis added.)

32.     During the question-and-answer segment of the call, Kammerman

discussed Masimo's sensor sales growth for the upcoming year:

<Q: Matthew Charles Taylor -Jefferies LLC- analyst> And we're almost out of time, but maybe I'll just ask you for some thoughts on the current health care environment because your sensors are kind of a proxy for utilization in some ways. And so maybe you could talk about any trends that you've seen throughout the first part of the year here. And how you expect that to continue to evolve as it relates to both your sensor growth but also your OEM partners and how they can place boxes and help you to pull through more sensors.

<A: Eli Kammerman> Yes, you're right in saying that our sensor sales are tied to overall sensors in the hospitals. Our sensors are used with both surgery patients as well as medical treatment patients. And so you can see that hospital traffic is really the key variable there. Hospital traffic now has basically gotten back to trend line growth as you can see in the hospital reports coming out quarterly. ***We're looking at sensors growth in the range of 1% to 3% nowadays.***

So it's made a nice recovery from the levels during COVID when people were postponing a lot of elective surgeries. ***For us, the key metric to look at for forecasting our growth is the installed base growth. And there, we're tracking very much on trend at about 7%.*** Some of the OEM monitoring companies had some hiccups with installations over the past 18 months. But a lot of those have now been addressed. They had supply chain problems themselves. ***So at this stage, I would say, things have gotten largely back to normal.***

(Emphasis added.)

13

33.     Further, Jefferies analyst key takeaways from the conference include, in part, "1) Hospital traffic has returned to trendline growth with census growth at 1-3%, good for sensors and MASI's HC business; 2) MASI is excited about new consumer offerings including hearables, baby monitor, and watches. 3) Sound high-end brands are holding up well so far…"

34.     The above statements in Paragraphs 22 to 33 were false and/or materially misleading because Defendants misled investors by creating the false impression that they possessed reliable information pertaining to the Company's sales pipeline. This was false. Defendants' forecasting processes failed to adequately account for potential loss of sensor sales among Masimo's customers, as well as the potential decline in demand for premium and luxury audio categories. Alternatively, Defendants deliberately ignored the decline in sales. In either event, Defendants misled investors by providing the public with materially flawed revenue guidance for fiscal 2023.

35.     The truth about Masimo's sales forecasts was material to investors. Revenue is one of the most important metrics relied upon by investors when evaluating a company. Had investors known that Masimo's projections were inaccurate and that Defendants were incapable of developing accurate projections, investors would have taken different actions with regard to their positions in Masimo stock. The truth about Masimo's projections and forecasting capabilities would have altered the total mix of information concerning Masimo stock available to investors.

**C.      Masimo Reveals that Second Quarter Earnings Will Fall Significantly Below Previous Estimates**

*July 17, 2023*

36.     On July 17, 2023, after the market closed, Masimo issued a press release announcing its preliminary earnings results for the second quarter of fiscal

14

2023 and expected revenue for the full-year. The press release stated, in pertinent part, that:

> Masimo expects its consolidated revenue for the second quarter 2023 to range from $453 million to $457 million, with healthcare revenue expected to range from $280 million to $282 million and non-healthcare revenue expected to range from $173 million to $175 million.

> Though the healthcare business made significant market share gains through new contracting in the second quarter, *healthcare revenue for the second quarter 2023 was lower than expected due to multiple factors,* including the following:

> - Large orders that were anticipated for the second quarter were delayed to the second half of the year.

> - *Single-patient use sensor sales were down due to:*

>   o *Lower than expected U.S. hospital inpatient census, which drives usage of single-patient use sensors; and*

>   o *Elevated sensor inventory levels at some customers due to discounting in prior quarters, which was discontinued during the second quarter, and the abnormally early end of the flu season, which faded quickly in the first quarter this year.*

> - *Conversions of new customers who have contracted to switch to Masimo were less than expected due to labor shortages in hospitals, and our OEM partners not being able to provide the patient monitoring equipment needed to complete the installations in a timely manner.*

> - Continued increased hospital labor costs have strained hospital budgets, lowering demand for capital equipment in the second quarter.

> *Non-healthcare revenue for the second quarter 2023 fell below expectations* as the decline in demand previously seen in lower-end

15

consumer audio categories extended into the premium and luxury audio categories and across more geographies.

(Emphasis added.)

