

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

SERGIO VAZQUEZ, Individually and on Behalf of All Others Similarly Situated,

Plaintiff,

v.

MASIMO CORPORATION, JOSEPH KIANI, MICAH YOUNG, BILAL MUHSIN, AND ELI KAMMERMAN,

Defendants.

Case No.:  3:23-cv-01546-L-DEB

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS**

**[ECF No. 38]**

In this putative securities class action, Lead Plaintiffs Boston Retirement System ("BRS"), Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan (the "CPTPF Defined Benefit Plan"), and Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan 1987 (the "CPTPF Retirement Plan") (collectively, "Plaintiffs" or "Lead Plaintiffs") allege that Defendants Masimo Corporation ("Masimo"), Joseph Kiani, Micah Young, Bilal Muhsin, and Eli Kammerman (collectively, "Defendants") made repeated material misrepresentations and concealed material facts related to Masimo's core healthcare unit and its non-healthcare unit following the Company's acquisition of consumer audio firm, Sound United.  Defendants here filed the instant motion to dismiss the complaint, arguing that Plaintiffs failed to plead falsity and failed

to plead a strong inference of scienter. (ECF No. 38.)  Plaintiffs filed an opposition (ECF No. 42), and Defendants replied (ECF No. 44).  The Court decides the matter on the papers submitted without oral argument.  *See* Civ. L.R. 7.1(d.1).  For the reasons which follow, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART.

## I.    BACKGROUND[1]

### 1. The Parties

Lead Plaintiffs purchased shares of Masimo common stock during the class period and were allegedly damaged by misrepresentations and omissions made by Defendants about the state of Masimo.  Lead Plaintiffs seeks to represent a putative class of all persons and entities, other than those excluded by definition, that purchased or otherwise acquired the publicly traded common stock of Masimo during the period from May 4, 2022, through August 8, 2023, inclusive (the "Class Period").

Defendant Masimo Corporation is a Delaware corporation with its headquarters located at 52 Discovery, Irvine, California 92618.  Defendant Joseph Kiani ("Kiani") founded Masimo in 1989.  Kiani was, at all relevant times, Masimo's founder, CEO, and Chairman.  Defendant Micah Young ("Young") was, at all relevant times, Masimo's CFO.  Defendant Bilal Muhsin ("Muhsin") was, at all relevant times, Masimo's COO.  Prior to his role as COO, Muhsin was the EVP of Engineering, Marketing, and Regulatory Affairs, following several Engineering leadership roles in his more than twenty years at the Company.  Defendant Eli Kammerman ("Kammerman") has served as Vice President, Business Development and Investor Relations since 2009.

### 2. Masimo Corporation's Business and Acquisition of Sound United

According to Plaintiffs, Masimo is a global medical technology company that develops, manufactures, and markets a variety of non-invasive monitoring technologies.

---

[1]    Reviewing Defendants' motion to dismiss, the Court accepts as true all facts alleged in the complaint and construes them in the light most favorable to Plaintiff. *See Snyder & Assocs. Acquisitions LLC v. United States*, 859 F.3d 1152, 1157 (9th Cir. 2017).  Unless otherwise noted, all facts are taken from the amended complaint.  (ECF No. 28.)

Masimo was founded by Defendant Kiani in 1989 and remained private, under Kiani's leadership, for eighteen years until going public on August 8, 2007. Currently, Masimo employs over 6,000 employees across twenty-seven offices. Prior to 2022, Masimo's business solely focused on its products related to healthcare. Masimo developed and sold patient-monitoring technologies, hospital automation and connectivity solutions, remote monitoring devices, and consumer health products. Masimo's most successful and well-known product is its SET pulse oximeter and is most often seen as a version that attaches to a patient's fingertip to retrieve data. Masimo describes the SET pulse oximetry product line, which measures through motion and low perfusion arterial blood oxygen saturation and pulse rate monitoring, as its "core business." Masimo sells its healthcare products to hospitals, emergency medical providers, home care providers, physician offices, veterinarians, long-term care facilities, and consumers through the Company's direct sales force, distributors, and original equipment manufacturer partners.

Masimo acquired a consumer audio company called Sound United in 2022 in an all-cash deal for $1.025 billion, the largest deal in Masimo's history. Sound United had never been involved in health care products. In a company press release dated February 15, 2022, Kiani stated that "Masimo shares Sound United's commitment to providing innovative, best-in-class products and experiences, with a relentless focus on improving the consumer experience." In the same press release, Kiani touted the purported benefits of the acquisition to Masimo's business including Sound United's direct-to-consumer relationships and product distribution expertise.

As currently made up, Masimo is a technology company that is divided into two discrete segments: (1) healthcare; and (2) non-healthcare, consisting of what was formerly Sound United. According to Masimo's 2023 Form 10-K, its "healthcare business develops, manufactures and markets a variety of noninvasive patient monitoring technologies, hospital automation and connectivity solutions, remote monitoring devices and consumer health products." Masimo's "non-healthcare consumer audio business

develops, manufactures, markets, sells and licenses premium and luxury audio, and related integration technologies."

