# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

SERGIO VAZQUEZ, Individually and on Behalf of All Others Similarly Situated,

Plaintiffs,

v.

MASIMO CORPORATION, JOSEPH KIANI, MICAH YOUNG, BILAL MUHSIN, and ELI KAMMERMAN

Defendants.

Case No.: 3:23-cv-1546-L-DEB

**ORDER RE: ELECTRONIC DISCOVERY AGREEMENT**

**[DKT. NO. 75]**

Lead Plaintiffs Boston Retirement System, Central Pennsylvania Teamsters Pension Fund – Defined Benefit Plan, and Central Pennsylvania Teamsters Pension Fund – Retirement Income Plan (collectively, "Lead Plaintiffs") and Defendants Masimo Corporation, Joseph E. Kiani, Micah Young, Bilal Muhsin, and Eli Kammerman (collectively, "Defendants" and together with Lead Plaintiffs, the "Parties") in the above-captioned action (the "Action"), by and through their counsel, stipulated and agreed to the following concerning discovery and the preservation, search and production of electronically stored information ("ESI") in this proceeding:

# I.    PRESERVATION

The Parties acknowledge that they have an obligation to take reasonable and proportional steps to preserve discoverable information in the Party's possession, custody or control.

The Parties agree that the following data sources need not be preserved, searched, reviewed, or produced unless specifically requested and the parties agree after a good faith meet and confer that such sources are likely to contain unique, relevant information:

(a) Backup media and systems that are maintained for the purpose of disaster recovery, including but not limited to, backup tapes, disks, or other media that are maintained in the ordinary course of business for the purpose of system recovery or information restoration rather than for business purposes or which would be duplicative of information otherwise available;

(b) Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system;

(c) On-line access data such as temporary internet files, history, cache, cookies and the like;

(d) Electronic calendars and/or contact data, provided that such data is routinely saved elsewhere;

(e) Server, system, network, or software application logs;

(f) Data remaining from systems no longer in use that is not reasonably accessible;

(g) Electronic data temporarily stored by laboratory equipment or attached electronic equipment, provided that such data is not ordinarily preserved as part of a laboratory report.

Absent a showing of good cause, the Parties will not be required to modify or suspend the routine or automatic deletion of electronically stored information by electronic information systems that store information in the ordinary course of

business, provided that the party has implemented a litigation hold to preserve responsive documents and the routine or automatic deletion would not jeopardize the retention of potentially responsive data. The parties recognize the Court's authority to modify the terms of the order for good cause at later stages of the litigation.

## II.    IDENTIFICATION OF RESPONSIVE DOCUMENTS

The parties will attempt in good faith to come to an agreement on custodians as well as search and culling methods (including the use of search terms) used to identify responsive information. In doing so, the parties will meet and confer regarding the identification of custodial and non-custodial sources of potentially responsive data. The parties will not seek Court intervention regarding the methodology to be used to identify responsive information without first attempting to resolve any disagreements in good faith, based upon all reasonably available information.

### A.    Easily Targeted Responsive Documents

Documents and categories of documents that are relevant to this action and responsive to a party's document requests, and that are regularly maintained in a known location, or in a location that is knowable upon reasonable inquiry of those with knowledge about a party's document management, including documents previously produced in connection with another litigation or a government investigation, shall be collected without the use of search terms or other agreed-upon advanced search methodology (*e.g.*, analytics, predictive coding, technology-assisted review). With respect to documents previously produced in connection with another litigation or a government investigation, the parties agree to meet and confer about the format of the production, metadata, and any other ESI-related issues to avoid any unnecessary delays in production.

### B.    Technology-Assisted Review

No party shall use predictive coding/technology-assisted review or artificial intelligence for the purpose of culling the documents to be reviewed or produced without notifying the opposing party prior to use and with ample time to meet and

23-cv-1546-L-DEB

confer in good faith regarding a mutually agreeable protocol for the use of such technologies.

