Lauren A. Ormsbee (*pro hac vice*)
Lisa M. Strejlau (*pro hac vice*)
David M. Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
lormsbee@labaton.com
lstrejlau@labaton.com
dsaldamando@labaton.com

*Attorneys for Lead Plaintiffs*
*and Lead Counsel for the Proposed Class*

[Additional Counsel on Signature Page]

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO VAZQUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MASIMO CORPORATION, JOSEPH KIANI, MICAH YOUNG, BILAL MUHSIN, and ELI KAMMERMAN<br><br>Defendants. | Case No.: 3:23-cv-01546-L-DEB<br><br>**RESUBMITTED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date: NA<br>Judge: Hon. Daniel E. Butcher |

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................................ ii

NOTICE OF UNOPPOSED MOTION ................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ......................................... 2

PRELIMINARY STATEMENT .......................................................................... 2

    A.    Overview of the Litigation ................................................................ 3

    B.    Settlement Discussions .................................................................... 5

    C.    Terms of the Proposed Settlement ................................................... 7

    D.    Proposed Schedule of Events ........................................................... 9

ARGUMENT ..................................................................................................... 9

I.    THE SETTLEMENT MERITS PRELIMINARY APPROVAL ................... 9

    A.    The Settlement Class Has Been Adequately Represented ................. 10

    B.    Good Faith and Arm's-Length Negotiations ................................... 12

    C.    The Proposed Settlement Is Well Within the Range of Approval ..... 13

        1.    Many Challenges to Obtaining a Recovery Remained .......... 13

        2.    Effective Process for Distributing Relief .............................. 15

        3.    Anticipated Legal Fees and Expenses .................................. 16

    D.    Class Members Are Treated Equitably Relative to One Another ..... 18

II.    The Proposed Settlement Class Satisfies Rule 23 ...................................... 18

    A.    The Settlement Class Satisfies the Requirements of Rule 23(a) ....... 19

        1.    Numerosity ........................................................................ 19

        2.    There Are Common Questions of Law and Fact .................... 20

        3.    Lead Plaintiffs' Claims Are Typical ..................................... 20

        4.    Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class ....................................... 21

    B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3) ................................................................................. 22

        1.    Common Legal and Factual Questions Predominate ............. 22

2.    A Class Action Is a Superior Method of Adjudication ...........23

III.    NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA REQUIREMENTS.................................................................................24

A.    Notice Procedures ...............................................................24

B.    Form and Substance of Proposed Notices .........................................25

C.    Claims Administrator.................................................................25

CONCLUSION.................................................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor,*
521 U.S. 591 (1997) .......................................................................................22

*In re Banc of Cal. Sec. Litig.,*
2019 WL 6605884 (C.D. Cal. Dec. 4, 2019) .......................................................12

*Basic Inc. v. Levinson,*
485 U.S. 224 (1988) .......................................................................................14

*In re BofI Holding, Inc. Sec. Litig.,*
2022 WL 2068424 (S.D. Cal. June 8, 2022) ................................................12, 19

*Boston Ret. Sys. v. Uber Tech. Inc.,*
No. 19-cv-6361, slip op. (N.D. Cal. Aug. 9, 2024) ..............................11, 12, 25

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.,*
348 F.R.D. 372 (S.D. Cal. 2024) ........................................................19, 20, 21

*Class Plaintiffs v. City of Seattle,*
955 F.2d 1268 (9th Cir. 1992) .........................................................................10

*Fleming v. Impax Lab'y Inc.,*
2022 WL 2789496 (N.D. Cal. July 15, 2022) ...................................................17

*Hanlon v. Chrylser Corp.,*
150 F.3d (9th Cir. 1998) ..................................................................................21

*Hanon v. Dataproducts Corp.,*
976 F.2d 497 (9th Cir. 1992) .....................................................................20, 21

*Hardy v. Embark Tech., Inc.,*
2023 WL 6276728 (N.D. Cal. Sept. 26, 2023) .................................................19

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.,*
2010 WL 4027632 (S.D. Cal. Oct. 14, 2010) ....................................................12

*Holmes v. NCO Fin. Sys., Inc.,*
2014 WL 12899143 (S.D. Cal. Mar. 10, 2014) .................................................10

*In re Honest Co., Inc. Sec. Litig.*,
No. 21-CV-07405, slip op. (C.D. Cal. May 6, 2025).................................24, 25

*In re Illumina, Inc. Sec. Litig.*,
2019 WL 6894075 (S.D. Cal. Dec. 18, 2019).................................................12

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 834767 (S.D. Cal. Mar. 17, 2025)...............................................12, 17

*Kendall v. Odanate Therapeutics, Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022)..................................................17

*Lane v. Facebook, Inc.*,
696 F.3d 811 (9th Cir. 2012)........................................................................24

*Mauss v. NuVasive, Inc.*,
2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)..................................................17

*In re Mercury Interactive Corp. Sec. Litig.*,
618 F.3d 988 (9th Cir. 2010)..........................................................................9

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
339 U.S. 306 (1950). Notice.........................................................................24

*Norris-Wilson v. Delta-T Grp., Inc.*,
270 F.R.D. 596 (S.D. Cal. 2010)..................................................................23

*Purple Mountain Tr. v. Wells Fargo & Co.*,
2022 WL 3357835 (N.D. Cal. Aug. 15, 2022)...............................................21

*Ruiz Torres v. Mercer Canyons Inc.*,
835 F.3d 1125 (9th Cir. 2016).......................................................................22

*In re Silver Wheaton Corp. Sec. Litig.*,
2020 WL 4581642 (C.D. Cal. Aug. 6, 2020).................................................17

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008).......................................................................10

*In re Telescopes Antitrust Litig.*,
2025 WL 1093248 (N.D. Cal. Apr. 11, 2025) ...............................................17

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) .....................................................................................22

*Valentino v. Carter–Wallace, Inc.*,
  97 F.3d 1227 (9th Cir. 1996) ................................................................................23

*In re Wireless Facilities, Inc. Sec. Litig.*,
  253 F.R.D. 630 (S.D. Cal. 2008) ..........................................................................19

**Statutes**

17 C.F.R. § 240.12b-2 ...............................................................................................19

15 U.S.C. §78u-4(a)(4) .........................................................................................17, 18

15 U.S.C. § 78u-4(a)(7) .............................................................................................25

**Rules**

Fed. R. Civ. P. 23...............................................................................................10, 18

Fed. R. Civ. P. 23(a)......................................................................................3, 19, 23

Fed. R. Civ. P. 23(a)(1)..............................................................................................19

Fed. R. Civ. P. 23(a)(2)..............................................................................................20

Fed. R. Civ. P. 23(a)(3)..............................................................................................20