37.    Investors and analysts reacted immediately to Masimo's revelation. The price of Masimo's common stock declined dramatically. From a closing market price of $147.16 per share on July 17, 2023, Masimo's stock price fell to $117.73 per share on July 18, 2023, a decline of nearly 20% in the span of just a single day. Masimo's stock price continued to fall on July 19, 2023 declining to $112.28 per share. Trading volume for both days was unusually high, reaching 7 million shares on July 18, 2023 and 2.5 million shares on July 19, 2023.

38.    A number of well-known analysts who had been following Masimo downgraded the Company's stock and/or lowered their price targets in response to Masimo's disclosures. For example, Jefferies lowered its price target for Masimo's stock, as well as sales estimates and EPS estimates "to reflect the 2Q pre and some ongoing softness in HC through '23 and non-HC through early '24." Jefferies also identified Masimo's "pipeline setbacks, regulatory delays, increased competition, and macro headwinds" as a basis for lowering its price target.

39.    BTIG similarly lowered its price target for Masimo stock. In its report, BTIG acknowledged "a loss of management credibility and think the stock price, down 25% after market, may take months to regain footing."

40.    Piper Sandler reported it was planning to "re-evaluate" Masimo's price target. The report stated "we're not often left flummoxed, but today's pre-announcement certainly qualifies. For the second time in five quarters, MASI meaningfully missed sensor revenue expectations (today's announced shortfall is >2x that of 1Q-22), and the multitude of factors cited for a business with a strong history of predictability raises several questions. The most relevant are: 1) the persistence of elevated channel inventory (and secondarily how/why this inventory

managed to move as high as it did), and 2) whether hospital census is finally 'normalizing' after experiencing a multi-year benefit from COVID-related hospitalizations."

41.     Raymond James further reported "we did not expect a 2Q shortfall of this magnitude (-17% miss), as over two-thirds of the HC business is recurring and historically, MASI has been very good at forecasting the business."

42.     The fact that these analysts, and others, discussed Masimo's revenue shortfall and missed projection shows that the investing public placed great weight upon Masimo's prior revenue and sales estimates. The frequent, in-depth discussion of Masimo's guidance confirms that Defendants' statements during the Class Period were material.

**D.     Loss Causation and Economic Loss**

43.     During the Class Period, as detailed herein, Masimo and the Defendants made materially false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the price of Masimo's common stock and operated as a fraud or deceit on Class Period purchasers of Masimo's common stock by materially misleading the investing public. Later, when Masimo and Defendants' prior misrepresentations and fraudulent conduct became apparent to the market, the price of Masimo's common stock materially declined, as the prior artificial inflation came out of the price over time. As a result of their purchases of Masimo's common stock during the Class Period, Plaintiff and other members of the Class suffered economic loss, *i.e.,* damages under federal securities laws.

44.     Masimo's stock price fell in response to the corrective event on July 17, 2023, as alleged *supra*. On July 17, 2023, Defendants disclosed information that was directly related to their prior misrepresentations and material omissions concerning Masimo's forecasting processes and 2023 full-year financial guidance.

17

45.     In particular, on July 17, 2023, Masimo reduced the lower end of full year revenue guidance for the healthcare business to $1.30 billion from $1.45 billion. The Company also announced a reduction in annual revenue guidance for the non-healthcare business to $800 million to $850 million from $965 million to $995 million.

**E.     Presumption of Reliance; Fraud-On-The-Market**

46.     At all relevant times, the market for Masimo's common stock was an efficient market for the following reasons, among others:

(a)     Masimo's common stock met the requirements for listing and was listed and actively traded on the NASDAQ during the Class Period, a highly efficient and automated market;

(b)     Masimo communicated with public investors via established market communication mechanisms, including disseminations of press releases on the national circuits of major newswire services and other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services;

(c)     Masimo was followed by several securities analysts employed by major brokerage firms who wrote reports that were distributed to the sales force and certain customers of their respective brokerage firms during the Class Period. Each of these reports was publicly available and entered the public marketplace; and

(d)     Unexpected material news about Masimo was reflected in and incorporated into the Company's stock price during the Class Period.

47.     As a result of the foregoing, the market for Masimo's common stock promptly digested current information regarding the Company from all publicly available sources and reflected such information in Masimo's stock price. Under these circumstances, all purchasers of Masimo's common stock during the Class

Period suffered similar injury through their purchase of Masimo's common stock at artificially inflated prices, and a presumption of reliance applies.

48.     Alternatively, reliance need not be proven in this action because the action involves omissions and deficient disclosures. Positive proof of reliance is not a prerequisite to recovery pursuant to ruling of the United States Supreme Court in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972). All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered the omitted information important in deciding whether to buy or sell the subject security.