### 3. Alleged Fraud[2]

The Class Period in this case begins after the acquisition of Sound United by Masimo. Plaintiffs allege that "Masimo struggled to integrate Sound United into Masimo" and that "Sound United's accounting practices fell below the standards required for a public company and utilized 'plugs' to ensure that reported financial figures met expectations." (ECF No. 28 at 27.) Furthermore, Plaintiffs allege troubles in Masimo's healthcare segment: "Masimo's healthcare segment struggled to sell new products as the marketplace refused to adopt their technologies and new long-term contracts, as the Company's inventory of single-use sensors ballooned." (*Id*.)

### 4. Masimo Updates Guidance

Plaintiffs allege that the truth began to emerge on July 17, 2023, when "Masimo issued a preannouncement of its second quarter 2023 earnings and revealed a substantial cut to its full-year guidance due to weaknesses in both its healthcare and SU segments, including a decline in single-patient use sensor sales driven in part by '[e]levated sensor inventory levels [] due to discounting' and a 'decline in demand [for] premium and luxury audio categories.'" (ECF No. 42 at 18.) The stock declined over the next two days of trading from $147.16 per share on July 17, 2023 to a close of $112.28 per share on July 19, 2023. (*Id*. at 19.) Further, "on August 8, 2023, after the market closed, Masimo released its second quarter 2023 earnings release detailing consolidated revenue of $455.3 million, including a 21% decline in healthcare and a 17% percent decline in non-healthcare, and Defendant Kiani announced a $100 million reduction in expenses due to the revenue shortfall." (*Id*.) This news caused Masimo's stock to fall from $120.00 per share to $117.96 per share. (*Id*.)

---

[2] As relevant, each specific incident of alleged fraud is discussed below.

## II.    **LEGAL STANDARDS**

### 1. **Motion to Dismiss**

Pursuant to Federal Rule of Civil Procedure 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief may be granted.  Because Plaintiffs have brought their claims as a federal securities fraud action, Plaintiffs are not subject to the notice pleading standards under Federal Rule of Civil Procedure 8(a)(2), which require litigants to provide "a short and plain statement of the claim showing that the pleader is entitled to relief."  Instead, Plaintiffs must "meet the higher, [more] exacting pleading standards of Federal Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act (PSLRA)."  *Or. Pub. Emp. Ret. Fund v. Apollo Group Inc.*, 774 F.3d 598, 603–04 (9th Cir. 2014) ("*Apollo Group*").[3]

Under Federal Rule of Civil Procedure 9(b), "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."  Plaintiffs must include "an account of the time, place, and specific content of the false representations" at issue.  *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007).  Rule 9(b)'s particularity requirement "applies to all elements of a securities fraud action."  *Apollo Group*, 774 F.3d at 605.  "PSLRA imposes additional specific pleading requirements, including requiring plaintiffs to state with particularity both the facts constituting the alleged violation and the facts evidencing scienter."  *In re Rigel Pharmaceuticals, Inc. Sec. Litig.*, 697 F.3d 869, 877 (9th Cir. 2012).  In order to properly allege falsity, "a securities fraud complaint must ... specify each statement alleged to have been misleading, [and] the reason or reasons why the statement is misleading."  *Id.*  In addition, in order to "adequately plead scienter under the PSLRA, the complaint must state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind."  *Id.*

---

[3]    Unless stated otherwise, internal ellipses, brackets, citations, and quotation marks are omitted from citations.

For purposes of ruling on a Rule 12(b)(6) motion, the Court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party."  *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  Nonetheless, the Court is not required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'"  *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)).  Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss."  *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004).  Furthermore, "'a plaintiff may plead [him]self out of court'" if he "plead[s] facts which establish that he cannot prevail on his ... claim."  *Weisbuch v. Cty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (quoting *Warzon v. Drew*, 60 F.3d 1234, 1239 (7th Cir. 1995)).

### 2.  Leave to Amend

"If a complaint is dismissed for failure to state a claim, leave to amend should be granted 'unless the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency.'"  *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992) (quoting *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986)).  "A district court does not err in denying leave to amend where the amendment would be futile."  *Id.*

### III.    JUDICIAL NOTICE AND INCORPORATION BY REFERENCE

Defendants request the court consider 14 exhibits, totaling 190 pages, through judicial notice and incorporation by reference.  (ECF No. 38-3 (Request for Judicial Notice); ECF Nos. 38-5 to 38-18 (Exhibits 1-14).)  These documents encompass: (1) Masimo's earnings call transcripts (Exs. 2-3, 8, 10, 12-13); (2) Masimo's presentation transcripts at investor conferences (Exs. 6, 9, 14); (3) Masimo's quarterly reports that were filed on SEC Form 10-Qs (Exs. 4-5); (4) Masimo's annual reports that were filed on SEC Form 10-Ks (Exs. 1, 11); and (5) certain SEC Form 4s that were filed by Defendant Kiani (Ex. 7).  Plaintiffs oppose the request for consideration under the incorporation by

reference and judicial notice doctrines, arguing that "Defendants abuse the judicial notice and incorporation-by-reference doctrines by offering documents as exhibits to submit their alternative version of the facts for purposes of disputing the Complaint's well-pled factual allegations."  (ECF No. 43 at 3.)

Generally, a district court may not consider material outside the pleadings when considering a Rule 12(b)(6) motion to dismiss.  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  Otherwise, the motion is converted into one for summary judgment.  *See* Fed. R. Civ. P. 12(d).  There are two relevant exceptions to this rule: "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322 (2007).

A court may take judicial notice of a fact "that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(b).