### III.   PRODUCTION OF HARD-COPY DOCUMENTS – FORMAT

Hard-copy documents should be scanned as single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file should contain the following fields: "BEGNO," "ENDNO," "PAGES," "VOLUME," and "CUSTODIAN." The documents should be logically unitized (*i.e.*, distinct documents shall not be merged into a single record, and single documents shall not be split into multiple records) and be produced in the order in which they are kept in the usual course of business. If an original document contains color, and the color is necessary to understand the meaning or content of the document, the document shall be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. Multi-page OCR text for each document should also be provided. The OCR software shall maximize text quality. Settings such as "auto-skewing" and "auto-rotation" should be turned on during the OCR process.

### IV.   PRODUCTION OF ESI

#### A.   Format

Except where otherwise noted in this section, the parties will produce ESI in single-page, black and white, TIFF Group IV, 300 DPI TIFF images. Spreadsheet and presentation type files, audio and video files, photo or graphic images, and documents with tracked changes in the metadata shall be produced in native format. Except for messages that contain privileged or non-responsive content, the complete communication will be produced, separated into 24-hour increments. The parties shall meet and confer on the appropriate metadata fields and format of production for short message communications. Color originals may be produced in B&W TIFF format, but either Party may subsequently request, by Bates number(s), a replacement set of images in color only to the extent that the Requesting Party demonstrates that the loss of the

color detracts from the usability or reduces the ability to understand the information imparted in the original, however categorical or wholesale requests are deemed invalid. If a document is being produced in color, the document should be produced as single-page, 300 DPI JPG images with JPG compression and a high-quality setting as to not degrade the original image. The parties are under no obligation to enhance an image beyond how it was kept in the usual course of business. TIFFs/JPGs will show any and all text, hidden content, and images that would be visible to the reader using the native software that created the document. For example, TIFFs/JPGs of email messages will include the BCC line, and documents will display comments and hidden content. If the image does not accurately reflect the document as it was kept in the usual course of business, including all comments, edits, tracking, etc., the parties agree to meet and confer in good faith on production format options.

If a document is produced in native format, a single-page Bates stamped image slip sheet stating the document has been produced in native format should be provided, with the exception of PowerPoint presentations. PowerPoint documents should be produced in native format along with single-page, 300 DPI TIFF/JPG images which display both the slide and speaker's notes. Each native file should be named according to the Bates number it has been assigned and should be linked directly to its corresponding record in the load file using the NATIVELINK field. The parties retain the right to request that additional documents or classes of documents, not already identified within this protocol, should be produced in native format.

**B.     De-Duplication**

Each party shall remove exact duplicate documents based on MD5 or SHA-1 hash values, at the family level. Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates. The parties agree that an email that includes content in the BCC or other blind copy field shall not be treated as a duplicate of an email that does not include content in those fields, even if all remaining content in the email is identical. Removal of near-duplicate

23-cv-1546-L-DEB

documents and email thread suppression is not acceptable. De-duplication will be done across the entire collection (global de-duplication) and the CUSTODIAN-ALL field will list each custodian, separated by a semicolon, who was a source of that document and the FILEPATH-DUP field will list each file path, separated by a semicolon, that was a source of that document. Should the CUSTODIAN-ALL or FILEPATH-DUP metadata fields produced become outdated due to rolling productions, an overlay file providing all the custodians and file paths for the affected documents will be produced prior to substantial completion of the document production.

### C.    Metadata

All ESI will be produced with a delimited, database load file that contains the metadata fields listed in Table 1, attached hereto. The metadata produced should have the correct encoding to enable preservation of the documents' original language.

For ESI other than email and e-documents that do not conform to the metadata listed in Table 1, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, Google Docs, etc., the parties agree to meet and confer as to the appropriate metadata fields to be produced.

### D.    Embedded Objects

Embedded files shall be produced as attachments to the document that contained the embedded file, with the parent/child relationship preserved. The embedded files will be marked with a "YES" in the load file under the "Is Embedded" metadata field. The parties agree logos need not be extracted as separate documents as long as they are displayed in the parent document.

### E.    Attachments

The parties agree that if any part of a communication or its attachments is responsive, the entire communication and attachments will be produced, except any part that must be withheld or redacted on the basis of privilege. If necessary, the parties will meet and confer about whether there is an appropriate basis for withholding a

23-cv-1546-L-DEB

family document for any reason other than attorney-client or work product privilege. The attachments will be produced sequentially after the parent communication.