Fed. R. Civ. P. 23(a)(4) ........................................................................................20, 21

Fed. R. Civ. P. 23(b)(3) .....................................................................................2, 19, 23

Fed. R. Civ. P. 23(c)(2)(B) .......................................................................................25

Fed. R. Civ. P. 23(e)(1) .............................................................................................25

Fed. R. Civ. P. 23(e)(1)(B) .................................................................................10, 18

Fed. R. Civ. P. 23(e)(2)..............................................................................................10

Fed. R. Civ. P.23(e)(2)(B)..........................................................................................12

Fed. R. Civ. P. 23(e)(3) .........................................................................................8, 10

## NOTICE OF UNOPPOSED MOTION

PLEASE TAKE NOTICE that Lead Plaintiffs Boston Retirement System, Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan, and Central Pennsylvania Teamsters Pension Fund-Retirement Income Plan 1987 (together, "Lead Plaintiffs"), on behalf of themselves and the other members of the proposed Settlement Class, hereby file this unopposed resubmitted motion at the request of the Court, seeking an order, pursuant to Federal Rule of Civil Procedure 23(a), (b)(3) & (e)(1): (1) preliminarily approving the proposed Settlement of the above-captioned class action (the "Action") and certifying, for settlement purposes only, the proposed Settlement Class; (2) approving the proposed revised long-form Notice of Pendency of Class Action, Proposed Settlement, and Motion for Attorneys' Fees and Expenses, revised Proof of Claim and Release form, Postcard Notice, and revised Summary Notice of Pendency and Proposed Settlement of Class Action, and Motion for Attorneys' Fees and Expenses, attached as Exhibits 1 through 4 to the proposed revised Preliminary Approval Order, filed herewith, as well as the methods of notice; (3) scheduling a final settlement hearing before the Court on or about April 30, 2026, or another date more convenient for the Court, to determine whether the proposed Settlement, proposed Plan of Allocation for the proceeds of the Settlement, and Lead Counsel's motion for attorneys' fees and Litigation Expenses should be approved; (4) appointing A.B. Data, Ltd. as the Claims Administrator to provide all notices, process Claim Forms, and to administer the Settlement; and (4) granting such other and further relief as may be required.

The motion is supported by the following memorandum of points and authorities, and the accompanying Declaration of Lauren A. Ormsbee in Support of Unopposed Resubmitted Motion for Preliminary Approval of Proposed Class Action Settlement, dated January 26, 2026 ("Ormsbee Decl."), with annexed exhibits, including the Stipulation and Agreement of Settlement, dated August 14,

RESUBMITTED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 3:23-cv-01546-L-DEB

1

2025 ("Stipulation"), which is annexed as Exhibit 1.[1]

Settling Defendants do not oppose the relief requested in the motion and the Settling Parties agree that it may be decided on the papers.[2]

A proposed revised Order Granting Preliminary Approval of Class Action Settlement, Approving Form and Manner of Notice, and Setting Date for Hearing on Final Approval of Settlement ("Preliminary Approval Order"), with annexed revised exhibits, which was negotiated by the Settling Parties, is also submitted herewith.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

Court-appointed Lead Plaintiffs Boston Retirement System, Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan, and Central Pennsylvania Teamsters Pension Fund-Retirement Income Plan 1987, individually and on behalf of all other members of the proposed Settlement Class, are pleased to report that they have reached an agreement, subject to the Court's approval, to settle the Action in exchange for a cash payment of $33,750,000 for the benefit of the Settlement Class (defined as all persons and entities who or that purchased or acquired Masimo Corporation publicly traded common stock during the period from May 4, 2022 through August 8, 2023, inclusive (the "Class Period"), and were damaged thereby).[3] The Settling Parties seek preliminary approval of the proposed Settlement pursuant to Rule 23(e)(1), and certification of the Settlement Class

---

[1] All capitalized terms used herein are defined in the Stipulation, and have the same meanings as set forth therein. All references to "Ex." herein are references to exhibits attached to the Ormsbee Declaration. Unless otherwise noted, citations and internal quotations have been omitted.

[2] The Settling Parties are Lead Plaintiffs and Settling Defendants, which are Defendants Masimo, Micah Young, Bilal Muhsin, and Eli Kammerman. Defendant Joseph E. Kiani is not a Settling Party.

[3] Certain persons and entities are excluded from the Settlement Class by definition, as set forth in the Stipulation.

pursuant to Rule 23(a) and (b)(3). The terms of the proposed Settlement are in the Stipulation, filed herewith.

If approved, the Settlement will provide a recovery of $33,750,000 to resolve the claims in the Action, and related claims, against Defendants and their related parties. The Settlement eliminates the real risks that protracted litigation might lead to a lesser or no recovery—including very significant risks relating to liability, loss causation, and damages—and guarantees a significant and near-term recovery for the Settlement Class.

The proposed Settlement was achieved after two years of hard-fought litigation, motion practice, and vigorous extended arm's-length negotiations occurring before a well-respected mediator. Lead Plaintiffs—sophisticated institutional investors—actively oversaw the litigation and fully endorse the Settlement. The proposed Settlement readily satisfies each of the approval factors required by Federal Rule of Civil Procedure 23(e) and Ninth Circuit precedent.

For the reasons discussed herein, it is respectfully requested that the Court enter the proposed revised Preliminary Approval Order. Entry of the proposed Preliminary Approval Order will authorize the dissemination of notice of the Settlement to the Settlement Class, after which there would be a final approval hearing for the Court to make a final determination as to whether the Settlement is fair, reasonable, and adequate (the "Settlement Hearing").[4]

### A.    Overview of the Litigation

---

[4] More specifically, the proposed revised Preliminary Approval Order, will, among other things: (i) preliminarily approve the Settlement; (ii) preliminarily certify the Settlement Class; (iii) approve the proposed revised long-form Notice, Claim Form, Postcard, and Summary Notice, attached as Exhibits 1 through 4 to the proposed Order, as well as the methods of notice; (iv) set a date and time for the final Settlement Hearing; (v) appoint A.B. Data, Ltd. as the Claims Administrator to provide all notices, process Claim Forms, and to administer the Settlement; and (vi) grant such other and further relief as the Court may deem fair and proper.

On August 22, 2023, an initial class action complaint was filed in this Court asserting violations of Sections 10(b) and 20(a) of the Exchange Act of 1934 (the "Exchange Act") based on alleged misstatements and omissions concerning Masimo's forecasting processes and 2023 full-year financial guidance between February 28, 2023 and July 17, 2023. ECF No. 1. By Order dated November 14, 2023, the Court appointed Lead Plaintiffs and approved their selection of Labaton Sucharow LLP (n/k/a Labaton Keller Sucharow LLP) ("Labaton") as Lead Counsel and Hagens Berman Sobol Shapiro LLP as Liaison Counsel. ECF No. 19.