**F.     No Safe Harbor; Inapplicability of Bespeaks Caution Doctrine**

49.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the material misrepresentations and omissions alleged in this Complaint. As alleged above, Defendants' liability stems from the fact that they provided investors with revenue projections while at the same time failing to maintain adequate forecasting processes. Defendants provided the public with forecasts that failed to account for this decline in sales and/or adequately disclose the fact that the Company at the current time did not have adequate forecasting processes.

50.     To the extent certain of the statements alleged to be misleading or inaccurate may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements.

51.     Defendants are also liable for any false or misleading "forward-looking statements" pleaded because, at the time each "forward-looking statement" was made, the speaker knew the "forward-looking statement" was false or misleading and the "forward-looking statement" was authorized and/or approved

by an executive officer of Masimo who knew that the "forward-looking statement" was false. Alternatively, none of the historic or present-tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by the defendants expressly related to or stated to be dependent on those historic or present-tense statements when made.

## CLASS ACTION ALLEGATIONS

52.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired Masimo's common stock during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosure. Excluded from the Class are defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which defendants have or had a controlling interest.

53.    The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Masimo's common stock were actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified from records maintained by Masimo or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. As of May 10, 2023, the date of the Company's last quarterly or annual report within the Class Period, there were 52.7 million shares of

the Company's common stock outstanding. Upon information and belief, these shares are held by thousands, if not millions, of individuals located throughout the country and possibly the world. Joinder would be highly impracticable.

54. Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

55. Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation. Plaintiff has no interests antagonistic to or in conflict with those of the Class.

56. Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of Masimo;

(c) whether the Individual Defendants caused Masimo to issue false and misleading financial statements during the Class Period;

(d) whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

(e) whether the prices of Masimo's common stock during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

(f) whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

21

57.     A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

## COUNT I

### *Against All Defendants*

### ***for Violations of Section 10(b) and Rule 10b-5 Promulgated Thereunder***

58.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

59.     This Count is asserted against defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

60.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon. Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Masimo common stock; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Masimo's securities at

artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

61.    Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for Masimo's securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about the Company.

62.    By virtue of their positions at the Company, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of defendants were committed willfully or with reckless disregard for the truth. In addition, each defendant knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

63.    Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within defendants' knowledge and control. As the senior managers and/or directors of the Company, the Individual Defendants had knowledge of the details of Masimo's internal affairs.

64.    The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly,

23

control the content of the statements of the Company. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to Masimo's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Masimo's common stock was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning the Company which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Masimo's common stock at artificially inflated prices and relied upon the price of the common stock, the integrity of the market for the common stock and/or upon statements disseminated by Defendants, and were damaged thereby.

65. During the Class Period, Masimo's common stock was traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Masimo's common stock at prices artificially inflated by defendants' wrongful conduct. Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said common stock, or would not have purchased or otherwise acquired them at the inflated prices that were paid. At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Masimo's common stock was substantially lower than the prices paid by Plaintiff and the other members of the Class. The market price of Masimo's common stock declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

66.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

67.    As a direct and proximate result of defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's common stock during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT II

### *Against The Individual Defendants and Masimo*
### *For Violations of Section 20(a) of the Exchange Act*

68.    Plaintiff repeats and realleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

69.    During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information about Masimo's misstatements.

70.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information, and to correct promptly any public statements issued by Masimo which had become materially false or misleading.

71.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which Masimo disseminated in the marketplace during the Class Period concerning the misrepresentations. Throughout the Class Period, the Individual Defendants exercised their power and

authority to cause Illumina to engage in the wrongful acts complained of herein. The Individual Defendants therefore, were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Masimo's common stock.

72.     Each of the Individual Defendants, therefore, acted as a controlling person of the Company. By reason of their senior management positions and/or being directors of the Company, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, Masimo to engage in the unlawful acts and conduct complained of herein. Each of the Individual Defendants exercised control over the general operations of the Company and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

73.     By reason of the above conduct, the Individual Defendants and/or Masimo are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demand judgment against defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representatives;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class pre-judgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.    Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  August 22, 2023                   Respectfully Submitted,

**LEVI & KORSINSKY, LLP**


*/s/ Adam M. Apton*
Adam M. Apton
Email: aapton@zlk.com
445 South Figueroa Street, 31st Floor
Los Angeles, CA 90071
Tel:  (213) 985-7290

*Attorneys for Plaintiff Sergio Vazquez*

27