Under the incorporation by reference doctrine, while the mere mention of the existence of a document is insufficient to incorporate the contents of a document, the document is incorporated when its contents are described and the document is integral to the complaint.  *Tunac v. United States*, 897 F.3d 1197, 1207 n.8 (9th Cir. 2018).  The incorporation by reference doctrine "prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims."  *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018).  However, it "is not a tool for defendants to short-circuit the resolution of a well-pleaded claim," for example, by attempting to use a document that is not mentioned in the complaint "to insert their own version of events into the complaint to defeat otherwise cognizable claims."  *See id.* at 1002-03.  Although a court may assume the contents of an incorporated document are true for the purposes of a motion to dismiss, "it is improper to assume the truth of an incorporated document if such

assumptions only serve to dispute facts stated in a well-pleaded complaint." *See id.* at 1003.

The Ninth Circuit has identified a "concerning pattern in securities cases": parties "exploiting these procedures improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id*. at 998.  Although these doctrines "do have roles to play at the pleading stage," the court noted that the "overuse and improper application of judicial notice and the incorporation-by-reference doctrine ... can lead to unintended and harmful results," including "premature dismissals of plausible claims that may turn out to be valid after discovery." *See id.*  The court specifically referenced the "alluring temptation" defendants face "to pile on numerous documents to their motions to dismiss to undermine the complaint." *Id.*

All the documents requested to be considered by Defendants are properly incorporated by reference, subject to judicial notice, or both.  However, the documents may not be used to dispute well-pleaded facts.

SEC filings are the proper subjects of judicial notice as they are not subject to reasonable dispute. *See Dreiling v. American Exp. Co.*, 458 F.3d 942, 946 n.2 (9th Cir. 2006).  Accordingly, the Court will grant Defendants' request to take judicial notice of the SEC Form 10-Qs, 10-Ks, and 4s (Exs. 1, 4, 5, 7, 11).  However, the Court does not consider the contents of the documents for the truth of the matters asserted therein.  *See In re Bare Escentuals, Inc. Sec. Litig.*, 745 F. Supp. 2d 1052, 1067 (N.D. Cal. 2010) (granting defendants' request to take judicial notice of SEC filings but specifying that they will not "where inappropriate" be considered for the truth of the matter asserted).  Further, the Masimo earning call transcripts (Exs. 2-3, 8, 10, 12-13) and Masimo Presentation transcripts (Exs. 6, 9, 14) are properly considered by judicial notice.  *See Mallen v. Alphatec Holdings, Inc*., 861 F. Supp. 2d 1111, 1122–23 n.5 (S.D. Cal. 2012) (Press releases and transcripts of conference calls properly subject to judicial notice when not subject to reasonable dispute).

Additionally, Exhibits 1-6, 8-10, and 12-14 are incorporated by reference in the Complaint. The complaint quotes and references these documents extensively, including Masimo's Form 10-Q, Form 10-K, earnings conference calls, and investor presentation during the class period. (ECF No. 28 at ¶¶ 77, 81, 90, 256, 260- 72, 277-88, 291-96, 299-306, 320-22, 326-34, 337-339, 341-43, 354-59, 371.) The contents of these documents may not be used to dispute well-pleaded allegations in the Complaint; however, the documents may be properly used to provide full context to documents referred to by Plaintiffs. *See Khoja*, 899 F.3d at 1002 (The incorporation by reference doctrine may not be used for defendants "to insert their own version of events into the complaint to defeat otherwise cognizable claims" but may be used to "prevent[] plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.").

## IV.    DISCUSSION

Plaintiffs allege two causes of action: (1) violation of § 10(b) of the Exchange Act and Rule 10b-5 against all Defendants, and (2) violation of § 20(a) of the Exchange Act against the Individual Defendants. The Court addresses each cause of action in turn.

### 1.   Violation of § 10(b) of the Exchange Act and Rule 10b-5

Section 10(b) of the Exchange Act declares it "unlawful ... to use or employ, in connection with the purchase or sale of any security registered on a national securities exchange ... any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors." 15 U.S.C. § 78j(b). "Rule 10b-5 implements Section 10(b) by making it unlawful '[t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.'" *Glazer Cap. Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 764 (9th Cir. 2023) (quoting 17 C.F.R. § 240.10b-5(b)). "To plead a claim under section 10(b) and Rule 10b-5, Plaintiff must allege: (1) a material misrepresentation or omission; (2) scienter; (3) a connection

between the misrepresentation or omission and the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation." *Apollo Group*, 774 F.3d at 603. Defendants argue that Plaintiffs' complaint should be dismissed because (1) the complaint fails to allege a false or misleading statement; and (2) the complaint fails to allege scienter. Defendants do not, at this time, contest a connection between the misrepresentation or omission and the purchase or sale of a security, reliance, economic loss, or loss causation.