The producing party may produce emails or documents with hyperlinks to other documents. It is Lead Plaintiffs' position that hyperlinked documents should be produced to the extent that it is technically possible. The parties agree to meet and confer concerning what procedures, if any, should be implemented to identify and produce documents that are the target of such links.

**F.    Compressed Files Types**

Compressed file types (*e.g*., .ZIP, .RAR, .CAB, .Z) should be decompressed so that the lowest level document or file is extracted.

**G.    Structured Data**

To the extent a response to discovery requires production of electronic information stored in a database, the parties agree to meet and confer regarding methods of production. The parties will consider whether all relevant information may be provided by querying the database for discoverable information and generating a report in a reasonably usable and exportable electronic file.

**H.    Encryption**

To maximize the security of information in transit, any media on which documents are produced may be encrypted. In such cases, the producing party shall transmit the encryption key or password to the receiving party, under separate cover, contemporaneously with sending the encrypted media.

**I.    Redactions**

A party may use redactions to protect for privilege but shall redact no more than is necessary to protect the relevant privileged information. Each redaction on a document shall be endorsed with the word "redacted" or "redaction.

If documents that the parties have agreed to produce in native format need to be redacted, the parties will implement redactions while ensuring that proper formatting

and usability are maintained. Spreadsheets requiring redaction will be redacted using native redaction software and produced in native format.

## J.    Privilege Logs

For all documents withheld, in whole or in part, on the basis of privilege, the parties agree to furnish logs that comply with the legal requirements under federal law, but at a minimum will include the following information:

a.    A unique number for each entry on the log.

b.    A unique document ID or Bates Number for each entry on the log.

c.    The date of document. For emails, this should be the sent date of the document and for other ESI this should be the last-modified or create date of the document.

d.    The Author of the document. For emails, this should be populated with the metadata extracted from the "Email From" field associated with the file. For other ESI, this should be populated with the metadata extracted from the "Author" field; if such field contains generic information such as the company name, a party may substitute the information contained in the "Custodian" metadata field.

e.    If the document is an email, the Subject Line of the email (unless the Subject Line itself contains privileged information).

f.    If the document is ESI other than email, the File Name or Doc Title (if available).

g.    Recipient(s) of the document where reasonably ascertainable. For emails this should be populated with the metadata extracted from the "Email To" field associated with the file. Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

h.    A description of why privilege is being asserted over the document. This description should include information sufficient to identify if the document contained attachments over which privilege is also being asserted.

i.      The type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

The parties shall meet and confer regarding the identification of counsel in specific entries on the log.

Privilege logs shall be provided in searchable Microsoft Excel format.

Privilege logs shall be produced on a rolling basis. The parties shall meet and confer regarding the timing of such logs. To the extent a producing party provides multiple, or supplemental, privilege logs, each such log should contain all previous privilege log entries, such that each privilege log can supersede all prior privilege logs, with any changes to previously produced privilege log entries clearly identified. A final log will be produced on the date of substantial completion.

Documents presumptively not to be logged on a privilege log include:

a.      Communications exclusively between a party or its representative(s) and its in-house or current or former outside counsel for this matter, after the commencement of this litigation; and/or

b.      Communications subject to a joint defense or common interest privilege, after the commencement of this litigation; and/or

c.      Work product created by counsel, an agent of counsel, or a party at the direction of counsel, for this matter, after commencement of this litigation.

**IT IS SO ORDERED.**

Dated:  March 13, 2025

_____
Daniel E. Butcher
United States Magistrate Judge

23-cv-1546-L-DEB

## TABLE 1: METADATA FIELDS[1]

| Field Name | Example / Format | Description |
| --- | --- | --- |
| **BEGNO** | ABC0000001 (Unique ID) | The Document ID number associated with the first page of a document. |
| **ENDNO** | ABC0000003 (Unique ID) | The Document ID number associated with the last page of a document. |
| **BEG_ATTACH** | ABC0000001 (Unique ID Parent-Child Relationships) | The Document ID number associated with the first page of the parent document. |
| **END_ATTACH** | ABC0000008 (Unique ID Parent-Child Relationships) | The Document ID number associated with the last page of the last attachment. |
| **VOLUME** | VOL001 | The name of CD, DVD, or Hard Drive. |
| **RECORD_TYPE** | eMail, Attachment, Scanned Doc, eFile, Chat/Text | The record type of a document. |
| **SENT_DATE_TIME** | MM/DD/YYYY HH:MM | The date and time the email or calendar entry was sent. |
| **RECEIVED_DATE_TIME** | MM/DD/YYYY HH:MM | The date and time the document was received. |
| **CREATE_DATE_TIME** | MM/DD/YYYY HH:MM | The date and time the document was created. |