On February 12, 2024, Lead Plaintiffs filed Lead Plaintiffs' First Amended Complaint for Violations of the Federal Securities Laws (ECF No. 28, the "Complaint") asserting claims under Section 10(b) of the Exchange Act against Defendants Masimo, Joseph E. Kiani, Micah Young, Bilal Muhsin, and Eli Kammerman, and asserting claims against Defendants Kiani, Young, Muhsin, and Kammerman under Section 20(a) of the Exchange Act. In particular, the Complaint alleges that, during the Class Period of May 4, 2022 through August 8, 2023, inclusive, Defendants made false and misleading statements and omissions related to Masimo's acquisition and integration of consumer audio firm, Sound United (the "Sound United Allegations"). The Complaint also alleged false and misleading statements regarding Masimo's traditional healthcare unit—specifically that Defendants failed to disclose that Masimo misled the market about its healthcare division's inability to introduce new products into the market that would support Defendants' revenue forecasts and the offering of large discounts to customers to take additional product before quarter end, which led to excess inventories of single-use sensors, which were a key growth driver for the Company (the "Healthcare Business Allegations").

On April 29, 2024, Defendants filed a motion to dismiss the Complaint. ECF No. 38 ("Motion to Dismiss"). On June 27, 2025, Lead Plaintiffs filed their opposition to the Motion to Dismiss. ECF No. 42. The Motion to Dismiss was fully

briefed by July 26, 2024, when Defendants filed their reply. ECF No. 44.

On November 5, 2024, the Court issued an Order granting in part and denying in part Defendants' Motion to Dismiss. (ECF No. 46, the "MTD Order"). Specifically, the MTD Order dismissed the Healthcare Business Allegations and the Complaint's Section 10(b) claims against Defendants Kiani, Muhsin, and Kammerman. *Id.* at 11-13, 17-24. The Court denied the Motion to Dismiss with respect to the Sound United Allegations, specifically the alleged misstatements regarding: (i) Masimo's prospects for growth that were allegedly false and misleading due to improper accounting practices; and (ii) the integration between Masimo and Sound United. *Id.* at 13-17. The MTD Order sustained the Complaint's Section 10(b) claims against Defendants Masimo and Young, and Section 20(a) claims against Defendants Kiani, Young, Muhsin, and Kammerman. *See id.* at 18-24.

Discovery in the Action formally commenced in March 2025. While discovery was ongoing at the time the Settlement was reached, Lead Plaintiffs state they have reviewed over 61,500 pages of documents produced by Defendants, third parties, and Lead Plaintiffs.

**B.    Settlement Discussions**

The Settling Parties began exploring the possibility of a settlement in December 2024. Thereafter, they agreed to engage in private mediation and retained David Murphy of Phillips ADR Enterprises to act as the mediator in the case (the "Mediator"). On May 28, 2025, counsel for the parties participated in a full-day mediation session before Mr. Murphy. In advance of that session, the parties submitted detailed opening and reply confidential mediation statements. The May 28, 2025 session ended without any agreement being reached.

During the mediation and thereafter, the Settling Parties weighed the risks and benefits of settlement, including the risks that (i) Lead Plaintiffs would be unable to certify a class in response to Defendants' challenges to certification; (ii)

Lead Plaintiffs would be unable to establish at summary judgment or trial that each sustained misstatement was false and misleading; (iii) Lead Plaintiffs would be unable to establish at summary judgment or trial that Defendant Young or Masimo made those misstatements with scienter; (iv) Lead Plaintiffs would be unable to establish at summary judgment or trial that the remaining individual defendants exercised sufficient control over Masimo for control person liability; (v) Lead Plaintiffs would be able to revive the Healthcare Business Allegations through discovery; and (vi) Lead Plaintiffs would be unable to establish damages at class certification or summary judgment. The parties continued discussions with the Mediator following the mediation to further explore the possibility of a settlement.

On June 16, 2025, the Mediator issued a mediator's recommendation, and on June 26, 2025, the Settling Parties accepted the recommendation and reached a settlement in principle to resolve all claims in the Action on a class-wide basis for $33,750,000 in cash. The Settling Parties' acceptance of the Mediator's recommendation took into account, among other things, each of the Settling Parties' respective views on Lead Plaintiffs' claims and the parties' defenses, inclusive of Lead Plaintiffs' position that they would seek to amend their Complaint to reassert claims and theories that were dismissed pursuant to the Court's November 5, 2024 Opinion and Order, including claims that Defendants made false and misleading statements regarding the offering of large customer discounts to take additional product before quarter end, which allegedly resulted in excess customer inventories.

On July 16, 2025, the Court issued an order granting the Settling Parties' joint stipulation, in light of the settlement in principle, that: (i) vacated all deadlines, hearings, and pre-trial conferences in the Action; and (2) set August 14, 2025 as the deadline for Lead Plaintiffs to file a motion for preliminary approval of the proposed class action settlement. ECF No. 85.

A Term Sheet was entered into by the Settling Parties as of July 24, 2025, and the Stipulation was executed on August 14, 2025. On August 14, 2025, Lead

Plaintiffs filed an Unopposed Motion for Preliminary Approval of Class Action Settlement. ECF No. 86. On September 2, 2025, Lead Plaintiffs filed a letter informing the Court that no opposition to the August 14, 2025 Unopposed Motion for Preliminary Approval of Class Action Settlement had been filed or served on the Parties. ECF No. 87. On September 11, 2025, Lead Plaintiffs filed a Notice of Filing the Notice of Proposed Class Action Settlement Pursuant to 28 U.S.C. § 1715 of the Class Action Fairness Act of 2025, ECF No. 88, which was issued in connection with the filing of the Stipulation of Settlement, as provided for in ¶21 of the Stipulation.

On January 14, 2026, the Court issued an Order of Consent and Reference of a Civil Action to a Magistrate Judge, and this case was reassigned to Magistrate Judge Daniel E. Butcher for all settlement-related proceedings. ECF No. 92. Following a status conference held on January 23, 2026 before Magistrate Judge Butcher, Lead Plaintiffs are re-filing this unopposed motion and exhibits to reflect that Magistrate Judge Butcher is the presiding judge over these settlement proceedings and that the final Settlement Hearing and other relevant dates will now occur in 2026.