### a. Material Misrepresentation or Omission

Section 10(b) and Rule 10b-5 require a plaintiff to show that the defendant made a statement that was false or misleading as to a material fact. *Basic Inc. v. Levinson*, 485 U.S. 224, 238 (1988). "Falsity is alleged when a plaintiff points to defendant's statements that directly contradict what the defendant knew at that time." *Khoja*, 899 F.3d at 1008. "Even if a statement is not false, it may be misleading if it omits material information." *Id.* at 1008–09. "[A] statement is misleading if it would give a reasonable investor the 'impression of a state of affairs that differs in a material way from the one that actually exists.' " *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017) (alteration in original) (quoting *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 985 (9th Cir. 2008)). "Courts apply the objective standard of a 'reasonable investor' to determine whether a statement is misleading." *In re Splunk Inc. Sec. Litig.*, 592 F. Supp. 3d 919, 932 (N.D. Cal. 2022). There is no requirement of a "strong inference of fraud." *Glazer Cap. Mgmt., L.P.*, 63 F.4th at 766. Instead, "[f]alsity is subject to a particularity requirement and the *reasonable inference* standard of plausibility set out in *Twombly* and *Iqbal*[.]" *Id.* (emphasis in original).

Plaintiffs allege that 40 statements contain material misrepresentations or omissions regarding Masimo's historical financial performance, Masimo's prospects for future performance, the Sound United acquisition, and Masimo's disclosure controls. The Court need not exhaustively, at the motion to dismiss stage, determine if each

statement identified is a material misrepresentation or omission.  If Plaintiffs can plead a

single material misrepresentation or omission, they are able to defeat the motion to

dismiss on this ground.  *See In re: Bofi Holding, Inc. Sec. Litig*., No.

315CV02324GPCKSC, 2016 WL 5390533, at *8 (S.D. Cal. Sept. 27, 2016) ("Plaintiffs

need only plead a single materially false misrepresentation to survive a motion to

dismiss."); *see also Feyko v. Yuhe Intern., Inc*., 2013 WL 816409, at *4 n.2 (C.D. Cal.

Mar. 5, 2013) (same).

### i. Past Performance Statements

Plaintiffs allege that Defendants made statements about past financial

performances that were false or materially misleading because they failed to "disclos[e]

material information about how that performance was achieved."  (ECF No. 42 at 21.)

Plaintiffs allege that various statements made by Defendants were false, including

Defendant Kiani's statement on May 3, 2022 that Masimo "experienced strong demand

for [its] products" in the first quarter of 2022, Defendant Young's statement on May 3,

2022 that, but for supply chain issues, "[Masimo] would have exceeded [its] revenue and

earnings expectations," and Defendant Muhsin's statement on December 13, 2022 that

the SET oximetry business was "continuing to win business from [its] competitors."

(ECF No. 28 at ¶¶ 257, 264, 310.)

According to Plaintiffs, these statements are false and misleading because they are

inconsistent with "internal information known and concealed by Defendants throughout

the Class Period, as described by several Confidential Witnesses ("CWs") from different

areas of the Company and from different geographic regions."  (ECF No. 42 at 22.)

Specifically, Plaintiffs allege that Defendants failed to include the necessary information

that "(i) [Masimo] had begun offering larger discounts to customers to take excess

product (sometimes above the amount in customer contracts or orders) leading to

overstuffed inventories at Masimo's customers; and (ii) this deep discounting, while not

improper on its own, was severely cannibalizing future product demand," and that "the

healthcare sales team was experiencing pushback from customers unwilling to sign new

multi-year contracts and unwilling to order Masimo healthcare devices other than the core SET pulse oximetry devices."[4]  (*Id*. at 21-22.)

First, Plaintiffs have failed to show, even assuming Defendants failed to disclose discounts, there was anything improper about this practice or that it led to Defendants' statements being materially false or misleading.  *See, e.g., City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, 2019 WL 6877195, at *11, n.7 (N.D. Cal. Dec. 17, 2019) ("Securities laws' purpose is not to police customer discounts.").  Further, Plaintiff's allegations are insufficiently plead as they fail to meet the particularity requirements for a securities action.  *Apollo Group*, 774 F.3d at 605.  Plaintiffs allege that "[d]uring the Class Period, the Company had begun offering larger 'discounts' to customers," but fail to state when, or how much, these discounts are.  Plaintiffs rely on CW-2, who states that "in 2022" he was directed to "offer discounts" to hospital customers.  (ECF No. 28 at ¶¶ 248, 253.)  These allegations fall far short of the necessary particularity to show that Defendants' statements were false or misleading about demand simply because they did not disclose discounting practices.

Second, Plaintiffs' allegations regarding Defendants' difficulties selling "Masimo devices outside of the core SET pulse oximetry devices" does not render Defendants statements materially misleading or false as the challenged statements make no mention of Masimo's ability to sell its non-core products.  (*See* ECF No. 28 at ¶ 268(c).)

---

[4]      In Plaintiff's complaint, he also alleges that the past performance statements were false and materially misleading due to Defendants utilizing accounting "plugs" and Sound United experiencing "ballooning inventory."  However, Plaintiff only addresses discounting affecting future demand and pushback from customers on signing multi-year contracts on non-core SET pule oximetry devices in his opposition to the motion to dismiss. Accordingly, Plaintiff waives any argument that Defendants utilizing accounting "plugs" and Sound United experiencing "ballooning inventory" as reasons why the past performance statements are false or misleading.  *See Allen v. Dollar Tree Stores, Inc.*, 475 F. App'x. 159, 159 (9th Cir. 2012) (affirming district court's dismissal of plaintiff's claims in which plaintiff's "opposition to the motion to dismiss failed to respond to [the defendant's] argument.").

Third, Plaintiffs' have included no facts that show how Defendant Muhsin's statement on December 13, 2022, that the SET oximetry business was "continuing to win business from [its] competitors" is materially misleading or false.