---

[1]  For ESI other than email and e-docs that do not conform to the metadata listed here, such as text messages, Instant Bloomberg, iMessage, Google Chat, MS Teams, Slack, etc., the  parties will meet and confer as to the appropriate metadata fields to be produced.

23-cv-1546-L-DEB

| | | |
|---|---|---|
| **LASTMOD_DATE_TIME** | MM/DD/YYYY HH:MM | The date and time the document was last modified. |
| **MEETING_START_DATE_TIME** | MM/DD/YYYY | Start date and time of calendar entry. |
| **MEETING_END_DATE_TIME** | MM/DD/YYYY | End date and time of calendar entry. |
| **FILEPATH** | e.g., /JsmithPC/Users/Jsmith/Desktop | The file path from the location in which the document was stored in the usual course of business.  This field should be populated for both email and e-files. |
| **ALL_PATHS** | e.g.,  /JSmith.pst/Inbox/Network Share/Accounting/…<br><br>/TJohnsonPC/Users/TJohnson/My Documents/... | The file paths from the locations in which the duplicate documents were stored in the  usual course of business.  This field should be populated for both email and e-files and separated by semicolons. |
| **AUTHOR** | jsmith | The author or owner of a document from extracted metadata. |
| **FROM** | Joe Smith <jsmith@email.com> | The display name and email address of the author of an email/calendar item.  An email address should always be provided. |
| **TO** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email address of the recipient(s) of an email/calendar item.  An email address should always be provided for every email if a recipient existed. |
| **CC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the copyee(s) of an email/calendar item.  An email address should always be provided for every email if a copyee existed. |

23-cv-1546-L-DEB

| | | |
|---|---|---|
| **BCC** | Joe Smith <jsmith@email.com>; tjones@email.com | The display name and email of the blind copyee(s) of an email or calendar item. An email address should always be provided for every email if a blind copyee existed. |
| **SUBJECT** | | The subject line of the email/calendar item. |
| **IMPORTANCE** | Normal, Low, High | Email Importance Flag |
| **TITLE** | | The extracted document title of a document. |
| **CUSTODIAN-ALL** | Smith, Joe; Doe, Jane | All of the custodians of a document from which the document originated, separated by semicolons. |
| **ATTACH COUNT** | Numeric | The number of attachments to a document. |
| **FILEEXT** | XLS | The file extension of a document. |
| **FILENAME** | Document Name.xls | The file name of a document. |
| **FILESIZE** | Numeric | The file size of a document (including embedded attachments). |
| **HASH** | | The MD5 or SHA-1 Hash value or "de-duplication key" assigned to a document. The same hash method (MD5 or SHA-1) should be used throughout production. |
| **CONVERSATION INDEX** | | ID used to tie together email threads. |
| **REDACTED** | Yes or Blank | If a document contains a redaction, this field will display 'Yes'. |
| **CONFIDENTIALITY** | Confidential | The confidentiality designation for the document. |
| **TIMEZONE PROCESSED** | PST, CST, EST, etc | The time zone the document was processed in. **NOTE:** This should be the time zone where the documents were located at time of collection. |
| **NATIVELINK** | D:\NATIVES\ABC000001.xls | The full path to a native copy of a document. |

23-cv-1546-L-DEB

| | | |
|---|---|---|
| **FULLTEXT** | D:\TEXT\ABC000001.txt | The path to the full extracted text of the document. There should be a folder on the deliverable, containing a separate text file per document. These text files should be named with their corresponding Bates numbers. **Note**: Emails should include header information: author, recipient, cc, bcc, date, subject, etc. If the attachment or e-file does not extract any text, then OCR for the document should be provided. |

23-cv-1546-L-DEB