### C.    Terms of the Proposed Settlement

Pursuant to the Settlement, Masimo has agreed to pay, or cause the payment of, $33.75 million in cash. *See* Stipulation at ¶ 6. The Settlement Amount, plus accrued interest, after the deduction of Court-awarded attorneys' fees and Litigation Expenses, Notice and Administration Expenses, Taxes, and any other costs or fees approved by the Court (the "Net Settlement Fund"), will be distributed to Settlement Class Members who submit timely and valid Claims, in accordance with a plan of allocation approved by the Court. *See id*. at ¶¶ 9-10. The Settlement is not a claims-made settlement and there is no reversion. *See id*. at ¶ 12. Once the Settlement reaches its Effective Date, Masimo, and/or any other Person(s) funding the

Settlement Amount, will have no right to the return of the Settlement Fund, or any portion thereof, for any reason. *Id.*

In exchange for the payment of the Settlement Amount, upon the Effective Date of the Settlement, Lead Plaintiffs and each and every other Settlement Class Member, and their related parties, will release and dismiss the "Released Plaintiffs' Claims" against the "Released Defendant Parties." *See* Stipulation at ¶¶ 1(ee), 1(hh), 4. The definition of Released Plaintiffs' Claims has been tailored to provide the Released Defendant Parties with "complete peace," while being limited to claims that were raised, or could have been raised, by the Settlement Class, arising out of both the facts and matters in the Action and transactions in Masimo publicly traded common stock during the Class Period. *See* Stipulation at ¶ 1(hh).[5] The Settlement does not release related derivative cases.

Pursuant to Rule 23(e)(3), the only agreements made by the Settling Parties in connection with the Settlement are the Term Sheet, the Stipulation, and the Confidential Supplemental Agreement Regarding Requests for Exclusion, dated August 14, 2025, concerning the circumstances under which Masimo may terminate the Settlement based upon the number of exclusion requests received. *See* Stipulation at ¶ 41. It is standard to keep such agreements confidential so that a large investor, or a group of investors, cannot intentionally try to leverage a better recovery for themselves by threatening to opt out, at the expense of the class. The Supplemental Agreement can be provided to the Court *in camera* or under seal.

After approval of the Settlement and the Plan of Allocation, the proposed Claims Administrator will process all claims received and will calculate their value according to the plan of allocation approved by the Court. At the completion of the administration, the Claims Administrator will distribute the Net Settlement Fund to

---

[5] Settling Defendants are also releasing any claims that they could have asserted against any of the Released Plaintiff Parties arising out of the institution, prosecution, or settlement of the claims in the Action. *See* Stipulation at ¶¶ 1(ff), 5.

eligible Claimants and will continue to do so as long as it is economically feasible to make distributions. *See* Stipulation at ¶¶ 22-35. As discussed further below, when it is no longer feasible to make additional distributions, Lead Plaintiffs propose that the unclaimed balance be contributed to Consumer Federation of America ("CFA"), a non-profit, non-sectarian organization, or such other *cy pres* recipient approved by the Court. *See id*. at ¶ 27.

### D.   Proposed Schedule of Events

Lead Plaintiffs respectfully propose the following schedule for Settlement-related events, each of which is in the proposed Preliminary Approval Order:

| | |
|---|---|
| Deadline for commencing mailing of Postcards | *10 business days after entry of the Preliminary Approval Order (the "Notice Date")* |
| Deadline for publication of Summary Notice in *The Wall Street Journal* and transmission over *PR Newswire* | *Within 14 calendar days of the Notice Date* |
| Deadline for filing motions in support of the Settlement, the Plan of Allocation, and Lead Counsel's Fee and Expense Request | *No later than 35 calendar days before the Settlement Hearing* |
| Deadline for filing reply papers in further support of Lead Plaintiffs' and Lead Counsel's motions | *No later than 7 calendar days before the Settlement Hearing* |
| Deadline for submission of Claim Forms | *Postmarked or received no later than 7 calendar days before the Settlement Hearing* |
| Settlement Hearing | *On or about April 30, 2026, or another date more convenient for the Court, and no fewer than 90 calendar days after entry of the Preliminary Approval Order.* |

This schedule is similar to those used and approved by numerous courts in securities class action settlements and complies with the Ninth Circuit's ruling in *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 993 (9th Cir. 2010) (fee motion must be made available before the objection deadline).

## ARGUMENT

### I.   THE SETTLEMENT MERITS PRELIMINARY APPROVAL

In the Ninth Circuit, there is a "strong judicial policy that favors

settlement[s], particularly where complex class action litigation is concerned." *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992); *Holmes v. NCO Fin. Sys., Inc.*, 2014 WL 12899143, at *2 (S.D. Cal. Mar. 10, 2014) (same); *see also In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008). Rule 23 requires court approval for any class action settlement. A district court's review of a proposed class action settlement is a two-step process. ***First***, the court performs a review of the terms of the proposed settlement to determine whether to send notice to the class. *See* Rule 23(e)(1). ***Second***, after notice and a hearing, the Court determines whether to grant final approval of the settlement. *See* Rule 23(e)(2). A court may grant preliminary approval of a settlement upon a finding that it "will likely be able to" approve the settlement as fair, reasonable, and adequate at the final hearing, and certify a class. *See* Rule 23(e)(1)(B). By this motion, it is requested that the Court take this first step: preliminary approval of the Settlement.

Rule 23(e)(2) provides that a court may approve a settlement as fair, adequate, and reasonable after considering whether:

(A)  the class representatives and class counsel have adequately represented the class;

(B)  the proposal was negotiated at arm's length;

(C)  the relief provided for the class is adequate, taking into account:
(i)   the costs, risks, and delay of trial and appeal;
(ii)  the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
(iii) the terms of any proposed award of attorney's fees, including timing of payment; and
(iv)  any agreement required to be identified under Rule 23(e)(3); and

(D)  the proposal treats class members equitably relative to each other.

Applying the standards set forth above, it is respectfully submitted that the Settlement should be preliminarily approved.

### A.   The Settlement Class Has Been Adequately Represented

Lead Plaintiffs have vigorously litigated the claims in the Action and the

Settlement was achieved only after diligent arm's-length mediated negotiations between counsel with considerable knowledge and expertise in the field of federal securities law. Lead Plaintiffs and Lead Counsel developed a deep understanding of the facts of the case and merits of the claims by, *inter alia*: (1) conducting an extensive investigation; (2) drafting a detailed amended complaint; (3) responding to Defendants' motion to dismiss; (4) researching, drafting, propounding, and responding to discovery requests; (5) reviewing over 61,500 pages of documents produced in discovery; (6) negotiating discovery parameters and raising discovery disputes; (7) consulting with experts in the fields of loss causation, damages, and accounting; and (8) exchanging extensive mediation material and participating in arm's-length mediated settlement discussions.