Finally, Plaintiffs' allegations regarding "Masimo's healthcare sales team [] encountering serious pushback from customers" for the "Company's new five-year contracting terms because customers did not want be locked into a contract for that long," also do not render Defendants statements materially misleading or false. Plaintiffs do not explain how customers unwillingness to commit to five-year contracts makes statements about Masimo's past performance false. Further, this statement about "Masimo's healthcare sales team" stems from a single sales rep who worked as a "Territory Manager for Alternate Care," who stated that in 2021 (which predates the class period), "respiratory therapists, nurse managers, and purchasing managers were reluctant to commit to 5-year deals." (*Id.* at ¶¶ 235-246.) Plaintiffs cannot rely on a single sales rep who encountered sales difficulties to show that Defendants' company wide past performance statements were false or materially misleading. Accordingly, Masimo's past performance statements are not adequately alleged to be false or misleading.

### ii. Future Performance Statements

Plaintiffs allege that "Defendants made false and misleading statements about Masimo's prospects for growth that were false and misleading due to improper accounting practices, including 'plugs' at SU."[5] (ECF No. 42 at 22-23.) For example, in

---

[5] In Plaintiffs' complaint, they also allege that the future performance statements were false and materially misleading due to Defendants utilizing discounts and not reporting sales difficulties. However, in Plaintiffs' opposition to the motion to dismiss, they only discuss accounting and internal control issues as the reason for why Masimo's growth prospects were false. (*See* ECF No. 42 at 22-23.) Plaintiffs' only mention of discounts or sales difficulties is the final sentence of the section, when they state that there was "declining demand for healthcare products, which were well documented internally," without any citations to the complaint. Further, Plaintiffs fail to respond to Defendants' arguments that any discounting or declining demand was not relevant to the challenged statements. (See ECF No. 38-1 at 21-24.) Accordingly, Plaintiffs waive their arguments that discounting practices or sales difficulties show that Defendants' future performance statements were false or misleading. *See Allen*, 475 F. App'x. at 159.

Masimo's Q2 2022 earnings press release, Masimo included guidance for the third quarter of 2022 and full year of 2022, including "guidance for legacy Sound United of $195 million to $215 million for the third quarter of 2022 and $655 million to $700 million for the full year 2022." (ECF No. 28 at ¶ 274.) According to Plaintiffs:

> Defendants knew or deliberately disregarded that the use of "plugs" at legacy Sound United to balance and close its books manipulated and artificially inflated the Company's overall financial results. Indeed, each month, Sound United recorded "plug" entries altering, among other things, Sound United's cost of goods sold and inventory because otherwise Sound United's accounting records could not be balanced. These monthly "plug" entries occurred in amounts up to $14 million—well in excess of the Sound United financial statement materiality threshold of $2 million. As confirmed by former Sound United and Masimo employees, the "plug" was a COGS credit that artificially inflated Sound United's margins with the offset going to inventory, the motive of which was to meet forecasted numbers for non-healthcare/legacy Sound United.

(*Id.* at ¶ 276 (footnote omitted).)

Plaintiffs rely in part on CW-14, the "Vice President Finance & Global Controller at Sound United from September 2021 until his departure from Masimo." (*Id.* at ¶ 54.) CW-14 stated that Defendant Young "personally sent directives to enter a cost of goods sold credit with a debit to inventory that juiced the margins to ensure SU met its forecasts." (ECF No. 42 at 15 (citing ECF No. 28 at ¶ 161).) According to CW-14, "Sound United was plugging as much as $9 million a month into the books as part of the closing process." (ECF No. 28 at ¶ 162.) The "plugs" were "generally recorded as a credit to Cost of Goods Sold (COGS) and a debit to Inventory," and that the "manipulation of Sound United's financial close numbers continued after the Sound United acquisition." (*Id.*)

Defendants argue that Plaintiffs fail to allege falsity with particularity with respect to the "plugs." (ECF No. 44 at 12-13.) Defendants contend that CW-14 "explained his 'concerns' to Masimo's independent auditor, and they 'signed off on the earnings anyway,' Opp. at 7, a concession that destroys all suggestion that Masimo made false

statements about financial performance." (*Id*. at 13.) However, on a motion to dismiss, the Court does not weigh factual disputes and accepts well-pleaded facts that comply with the heightened pleading standards of the PSLRA and Federal Rule of Civil Procedure 9(b). *See Apollo Group Inc.*, 774 F.3d at 603–04. Here, Plaintiffs sufficiently allege with particularity that Masimo utilized "plugs," that made their margins appear to be stronger than they were, and that as a result, at least one of Defendants forward-looking statements about legacy Sound United's projected earnings was materially false or misleading.[6] Accordingly, Plaintiffs meets their burden of alleging a false or misleading statement relating to the future performance statements.