Lead Plaintiffs are sophisticated institutional investors that have played an active role in the litigation. Specifically, Lead Plaintiffs have, among other things, monitored the progress of the litigation and have regularly conferred with Lead Counsel concerning the prosecution of the Action; reviewed periodic updates and other correspondence from counsel, including significant pleadings, briefs, and court orders; responded to the discovery demands propounded by Defendants, including written interrogatories; and participated in the May 28, 2025 mediation. Moreover, through Lead Counsel, Lead Plaintiffs participated in the ongoing negotiations following the mediation to achieve a settlement. With an informed understanding, Lead Plaintiffs agreed to the Settlement.

Lead Plaintiffs have had the benefit of the advice of knowledgeable counsel well-versed in securities class actions. Labaton is highly experienced and has a long and successful track record in such cases. *See* Ex. 2 (firm resume). Labaton has served as lead counsel in a number of high-profile and successful matters. *See, e.g.,* *In re Am. Int'l Grp., Inc. Sec. Litig.*, No. 04-cv-08141 (S.D.N.Y.) ($1 billion recovery); *In re Countrywide Sec. Litig.*, No. 07-cv-05295 (C.D. Cal.) ($600 million recovery); *Boston Ret. Sys. v. Uber Techs., Inc.*, Case No. 3:19-cv-

06361-RS (N.D. Cal.) ($200 million recovery). Courts give considerable weight to the opinion of experienced and informed counsel. *See, e.g.*, *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4027632, at *2 (S.D. Cal. Oct. 14, 2010) ("[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the Settlement.") (citing *In re NVIDIA Corp. Derivative Litig.*, 2008 WL 5382544, at *4 (N.D. Cal. Dec. 22, 2008)).

### B.    Good Faith and Arm's-Length Negotiations

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." Courts have long recognized the importance of arm's-length negotiations. *See, e.g., In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 834767, at *8 (S.D. Cal. Mar. 17, 2025) ("The Ninth Circuit 'put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution' in approving a class action settlement."). "A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair." *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 2068424, at *6 (S.D. Cal. June 8, 2022). Courts have also reasoned that "one important factor [to consider] is that the parties reached the settlement … with a third-party mediator." *In re Banc of Cal. Sec. Litig.*, 2019 WL 6605884, at *2 (C.D. Cal. Dec. 4, 2019). Additionally, courts in the Ninth Circuit have found the fact that "[t]he assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive." *See, e.g.*, *In re Illumina, Inc. Sec. Litig.*, 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019).

Here, the Settlement was achieved only after a mediation process, overseen by an experienced third-party neutral mediator. During the May 28, 2025 mediation, the parties vigorously asserted arguments concerning Lead Plaintiffs' ability to amend the Complaint to revive previously dismissed claims, the relevance of outstanding discovery requests with respect to Lead Plaintiffs' remaining claims, whether documents and testimony developed in discovery would support the

confidential witness allegations pled in the Complaint, and significant issues pertaining to loss causation and damages. With Lead Plaintiffs and defendants still meaningfully apart in their respective positions after the mediation, they agreed to continue negotiations through the Mediator. On June 26, 2025, the Settling Parties accepted the Mediator's proposal, subject to the negotiation of non-financial terms for the Settlement and Court approval. Accordingly, it is respectfully submitted that Settlement readily satisfies this factor.

### C.   The Proposed Settlement Is Well Within the Range of Approval

#### 1.   Many Challenges to Obtaining a Recovery Remained

Although Lead Plaintiffs and Lead Counsel believe that the claims asserted are strong, they recognize the significant challenges and risks they would face moving forward, as well as the expense and length of continued litigation through class certification, summary judgment motions, trial, and likely appeals.

*First*, while the Court already dismissed certain claims in response to Defendants' Motion to Dismiss, for those claims that survived, Lead Plaintiffs faced significant challenges at summary judgment and at trial in connection with ultimately establishing the required elements of falsity, materiality, and scienter. For example, as to the remaining misstatements, Defendants would continue to argue that statements regarding Masimo's projections for future earnings and growth are inactionable. However, even if the Court were to find those statements actionable, Lead Plaintiffs would face considerable challenges with respect to corroborating the confidential witness allegations pled in the Complaint with documents and testimony produced in discovery. In particular, Defendants would likely argue that the testimony from the confidential witness allegations pled in the Complaint concerning the use of "plugs" to manipulate Masimo's financial close numbers are outweighed by the fact that (i) the Company's independent auditor signed off on Masimo's financial statements; and (ii) there has been no government action taken by the SEC to date in response to whistleblower claims related to the

accounting "plugs" allegations. Moreover, to the extent Lead Plaintiffs could prove falsity, they would also need to obtain document and testimonial discovery sufficient to establish scienter regarding the Company's purported use of these "plugs." Defendants would likely produce documents and elicit testimony to demonstrate that they relied upon financial statements prepared by other corporate employees and blessed by the Company's auditors.

Defendants would also likely raise similar defenses in response to the alleged misstatements concerning the Sound United integration. Defendants would likely contest the confidential witness allegations pled in the Complaint by pointing to documents and evidence demonstrating that there were sufficient integration efforts or plans at the time that the relevant misstatements were made.

***Second***, Lead Plaintiffs would have to succeed on their forthcoming motion for class certification. Lead Plaintiffs anticipate that Defendants would lodge a full opposition to this motion, and would raise materiality and price impact arguments to "rebut the presumption" of reliance established in *Basic Inc. v. Levinson*, 485 U.S. 224 (1988).

***Finally***, Lead Plaintiffs would have likely confronted ongoing challenges in proving loss causation and damages. In order to recover, Lead Plaintiffs would need to prove that the allegedly corrective information in Masimo's preliminary Q2 2023 announcement, filed with the SEC on Form 8-K, caused the subsequent stock price declines, and would likely need to disaggregate those declines from other non-fraudulent causes. Lead Plaintiffs would need to make the same showing with respect to the subsequent stock price decline on August 9, 2023, as well as address Defendants' likely arguments challenging the viability of that stock drop based on a lack of statistical significance.

Lead Plaintiffs consulted with an expert in damages and loss causation who analyzed class-wide damages in light of the facts and circumstances presented in the case and developed through the discovery process to date. Lead Plaintiffs'

consulting damages expert has estimated that maximum damages attributable to the corrective disclosures in the Class Period (May 4, 2022 through August 8, 2023) were between approximately $272.9 million and $755.5 million depending on the trading model and assumptions used, including the potential disaggregation of confounding information, which could have reduced damages by approximately 60%. Accordingly, the Settlement recovers a range of approximately 4.5% to 12.4% of these estimated damages.  Notably, the $33.75 million recovery is more than double the median recovery of $14 million in securities class actions settled in 2024. *See* Laarni T. Bulan and Eric Tam, *Securities Class Action Settlements – 2024 Review and Analysis* (Cornerstone Research 2025), Ex. 3 at 4.