### iii.  Sound Acquisition Statements

During the Class Period, Defendants made various statements about the process of integration between Masimo and Sound United. For example, Defendant Kiani in the first quarter earnings release on May 3, 2022, stated that Masimo was "deeply engaged in combined efforts [with Sound United] to generate some exciting new products launches in consumer health & wellness." (ECF No. 28 at ¶ 257.) Defendant Young was asked about the status of the integration of Sound United into Masimo on November 15, 2022, at the Stifel Healthcare Conference and he stated "[t]he back office, we've been integrating more to the back office. That's been driving some efficiencies there for us. We're through the majority of the integration. So we still have some systems integrations that we need to work through, but it's going very well so far." (*Id*. at ¶ 304.) As part of the fourth quarter earnings press release on February 28, 2023, Defendant Kiani stated about the integration that "… we've already completed the integration and are working to

---

[6]    The Court need not consider every challenged statement as a Plaintiff only needs to sufficiently plead one false or misleading statement to proceed on this element. *See In re: Bofi Holding, Inc. Sec. Litig*., No. 315CV02324GPCKSC, 2016 WL 5390533, at *8 (S.D. Cal. Sept. 27, 2016) ("Plaintiffs need only plead a single materially false misrepresentation to survive a motion to dismiss."). Defendants contend that other future performance statements are either protected under the PSLRA's safe harbor provision or are protected opinions. As Plaintiff has adequately alleged at least one future performance statement, the Court does not consider whether other statements are protected under the PSLRA's safe harbor provision or are protected opinions.

realize the tremendous potential of the hearables, wearables and telemonitoring markets unlocked by our unique combination of healthcare and consumer technology capabilities."  (*Id.* at ¶ 324.)  Further, on the earnings call that same day, Kiani repeated "we've already completed the integration of Sound United[.]"  (*Id.* at ¶ 326.)

Plaintiffs allege that these statements about integration were materially false because "Defendants had no roadmap or integration plan following the Sound United acquisition and no integration plans were ever put in place throughout the Class Period" and "[a]s a result of the lack of roadmap and integration plan, the two segments (Masimo healthcare and legacy Sound United) remained almost completely segregated throughout the Class Period."  (*Id.* at ¶ 259.)

In support of these allegations, Plaintiffs rely on CW-14 and CW-15, who was the Vice President of Finance Transformation and Risk in Masimo's legacy Sound United segment from July 2022 to August 2023.  (*Id.* at ¶ 54-55.)  According to CW-14, "following Masimo's acquisition of Sound United, there was no intercompany consolidation."  (*Id.* at ¶ 179.)  According to CW-14, they "never observed any synergies between the two companies during his time at Masimo nor were there any efforts to integrate the two accounting groups. CW-14 recalled that there was 'only' a $40,000 intracompany booking between legacy Sound United and healthcare by the time CW-14 left Masimo in August 2023, with $80,000 or $90,000 pending."  (*Id.*)  Further, according to CW-15, "there was 'very little' or no integration between Masimo and Sound United from a finance standpoint and 'less so' from an IT and operations perspective. CW-15 added that during his tenure, there were never any common projects or synergies between the two segments."  (*Id.* at 180.)

Defendants argue that these statements are not materially false.  First, with regards to Defendant Kiani's statements in the first quarter earnings release on May 3, 2022, they argue that these statements were not in relation to integration at all, but about new products the combined companies were working to develop.  (ECF no. 38-1 at 30.) Defendants' points to the earnings call transcript from this date, and the announcement of

products such as a biosensing watch and augmented hearing devices. (*Id.*) Second, they argue that the challenged statements in November 2022 and February 2023 are not false. Defendants characterize Plaintiff's challenge to these statements being that Defendants did not mention that Masimo's healthcare business had begun offering discounts and was encountering pushback on new contract terms, and because Kiani had fired Sound United's former CEO months before. (*Id.*) Further, they argue that CW-15's allegations are immaterial as Kiani said nothing about "finance" or "IT" or "operations" integration. (*Id.*)

The Court finds that Plaintiffs have adequately alleged at least some of the statements regarding integration as material misrepresentations. While Defendant Kiani's statement in the first quarter earnings release on May 3, 2022, shown in its full context, likely relates to the products such as the biosensing watch and augmented hearing devices and is not adequately alleged as a misrepresentation, the other statements listed above are not similarly limited and plausibly relate to the integration of the two businesses as a whole. Based on the confidential witness claims, Plaintiffs have adequately alleged at the motion to dismiss stage that these statements are misrepresentations, as large sections of the integration were still in the fledgling stages. Especially in the context of a merger that was touted as Masimo being able to utilize Sound United's "direct-to-consumer relationships and product distribution expertise," Defendants' broad comments on being through the "majority" of the integration and the "completion" of the integration between the two companies is adequately alleged to be a material misrepresentation when the Plaintiff has alleged that much of the integration work had not been done and the two companies were acting independently. (*See* ECF No. 28 at ¶ 67.) Accordingly, Plaintiffs meets their burden of alleging a false or misleading statement relating to the Sound United Acquisition.

### iv. Internal Control Statements

Plaintiffs challenge Masimo's statement in four different Form 10-Q's that, "[w]e maintain disclosure controls and procedures that are designed to ensure that information

required to be disclosed in our reports filed under the Securities Exchange Act of 1934, as amended (the Exchange Act), is recorded, processed, summarized and reported within the time periods specified in the Securities and Exchange Commission's (SEC) regulations, rules and forms and that such information is accumulated and communicated to our management, including our CEO and Chief Financial Officer (CFO), as appropriate, to allow for timely decisions regarding required disclosure." (ECF No. 38 at ¶¶ 260, 287, 298, 341.)