### 2. Effective Process for Distributing Relief

At the final Settlement Hearing, Lead Plaintiffs will ask the Court to approve the proposed Plan of Allocation for distributing the proceeds of the Settlement to eligible Claimants. The proposed plan, which is reported in the Notice, was drafted with the assistance of Lead Plaintiffs' damages expert and is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible claimants. *See* Notice at ¶¶ 54-69.

Specifically, the Plan provides for the calculation of a "Recognized Loss Amount" for each share of Masimo publicly traded common stock purchased or acquired during the Class Period that is listed in the Claim Form and for which adequate documentation is provided. The Claims Administrator will calculate claimants' total "Recognized Claims" using the transactional information provided in their Claim Forms, which can be mailed by the Claims Administrator, submitted online using the Settlement website, or, for large investors with hundreds of transactions, submitted via e-mail to the Claims Administrator's electronic filing team. Because most securities are held in "street name" by the brokers that buy them on behalf of clients, the Claims Administrator, Lead Counsel, and Defendants do not have Settlement Class Members' transactional data, and a claims process is

required. Because the Settlement does not recover 100% of alleged damages, the Claims Administrator will determine each Authorized Claimant's *pro rata* share of the Net Settlement Fund based upon each Authorized Claimant's total "Recognized Claim" compared to the aggregate Recognized Claims of all Authorized Claimants.

Once the Claims Administrator has processed claims, notified Claimants of deficiencies or ineligibility, processed responses, and made claim determinations, distributions will be made in the form of checks and wire transfers. After an initial distribution of the Net Settlement Fund, if there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), then, after the Claims Administrator has made reasonable and diligent efforts to have Authorized Claimants cash their distributions, any balance remaining in the Net Settlement Fund at least six (6) months after the initial distribution shall be re-distributed in an economical manner to Settlement Class Members who have cashed their initial distributions, after payment of any unpaid costs or fees for such re-distribution and Taxes. Any balance that still remains in the Net Settlement Fund after re-distribution(s), which is not feasible or economical to reallocate, after payment of Notice and Administration Expenses and Taxes, will be contributed to Consumer Federation of America ("CFA"), or such other *cy pres* recipient approved by the Court. *See* Stipulation at ¶ 27. [6]

### 3.    Anticipated Legal Fees and Expenses

In connection with seeking final approval of the Settlement, Lead Counsel

---

[6] CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests through policy research, advocacy, and education. *See* www.consumerfed.org.  With respect to victims of financial fraud, CFA has an Investor Protection program and an Investment Research Center that works nationwide to promote consumer-oriented policies that safeguard investors against fraud through: (i) the development of educational material for investors; (ii) drafting policies and legislation; (iii) and providing testimony and comments on legislation and regulations. www.consumerfed.org/issues /investor-protection. CFA has been approved in numerous securities cases, including *Hatamian v. Advanced Micro Devices, Inc,* No. 14-cv-00226 YGR (ND Cal), *In re Extreme Networks, Inc. Sec. Litig.*, Case No. 3:15-cv-04883-BLF (N.D. Cal.), and *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-MLR (C.D. Cal.)

will move, on behalf of itself and Liaison Counsel, for an award of attorneys' fees under the "common fund" doctrine of no more than 25% of the Settlement Fund and Litigation Expenses of no more than $400,000, plus accrued interest. The expense request may include an application, pursuant to the PSLRA, for the reasonable costs and expenses (including lost wages) of Lead Plaintiffs directly related to their representation of the class. The PSLRA provides that such an award may be made to "any representative party serving on behalf of a class." 15 U.S.C. §78u-4(a)(4). The amount of any awarded attorneys' fees and expenses is in the sole discretion of the Court. *See* Stipulation at ¶ 14.

In applying the percentage of the fund method, the Ninth Circuit has established 25% as a "benchmark" percentage. *See In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 834767, at *13 (citing *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (recognizing 25% fee percentage as the Ninth Circuit "benchmark"); *Mauss v. NuVasive, Inc*., 2018 WL 6421623, at *5 (S.D. Cal. Dec. 6, 2018 ("The Ninth Circuit has adopted a benchmark of 25 percent of the total settlement as reasonable, which [the court] can then adjust upward or downward to fit the individual circumstances of this case."). Fee awards of 25%, or more, have been awarded in district courts throughout the Ninth Circuit in numerous common fund settlements with comparable, and greater settlements (and many lesser ones). *See*, *e.g*., *Kendall v. Odanate Therapeutics, Inc*., 2022 WL 1997530, at *7 (S.D. Cal. June 6, 2022) (awarding 33 1/3% of $12.75 million settlement); *In re Telescopes Antitrust Litig.*, 2025 WL 1093248, at *10 (N.D. Cal. Apr. 11, 2025) (awarding approximately 33.33% of $32 million settlement); *In re Silver Wheaton Corp. Sec. Litig*., 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *Fleming v. Impax Lab'y Inc*., 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement).

The Fee and Expense Application will be fully briefed in a motion filed in accordance with the Preliminary Approval Order. By granting preliminary approval

of the proposed Settlement, the Court does not in any way rule upon the reasonableness of the Fee or Expense Application, which will be decided *de novo* at the Settlement Hearing.

### D.   Class Members Are Treated Equitably Relative to One Another

The Settlement does not improperly grant preferential treatment to either Lead Plaintiffs or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Lead Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court.[7] All Settlement Class Members that were allegedly harmed as a result of the alleged violations, and that submit an eligible claim pursuant to the Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See generally* Notice at ¶¶ 57-69.

## II.   THE PROPOSED SETTLEMENT CLASS SATISFIES RULE 23

In determining whether to grant preliminary approval, the Court also determines whether it "will likely be able to" grant certification to the proposed Settlement Class for purposes of the Settlement. Fed. R. Civ. P. 23(e)(1)(B). The proposed Settlement Class, which has been stipulated to by the Settling Parties, consists of:

> all persons and entities who or that purchased or acquired the publicly traded common stock of Masimo during the period from May 4, 2022 through August 8, 2023, both dates inclusive, and were allegedly damaged thereby.

Stipulation ¶ 1(ll).[8] Settling Defendants have stipulated to the certification of the Settlement Class only for purposes of the Settlement. *See* Stipulation ¶ 3.