According to Plaintiffs, this is misleading because Defendants "failed to disclose a known and pervasive lack of internal controls and inadequate accounting practices that hindered the integration, as well as SU's operations." (ECF No. 42 at 28.) However, Plaintiffs concede in their complaint that Masimo is not required to provide disclosures regarding Sound United's "Effective internal control over financial reporting" ("ICFR") and "disclosure controls and procedures" ("DCP") until one year after the acquisition. (ECF No. 38 at ¶ 116.) Further, in the same 10-Q's that Plaintiffs argue are misleading for failing to disclose Sound United's supposed internal control issues, Masimo states that its internal-controls assessment "does not include Sound United." (ECF No. 38-5 at 26.) Plaintiff fails to respond to Defendants' argument that these statements were not misleading on this ground. Plaintiffs contend that "misleading statements about the strength of a company's internal controls can be misleading." (ECF No. 42 at 26.) However, Plaintiffs fail to point out any statements that Defendants actually make about Sound United's internal controls. Accordingly, Masimo's disclosure controls statements are not adequately alleged to be false or misleading.

### b. Scienter

Under the PSLRA, a plaintiff must "with respect to each act or omission . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). A strong inference is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *See Tellabs, Inc.,*, 551 U.S. at 314; *see also*

18

*Reese v. Malone*, 747 F.3d 557, 569 (9th Cir. 2014), *overruled on other grounds by City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605 (9th Cir. 2017) (same).  The relevant inquiry is "whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Tellabs, Inc.*, 551 U.S. at 322–24.

As to the meaning of "scienter," the Ninth Circuit has held that a plaintiff's complaint must show that "the defendants made false or misleading statements either intentionally or with deliberate recklessness." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 990-91 (9th Cir. 2009), *as amended* (Feb. 10, 2009).  "[F]acts showing mere recklessness or a motive to commit fraud and [the] opportunity to do so" are insufficient.  *Id.*  "To meet this pleading requirement, the complaint must contain allegations of specific contemporaneous statements or conditions that demonstrate the intentional or the deliberately reckless false or misleading nature of the statements when made." *Ronconi v. Larkin*, 253 F.3d 423, 432 (9th Cir. 2001). When an omission is at issue, "the plaintiff must plead a highly unreasonable omission, involving not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Zucco*, 552 F.3d at 991.

In determining whether a claim satisfies this standard on a motion to dismiss, the court first determines "whether any of the plaintiff's allegations, standing alone, [are] sufficient to create a strong inference of scienter."  *In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056 (9th Cir. 2014).  If no allegation alone is sufficient, the court must engage in a "comparative assessment" that considers all the facts alleged in a complaint, "collectively" and "holistically."  *Tellabs, Inc.*, 551 U.S. at 326–27; *see also In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1056 (The court must "consider the allegations holistically to determine whether they create a strong inference of scienter taken

together.").  This analysis involves considering the plaintiff's preferred inference of fraud and plausible opposing inferences and nonculpable explanations for the defendant's conduct.  *Id.*

Plaintiffs allege in the complaint that Defendants acted with scienter, as evidenced by: (a) the confidential witness reports detailed in the complaint; (b) the Individual Defendants' close monitoring of Masimo's sales and accounting metrics; (c) the magnitude of the Sound United acquisition, the market's reaction to the announcement of the acquisition, and Defendants' knowledge, throughout the Class Period, of severe internal control issues at legacy Sound United; (d) Defendants' reaction to, including later dismissal of, one key financial employee for his refusal to sign a SOX sub-certification; and (e) the fact that the Defendants' statements concerned key aspects of the Company's business.[7]  (ECF No. 28 at ¶ 360.)

Defendants argue that Plaintiffs fail to plead scienter.  They argue that: (a) Defendants had no motive to commit fraud; (b) that the confidential witnesses do not support a strong inference of scienter; (c) that Plaintiff's allegations lack particularized facts as to each Individual Defendant, (d) that allegations of scienter based on the focus of the Sound United acquisition fail to meet pleading requirements; (e) that the core operations doctrine is inapplicable; (f) and that the Sarbanes-Oxley certificate allegations actually show a lack of scienter.  (ECF No. 38-1 at 34-40.)  Defendants argue that the more compelling inference from Plaintiffs' allegations are that Defendants acted in good faith.  (*Id.* at 40.)

Plaintiffs do not appear to argue that any allegation, standing alone, is sufficient to plead scienter.  *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d at 1056.  Accordingly, they must show that "consider[ed] holistically," all of the allegations lead to "a strong

---

[7]      In opposing Defendants' motion to dismiss, Plaintiffs focus on Defendants' access to information, the confidential witness allegations, the specificity of Defendants' false statements, and the core operations doctrine.  Accordingly, Plaintiffs have waived arguments for scienter not mentioned in their motion.  *See Image Tech. Serv., Inc. v. Eastman Kodak*, 903 F.2d 612, 615 n. 1 (9th Cir. 1990).

inference of scienter taken together.  *Id*.  First, Plaintiffs argue that "Defendants Kiani, Young, Muhsin, and Kammerman had access to the undisclosed information that rendered their statements misleading, thereby raising a strong inference of scienter." However, access to information alone is not enough to lead to an inference of scienter. *See City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 620 (9th Cir. 2017) (finding that allegations of "actual access to the disputed information" may raise a strong inference of scienter, but that there is not a strong inference of scienter when Defendant had "direct access" to disputed information but there are no allegations that they "personally accessed" it).