---

[7] Lead Plaintiffs' request for reimbursement of their reasonable costs and expenses directly related to its representation of the class, noted above, would not constitute preferential treatment. *See* 15 U.S.C. § 78u-4(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

[8] Excluded from the Settlement Class are: (i) Defendants; (ii) members of the Immediate Families, or any individual trust or family trust, of any Defendant who is an individual; (iii) any person who was an officer, director, or control person of Masimo

The Ninth Circuit acknowledges the propriety of certifying a class for purposes of a class action settlement. *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 2068424, at *11 (S.D. Cal. June 8, 2022); *Hardy v. Embark Tech., Inc.*, 2023 WL 6276728, at *12 (N.D. Cal. Sept. 26, 2023). Certification of a settlement class "is superior to other available methods of adjudication of the controversy because the claims of many individuals will be efficiently resolved at one time, eliminating the possibility of repetitious litigation that would waste the parties' and the Court's resources." *In re Wireless Facilities, Inc. Sec. Litig.*, 253 F.R.D. 630, 636 (S.D. Cal. 2008).

As demonstrated below, the proposed Settlement Class satisfies all the applicable requirements of Rules 23(a) and 23(b)(3).

### A.     The Settlement Class Satisfies the Requirements of Rule 23(a)

Certification is appropriate under Rule 23(a) if: "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).

#### 1.     Numerosity

In the Ninth Circuit, Rule 23(a)(1)'s numerosity requirement is satisfied for classes larger than 60 members and, in securities fraud class actions, is shown where there are a large number of shares outstanding and traded during the relevant period. *See, e.g.*, *City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*, 348 F.R.D. 372, 382-83 (S.D. Cal. 2024) (noting a class of more than 60 satisfies numerosity).

during the Class Period; (iv) any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest and/or beneficial interest; (v) parents, affiliates, as defined by 17 C.F.R. § 240.12b-2, or subsidiaries of Masimo; and (vi) the legal representatives, heirs, successors-in-interest, or assigns of any excluded person or entity, in their respective capacity as such. Settlement Class Members who timely and validly seek exclusion will also be excluded. For the avoidance of doubt and notwithstanding anything herein to the contrary, no shareholder that directly owns less than 10% of Masimo stock shall be deemed an "affiliate" for purposes of the Settlement Class.

Here, Masimo traded on NASDAQ and had tens of millions of shares of common stock issued and outstanding during the Class Period, which were likely owned by many thousands of investors. *See* Complaint at ¶397. These metrics easily demonstrate numerosity.

### 2.     There Are Common Questions of Law and Fact

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2); *Acadia*, 348 F.R.D. at 383. Commonality exists when "[e]ven a single common question of law or fact … resolves a central issue." *Id.* at 383 (citing *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020)).

The common questions of law and fact in this case are numerous and include: (i) whether the Exchange Act was violated by Defendants' acts as alleged; (ii) whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business and financial condition of the Company; (iii) whether Defendants caused the Company to issue false and misleading statements during the Class Period; (iv) whether certain defendants acted knowingly or with deliberate recklessness in issuing the false filings; (v) whether the price of Masimo common stock was artificially inflated; and (vi) whether class members sustained damages and, if so, what is the proper measure of damages. *See* Complaint at ¶400. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met.

### 3.     Lead Plaintiffs' Claims Are Typical

Under Rule 23(a)(3), the claims or defenses of the named plaintiffs must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3); *Acadia*, 348 F.R.D. at 383-84. "Typicality refers to the nature of the claim or defense of the class representative, and not to the specific facts from which it arose or the relief sought." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). "The test of typicality 'is whether other members have the same or similar injury, whether

the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Id.*; *see also Acadia*, 348 F.R.D. at 383-84. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Acadia*, 348 F.R.D. at 384 (citing *Hanlon*, 150 F.3d at 1020).

Here, Lead Plaintiffs' claims arise from the same alleged course of conduct that gives rise to claims of other Settlement Class Members, are based on the same legal theory, and will be proven by the same set of operative facts. As such, the typicality requirement is satisfied. *See Purple Mountain Tr. v. Wells Fargo & Co.*, 2022 WL 3357835, at *2 (N.D. Cal. Aug. 15, 2022).

### 4. Lead Plaintiffs Will Fairly and Adequately Protect the Interests of the Settlement Class

Under Rule 23(a)(4), the named plaintiffs must "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "Resolution of two questions determines legal adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrylser Corp.*, 150 F.3d at 1011,1020 (9th Cir. 1998). Lead Plaintiffs are adequate here.

***First***, "the interests of Plaintiffs align with the interests of the proposed Class because all allegedly suffered injuries from the same conduct." *Acadia*, 348 F.R.D. at 384. Like all Settlement Class Members, Lead Plaintiffs purchased Masimo common stock during the Class Period and were subjected to the same allegedly fraudulent conduct. No conflicts exist between Lead Plaintiffs and the Settlement Class.

***Second,*** as explained above, Lead Plaintiffs are represented by competent and qualified counsel who have vigorously litigated this Action. *See* Ex. 2.  Lead

Plaintiffs have demonstrated their commitment to lead this Action for the Settlement Class, and would continue to actively participate in and supervise the litigation through trial. *See, e.g.*, ECF No. 12-5 (Joint Declaration of Lead Plaintiffs). Accordingly, Rule 23(a)(4) is satisfied here.

### B.    The Settlement Class Satisfies the Requirements of Rule 23(b)(3)

Rule 23(b)(3) authorizes class certification if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The proposed Settlement Class satisfies these requirements.

### 1.    Common Legal and Factual Questions Predominate

"The predominance inquiry 'asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016). For purposes of this analysis, "[a]n individual question is one 'where members of a proposed class will need to present evidence that varies from member to member,' while a common question is one where 'the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof.'" *Ruiz Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1134 (9th Cir. 2016) (quoting *Tyson Foods*, 577 U.S. at 453). This "test [is] readily met in certain cases alleging … securities fraud." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997).

Here, the central issue for establishing Defendants' liability is whether the Defendants made misstatements or omissions of material fact. *See id.* This issue is susceptible to generalized proof and, accordingly, the predominance requirement of Rule 23(b)(3) is satisfied.

### 2.    A Class Action Is a Superior Method of Adjudication

Rule 23(b)(3) also asks whether class resolution will be "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation," and it is superior "if no realistic alternative exists." *Valentino v. Carter–Wallace, Inc.*, 97 F.3d 1227, 1234-35 (9th Cir. 1996). The four factors under the superiority prong are "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Norris-Wilson v. Delta-T Grp., Inc.*, 270 F.R.D. 596, 611-12 (S.D. Cal. 2010).

Each of the factors supports certification here. *First*, the number of Settlement Class members is far too numerous, and the typical claim is too small, for each individual Settlement Class Member to have an interest in maintaining a separate action. *Second*, Lead Plaintiffs are aware of no individual actions that seek damages under the federal securities laws for Defendants' alleged wrongdoing. *Third*, the geographical dispersion of the Settlement Class Members makes it desirable to litigate Lead Plaintiffs' claims in this forum. *Fourth*, there are no management difficulties that would preclude this Action from being maintained as a class action.