Plaintiffs also allege that "Defendants Kiani, Young, and Muhsin also attended a variety of regular meetings at Masimo where the weaknesses in internal controls, declines in revenue, and the stalled status of the integration were discussed."  (ECF No. 42 at 35.) However, the information alleged to be available to Defendants in these meetings did not relate to the "plugs" or the state of the Sound United integration, the two areas that the Court has found that Plaintiffs have alleged materially false or misleading.  (*See* ECF No. 28 at ¶¶ 192-207.)

Plaintiffs also allege that the CW statements establish a strong inference of scienter.  Plaintiffs allege that Defendant Young was directly involved in the use of "plugs" to balance Sound United's books and to improve margins, creating an appearance that Sound United was doing better than it was.  According to CW-14, Defendant Young would directly send him "topsides" or "plugs" to book as journal entries to make the accounting work.  (*Id*. at ¶ 161.)  CW-14 described the "plug" as a cost of goods sold credit that "juiced the margins," "the motive of which was to make forecasted numbers for legacy Sound United."  (*Id*.)  CW-14 recalled that "Sound United was plugging as much as $9 million a month into the books as part of the closing process," and that "the manipulation of Sound United's financial close numbers continued after the Sound United acquisition."  (*Id*. at ¶ 162.)  When CW-14 noted that "we weren't going to make the numbers," then Defendant Young "redid capitalization based on a model he

developed," and sent CW-14 "a $4.2 million journal entry to add to topside" to balance the books. (*Id.*) CW-14 described these adjustments as "11th hour topside entries," "always occurring a day or two before everything had to be final during his tenure." (*Id.* at ¶ 163.)

Plaintiffs also argue that "Defendants' specific misstatements about matters they purportedly knew regarding the SU acquisition and the performance of the Healthcare Unit's sales strongly support an inference of scienter." (ECF No. 42 at 38.) However, this vague assertion with no reference to any particular statement lacks the specificity needed to plead scienter as required by the PSLRA. *See In re Rigel Pharmaceuticals, Inc. Sec. Litig.*, 697 F.3d at 877 (Facts surrounding scienter required to be plead with particularity).

Plaintiffs also argue the core operations doctrine supports a finding of scienter. Under the core operations theory, "[a]llegations regarding management's role in a corporate structure and the importance of the corporate information about which management made false or misleading statements may also create a strong inference of scienter when made in conjunction with detailed and specific allegations about management's exposure to factual information within the company." *S. Ferry LP, No. 2 v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008). Plaintiffs argue that "Masimo's sales of products through both its healthcare and non-healthcare segments were critical to the Company's continued success," and thus management should know about "of stagnating and falling demand for Masimo's products and the ballooning inventory caused by SU's internal controls weaknesses and excessive discounting in the healthcare segment." (ECF No. 42 at 38.) However, these areas do not relate to the allegations that were sufficiently plead—that accounting "plugs" were used that made future performance statements misleading and that integration efforts were not as they seemed—and thus the core operations theory cannot support scienter.

Defendants argue that Plaintiff's "fraud theory makes no sense," because Plaintiffs do not allege a motive and did not show that Defendants made any stock sales during the

class period.  While a motive, such as stock sales during the class period, can lead to a strong inference of scienter, "the absence of a motive allegation is not fatal." *Tellabs, Inc.*, 551 U.S. at 325.

On balance, the Court finds that Plaintiffs have adequately plead scienter as to Defendant Young.  As alleged, Defendant Young was aware, and in fact directed, the use of "plugs" to balance Sound United's books, thus showing a strong inference of scienter. However, Plaintiffs have failed to plead scienter as to any of the other Individual Defendants, as they are not alleged with particularity to have made false or misleading statements either intentionally or with deliberate recklessness.[8]

### c.  Conclusion

As Plaintiffs have alleged at least some of the challenged statements are materially misleading or false and have adequately alleged scienter as to Defendants Young and Masimo, the Court declines to dismiss the claim for a violation of § 10(b) of the Exchange Act and Rule 10b-5.  However, the Court dismisses the claim for a violation of § 10(b) as to the other Individual Defendants.

### 2.  Violation of § 20(a) of the Exchange Act

Congress has established liability in § 20(a) for "[e]very person who, directly or indirectly, controls any person liable" for violations of the securities laws. 15 U.S.C. § 78t(a). To prove a prima facie case under Section 20(a), a plaintiff must prove: (1) "a primary violation of federal securities law;" and (2) "that the defendant exercised actual power or control over the primary violator." *See Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000).

Defendants argue that "[b]ecause Plaintiffs' Section 10(b) claim fails, they cannot establish control-person liability under Section 20(a)." (ECF No. 38-1 at 40.)  However,

---

[8]    Defendants argue that Plaintiffs have not shown that Masimo acted with scienter because they failed to show any of the Individual Defendants acted with scienter.  (ECF No. 38-1 at 40 n.4.)  As this Court holds that Plaintiffs have adequately alleged Defendant Young acted with scienter, the Court also holds that Plaintiffs have adequately alleged that Masimo acted with scienter.

this Court finds that Plaintiffs have alleged a Section 10(b) claim as to Defendants Young and Masimo.  Accordingly, the Court declines to dismiss the Section 20(a) claim.

## V.    **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is GRANTED IN PART and DENIED IN PART.  Leave to amend is granted.  Plaintiffs must file an amended complaint, if at all, no later than December 6, 2024.

**IT IS SO ORDERED.**

Dated:  November 5, 2024

Hon. M. James Lorenz
United States District Judge