In sum, the proposed Settlement Class meets all of the requirements of Rules 23(a) and (b)(3) and is appropriate for certification for purposes of the Settlement.

## III.   NOTICE PROGRAM SATISFIES RULE 23, DUE PROCESS, AND PSLRA REQUIREMENTS

### A.   Notice Procedures

Rule 23(c)(2)(B) requires notice of a settlement of a class action to be "the best notice that is practicable under the circumstances." It must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.,* 339 U.S. 306, 314 (1950). Notice must describe "the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard." *See, e.g.*, *Lane v. Facebook, Inc*., 696 F.3d 811, 826 (9th Cir. 2012).

Lead Counsel proposes to provide notice by: (i) individual first-class mailing of the Postcard Notice to all Settlement Class Members who can reasonably be identified and located, using mailing records obtained from Masimo's transfer agent, as well as information provided by third party banks, brokers, and other nominees about their customers; (ii) emailing of the Postcard Notice (to the extent emails are provided to the Claims Administrator); (iii) publication of the Summary Notice in *The Wall Street Journal,* as well as dissemination of the Summary Notice on the internet using *PR Newswire*; and (iv) posting documents on a website established for the Settlement, from which copies of the long-form Notice and Claim Form can be downloaded and claims can be completed using an online portal. *See* Exhibits 1 to 4 to the proposed Preliminary Approval Order. The Claims Administrator will also mail the Notice and Claim Form upon request. The Postcard Notice will provide key information regarding the Settlement and the rights of Settlement Class Members in connection therewith, and will direct recipients to the website for more detailed information. Numerous courts have approved similar notice programs. *See, e.g., In re Honest Co., Inc. Sec. Litig*., No. 21-CV-07405, slip

op. at 7-8 (C.D. Cal. May 6, 2025) (ECF No. 311); *Boston Ret. Sys. v. Uber Tech.*, No. 19-cv-6361, slip op. at 5-8 (N.D. Cal. Aug. 9, 2024) (ECF No. 468).

### B.    Form and Substance of Proposed Notices

The notices are written in plain language and provide the relevant information and answers to most questions that Settlement Class Members will have. Consistent with Rules 23(c)(2)(B) and 23(e)(1), the forms of notice collectively describe, among other things, the nature of the Action; the definition of the Settlement Class; the terms of the Settlement; the maximum attorneys' fees and expenses that may be sought; the procedures for objecting and seeking exclusion; the procedures for submitting claims; the proposed Plan of Allocation; and the date and place of the Settlement Hearing. The long-form Notice also satisfies the PSLRA's separate disclosure requirements. *See* 15 U.S.C. § 78u-4(a)(7).

### C.    Claims Administrator

Lead Plaintiffs request that the Court appoint A.B. Data, Ltd. as the Claims Administrator to provide all notices approved by the Court, to process Claim Forms, and to administer the Settlement. A.B. Data is a recognized leader in legal administration services. Ex. 4. It has decades of experience in class action administration in securities class action cases, as well as antitrust, discrimination, financial services, product liability, privacy, and ERISA class action.

## <u>CONCLUSION</u>

Lead Plaintiffs respectfully request that the Court grant the unopposed motion and enter the proposed revised Preliminary Approval Order, filed herewith.

Dated: January 26, 2026

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

By:      /s/ *Lauren A. Ormsbee*
Lauren A. Ormsbee (*pro hac vice*)
Lisa M. Strejlau (*pro hac vice*)
David Saldamando (*pro hac vice*)
140 Broadway
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
lormsbee@labaton.com
lstrejlau@labaton.com
dsaldamando@labaton.com

*Attorneys for Lead Plaintiffs Boston Retirement System, Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan and Central Pennsylvania Teamsters Pension Fund-Retirement Income Plan 1987, and Lead Counsel for the Proposed Class*

Lucas E. Gilmore (SBN 250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
Lucasg@hbsslaw.com

*Liaison Counsel for the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 26, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on January 26, 2026

/s/ *Lauren A. Ormsbee*
Lauren A. Ormsbee

**Mailing Information for a Case 3:23-cv-01546-L-DEB Vazquez v. Masimo Corporation et al.**

- Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- Adam Marc Apton

- aapton@zlk.com

- Marshall A. Camp

- mcamp@hueston.com,docketing@hueston.com,mschneider@hueston.com

- Robert James Ellison

- robert.ellison@lw.com,robert-ellison-6864@ecf.pacerpro.com

- James M. Fee

- jfee@labaton.com,7935099420@filings.docketbird.com,ElectronicCaseFiling@labaton.com

- Christine M. Fox

- cfox@labaton.com,ndonlon@labaton.com,vvibar@labaton.com,ElectronicCaseFiling@labaton.com,kjudd@labaton.com,6312349420@filings.docketbird.com

- Robert Matthew Garsson

- robgarsson@quinnemanuel.com

- Lucas E. Gilmore

- lucasg@hbsslaw.com,sf_filings@hbsslaw.com

- Matthew J. Grier

mgrier@labaton.com,ElectronicCaseFiling@labaton.com,2099396420@filings.docketbird.com

- John Charles Hueston

- jhueston@hueston.com,docketing@hueston.com,lhiles@hueston.com

- Harry Arthur Olivar , Jr

- harryolivar@quinnemanuel.com

- Lauren Amy Ormsbee

- LOrmsbee@labaton.com,4457202420@filings.docketbird.com

RESUBMITTED UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT THEREOF - CASE NO. 3:23-CV-01546-L-DEB

28

- Jennifer Pafiti

- jpafiti@pomlaw.com,efile@pomlaw.com

- Jeffrey F. Robertson

- jeffrey.robertson@srz.com,courtfilings@srz.com,evan.melluzzo@srz.com,ecf-1822127e5d6b@ecf.pacerpro.com

- Valerie Suzanne Roddy

- valerieroddy@quinnemanuel.com,ecf-8cc00a9b9174@ecf.pacerpro.com,calendar@quinnemanuel.com

- David Saldamando

- dsaldamando@labaton.com

- Lisa Marie Strejlau

- lstrejlau@labaton.com

- Michael E. Swartz

- michaelswartz@quinnemanuel.com,michael-swartz-3349@ecf.pacerpro.com

- Jonathan D. Uslaner

- JonathanU@blbglaw.com,managingclerk@blbglaw.com

- Carol C. Villegas

- cvillegas@labaton.com,5739893420@filings.docketbird.com,electroniccasefiling@labaton.com

- Thomas A. Zaccaro

tzaccaro@hueston.com,mgreen@hueston.com

- Manual Notice List

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

(No manual recipients)