Lauren A. Ormsbee (*pro hac vice*)
Nicole M. Zeiss (*pro hac vice*)
David M. Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
lormsbee@labaton.com
nzeiss@labaton.com
dsaldamando@labaton.com

*Attorneys for Lead Plaintiffs*
*and Lead Counsel for the Proposed Class*

*[Additional Counsel on Signature Page]*

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SERGIO VAZQUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MASIMO CORPORATION, JOSEPH KIANI, MICAH YOUNG, BILAL MUHSIN, and ELI KAMMERMAN<br><br>Defendants. | Case No.: 3:23-cv-01546-DEB<br><br>**LEAD PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Daniel E. Butcher<br>Date: May 5, 2026<br>Time: 9:30 a.m.<br>Courtroom: 2B |

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ........ ii

NOTICE OF MOTION ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 2

PRELIMINARY STATEMENT ........ 2

PRELIMINARY APPROVAL AND THE NOTICE PROGRAM ........ 4

ARGUMENT ........ 5

I. THE SETTLEMENT WARRANTS FINAL APPROVAL ........ 5

A. Standards Governing Approval of Class Action Settlements ........ 5

B. Rule 23(e)(2)(A): The Class Has Been Adequately Represented ........ 7

C. Rule 23(e)(2)(B): The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel ........ 9

D. Rule 23(e)(2)(C): The Relief Provided by the Settlement Is Adequate ........ 11

1. Rule 23(e)(2)(C)(i): Risks of Continued Litigation ........ 11

2. Rule 23(e)(2)(C)(ii): Effective Process for Distributing Relief to the Settlement Class ........ 17

3. Rule 23(2)(C)(iii): Anticipated Legal Fees and Expenses ........ 19

E. Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably Relative to One Another ........ 19

II. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ........ 20

III. NOTICE PROGRAM AND REACTION OF THE SETTLEMENT CLASS TO DATE ........ 21

IV. FINAL CERTIFICATION OF THE SETTLEMENT CLASS ........ 23

CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ali v. Franklin Wireless Corp.*,
2024 WL 5179910 (S.D. Cal. Dec. 19, 2024) ....20

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ....13

*Azar v. Blount Int'l, Inc.*,
2019 WL 7372658 (D. Or. Dec. 31, 2019) ....17

*Baker v. Seaworld Ent. Inc.*,
2020 WL 4260712 (S.D. Cal. July 24, 2020) ....6

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) ....9

*In re BofI Holding, Inc. Sec. Litig.*,
2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ....11, 12

*In re Cal. Pizza Kitchen Data Breach Litig.*,
129 F.4th 667 (9th Cir. 2025) ....7

*Campbell v. Facebook, Inc.*,
951 F.3d 1106 (9th Cir. 2020) ....6

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004) ....7, 11, 22

*City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.*,
348 F.R.D. 372 (S.D. Cal. 2024) ....8

*Class Plaintiffs v. City of Seattle*,
955 F.2d 1268 (9th Cir. 1992) ....20

*Cullen v. RYVYL Inc.*,
2025 WL 2836651 (S.D. Cal. Aug. 20, 2025) ....21, 22

*Cullen v. RYVYL Inc.*,
2025 WL 3731036 (S.D. Cal. Dec. 19, 2025), *amended*,
2026 WL 374941 (S.D. Cal. Feb. 9, 2026) ....7, 20

*Dura Pharms., Inc. v. Broudo*,
544 U.S. 336 (2005) .......... 15

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) .......... 10, 12

*In re Genuis Brands Int'l, Inc. Sec. Litig.*,
97 F.4th 1171 (9th Cir. 2024) .......... 15

*Hanlon v. Chrysler Corp.*,
150 F.3d 1011 (9th Cir. 1998) .......... 7, 8, 9, 11

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*,
2010 WL 4027632 (S.D. Cal. Oct. 14, 2010) .......... 9

*In re Illumina, Inc. Sec. Litig.*,
2019 WL 6894075 (S.D. Cal. Dec. 18, 2019) .......... 10

*In re Immune Response Sec. Litig.*,
497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......... 13

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 834767 (S.D. Cal. Mar. 17, 2025) .......... 10

*In re ImmunityBio, Inc. Sec. Litig.*,
2025 WL 1686263 (S.D. Cal. June 16, 2025) .......... 17

*Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) .......... 9, 11

*Kendall v. Odonate Therapeutics, Inc.*,
2022 WL 1997530 (S.D. Cal. June 6, 2022) .......... 11, 16

*In re LinkedIn User Priv. Litig.*,
309 F.R.D. 573 (N.D. Cal. 2015) .......... 17

*Nguyen v. Radient Pharms. Corp.*,
2014 WL 1802293 (C.D. Cal. May 6, 2014) .......... 16

*Officers for Justice v. Civil Serv. Comm'r*,
688 F.2d 615 (9th Cir. 1982) .......... 6

*In re Progentiy, Inc. Sec. Litig.*,
2026 WL 608310 (S.D. Cal. Mar. 4, 2026) .......... 20

*Redwen v. Sino Clean Energy Inc.*,
2013 WL 12303367 (C.D. Cal. July 7, 2013) ........................................20, 21

*Torrisi v. Tucson Elec. Power Co.*,
8 F.3d 1370 (9th Cir. 1993) ........................................17

*Vataj v. Johnson*,
2021 WL 5161927 (N.D. Cal. Nov. 5, 2021) ........................................16, 17

*In re Wireless Facilities, Inc. Sec. Litig. II*,
253 F.R.D. 607 (S.D. Cal. 2008) ........................................10

**Docketed Cases**

*Dicker v. TuSimple Holdings, Inc.*,
No. 3:22-CV-01300-BEN-MSB, slip op (S.D. Cal. Sept. 5, 2024) ..................22

**Statutes**

15 U.S.C. §78u-4(a)(4) ........................................19, 22

**Rules**

Fed. R. Civ. P. 23 ........................................6, 7, 21

Fed. R. Civ. P. 23(a) ........................................23

Fed. R. Civ. P. 23(b)(3) ........................................23

Fed. R. Civ. P. 23(c)(2) ........................................19

Fed. R. Civ. P. 23(c)(2)(B) ........................................22

Fed. R. Civ. P. 23(e) ........................................7

Fed. R. Civ. P. 23(e)(1)(B) ........................................21

Fed. R. Civ. P. 23(e)(2) ........................................ 1, 6-7

Fed. R. Civ. P. 23(e)(2)(A) ........................................7, 9

Fed. R. Civ. P. 23(e)(2)(B) ........................................9

Fed. R. Civ. P. 23(e)(2)(C) ........................................11

Fed. R. Civ. P. 23(e)(2)(C)(i) ........................................11

Fed. R. Civ. P. 23(e)(2)(C)(ii) ........................................................ 17, 18
Fed. R. Civ. P. 23(e)(2)(C)(iii) ........................................................ 19
Fed. R. Civ. P. 23(e)(2)(C)(iv) ........................................................ 6
Fed. R. Civ. P. 23(e)(2)(D) ........................................................ 19, 20
Fed. R. Civ. P. 23(e)(3) ........................................................ 6

# NOTICE OF MOTION

PLEASE TAKE NOTICE that Lead Plaintiffs Boston Retirement System, Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan, and Central Pennsylvania Teamsters Pension Fund-Retirement Income Plan (together, "Lead Plaintiffs"), on behalf of themselves and the other members of the proposed Settlement Class, will move this Court on May 5, 2026 at 9:30 a.m., before the Honorable Daniel E. Butcher, for Orders, pursuant to Federal Rule of Civil Procedure 23(e)(2): (i) granting final approval of the proposed Settlement of the above-captioned class action (the "Action"), on the terms set forth in the Stipulation and Agreement of Settlement, dated August 14, 2025 ("Stipulation"), ECF No. 97-2; (ii) certifying the Settlement Class and appointing Lead Plaintiffs as Class Representatives and Lead Counsel as Class Counsel; and (iii) approving the proposed plan for allocating the proceeds of the Settlement to the Settlement Class ("Plan of Allocation").

The motion is supported by the following Memorandum of Points and Authorities and the accompanying Declaration of Lauren A. Ormsbee in Support of (I) Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Motion for an Award of Attorneys' Fees and Expenses, dated March 31, 2026 ("Ormsbee Decl."), with annexed exhibits, filed herewith.[1]

Pursuant to the Order granting preliminary approval of the Settlement (ECF No. 98), any objections and requests for exclusion from the Settlement Class must be received by April 14, 2026. Proposed orders granting the relief requested by this motion, including a proposed Judgment negotiated by the Settling Parties, will be submitted with Lead Plaintiffs' reply submission on or before April 28, 2026, after

[1] The terms of the Settlement are set forth in the Stipulation. All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein. All references to "Ex." herein are references to exhibits attached to the Ormsbee Declaration. Unless otherwise noted, citations and internal quotations have been omitted.

the deadline for objecting or requesting exclusion has passed.

## MEMORANDUM OF POINTS AND AUTHORITIES

## PRELIMINARY STATEMENT

Lead Plaintiffs Boston Retirement System, Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan, and Central Pennsylvania Teamsters Pension Fund-Retirement Income Plan, respectfully submit this memorandum of law in support of their motion for final approval of the proposed Settlement of the above-captioned class action (the "Action") in the amount of $33,750,000, in cash, and approval of the proposed Plan of Allocation, pursuant to the terms of the Stipulation and Agreement of Settlement, dated August 14, 2025.[2] The Settlement is with Masimo Corporation ("Masimo" or the "Company"), Micah Young, Bilal Muhsin, and Eli Kammerman (collectively, "Settling Defendants").

As described below and in the accompanying Ormsbee Declaration, the Settlement is a very favorable result for the Settlement Class. Facing significant challenges with respect to obtaining a greater recovery after class certification, summary judgment and trial, Lead Plaintiffs and Lead Counsel, being fully informed by discovery and litigation efforts, negotiated this very favorable recovery for the Settlement Class. The Settlement was reached after nearly two years of vigorously contested litigation, in which all parties strongly advanced their positions. During the course of the litigation, Lead Plaintiffs, among other things: (i) conducted an extensive investigation of the claims at issue, which included reviewing and analyzing SEC filings and contacting and interviewing many former employees of Masimo; (ii) drafted a detailed amended complaint; (iii) responded to Defendants' motion to dismiss and request for judicial notice; (iv) propounded discovery requests; (v) reviewed over 61,500 pages of documents produced in discovery; (vi) negotiated discovery parameters and discovery disputes; (vii)

---

[2] All capitalized terms used herein that are not defined have the same meanings as in the Stipulation, previously filed with the Court, ECF No. 97-2.

consulted with experts in the fields of loss causation, damages, and accounting; and (viii) exchanged extensive mediation material and participated in arm's-length mediated settlement discussions. *See generally* Ormsbee Declaration, filed herewith.[3] As a result of these efforts, Lead Plaintiffs and Lead Counsel had a well-developed understanding of the strengths and weaknesses of the claims at issue in the Action. Lead Plaintiffs litigated the Action with persistence and tenacity and were prepared to take their claims to trial.

While Lead Plaintiffs believe the Settlement Class's claims are meritorious and strong, they recognize there were substantial risks to continued litigation and trial. As discussed in detail in the Ormsbee Declaration and summarized below, among other things, Defendants would likely argue in future dispositive motions and at trial that, for example, the two categories of false and misleading statements and omissions sustained by the Court were not actionable or supported by the evidence. Defendants would likely put forward facts and several highly qualified experts in support of several additional affirmative defenses that could potentially absolve Defendants from liability or drastically reduce the size of the Settlement Class and the amount of recoverable damages. The Settlement avoids these risks, as well as the delay and expense of continued litigation – while providing a substantial and certain benefit to the Settlement Class.

Lead Plaintiffs were actively involved throughout the litigation, diligently

---

[3] The Ormsbee Declaration is an integral part of this submission and, for the sake of brevity in this memorandum, the Court is respectfully referred to it for a detailed description of, *inter alia*: the history of the Action; the nature of the claims asserted; the litigation efforts; the negotiations leading to the Settlement; and the risks and uncertainties of continued litigation, among other things. Citations to "¶" in this memorandum refer to paragraphs in the Ormsbee Declaration.

All exhibits herein are annexed to the Ormsbee Declaration. For clarity, citations to exhibits that themselves have attached exhibits will be referenced as "Ex. ___ - ___." The first numerical reference is to the designation of the entire exhibit attached to the Declaration and the second reference is to the exhibit designation within the exhibit itself.

All internal quotations and citations are omitted unless otherwise noted.

representing the Settlement Class, and have approved the Settlement. *See* Declaration of Timothy J. Smyth, Esq., Ex. 1, and Declaration of Joseph J. Samolewicz, Ex. 2. The Settlement Class's reaction to date similarly reflects approval of the Settlement. Notice was provided to the Settlement Class beginning on February 17, 2026. *See* Declaration of Adam D. Walter Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusions and Objections Received to Date, dated March 27, 2026 ("Mailing Decl."), Ex. 5. Although the April 14, 2026 deadline to object to the Settlement or request exclusion from the Settlement Class has not yet passed, to date, no objections or requests for exclusion have been received.

In addition, the Plan of Allocation for the distribution of the proceeds of the Settlement, which was developed by Lead Counsel with the assistance Lead Plaintiffs' damages expert, is a fair and reasonable method for distributing the Net Settlement Fund to eligible Claimants and should also be approved by the Court.

## PRELIMINARY APPROVAL AND THE NOTICE PROGRAM

On February 2, 2026, the Court entered an order preliminarily approving the proposed Settlement, preliminarily certifying the Settlement Class, and approving the forms and methods of providing notice to the Settlement Class (the "Preliminary Approval Order," ECF No. 98). Pursuant to and in compliance with the Preliminary Approval Order, beginning on February 17, 2026, the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), caused the Postcard Notice to be mailed by first-class mail to potential Settlement Class Members and banks, brokers, and other nominees ("Nominees"). *See* Mailing Decl., Ex. 5 at ¶¶3-10 and Ex. A attached thereto. To date, notice of the Settlement has been disseminated to 83,065 potential Settlement Members or their Nominees, which includes 45,460 mailed Postcard Notices and 37,605 emails with links to the Settlement Website. *Id*. at ¶10. On March 3, 2026, the Summary Notice was published in *The Wall Street*

*Journal* and was disseminated over the internet using *PR Newswire*. *Id*. at ¶11 and Exs. D & E attached thereto.

The Claim Form, Postcard Notice, and the long-form Notice, along with other Settlement related documents, were posted on a website established by A.B. Data for purposes of the Settlement. Ex. 5 at ¶6. The Settlement website also provides important dates and deadlines in connection with the Settlement, as well as access to downloadable copies of relevant documents, such as the Complaint, the Stipulation, and the Preliminary Approval Order, and access to an online claim portal. *Id*. Copies of the Postcard Notice, long-form Notice, and Claim Form are also available on Lead Counsel's website, www.labaton.com. ¶127.

The notices collectively describe, *inter alia*, the claims asserted in the Action, the contentions of the parties, the course of the litigation, the terms of the Settlement, the maximum amounts that would be sought in attorneys' fees and expenses, the proposed Plan of Allocation, the right to object to the Settlement, and the right to seek exclusion from the Settlement Class. *See generally* Exs. 5-A, 5-B, 5-E, and 5-F. The notices also give the deadlines for objecting, seeking exclusion, and submitting claims, and advise potential Settlement Class Members of the scheduled Settlement Hearing before this Court. *Id*. To date, the Settlement Class's reaction to the proposed Settlement has been positive. While the deadline (April 14, 2026) for objecting and seeking exclusion has not yet passed, to date there have been no objections to any aspect of the Settlement and no requests for exclusion.[4]

## <u>ARGUMENT</u>

## I. THE SETTLEMENT WARRANTS FINAL APPROVAL

### A. Standards Governing Approval of Class Action Settlements

The Ninth Circuit recognizes a "'strong judicial policy that favors

[4] Should any objections or requests for exclusion be received, Lead Plaintiffs will address them in their reply papers, which are due to be filed with the Court on April 28, 2026. Additionally, nothing has occurred to date to impact the Court's provisional certification of the Settlement Class.

settlements, particularly where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106, 1121 (9th Cir. 2020); *Baker v. Seaworld Ent. Inc.*, 2020 WL 4260712 (S.D. Cal. July 24, 2020) ("Judicial policy favors settlement in class actions and other complex litigation where substantial resources can be conserved by avoiding the time, cost, and rigors of formal litigation."). It is well established in the Ninth Circuit that "voluntary conciliation and settlement are the preferred means of dispute resolution." *Officers for Justice v. Civil Serv. Comm'r*, 688 F.2d 615, 625 (9th Cir. 1982).

Rule 23(e)(2) provides that a court may approve a proposed settlement that would bind class members "only after a hearing and only on finding that it is fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3);[5] and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). Rule 23, as amended in December 2018, has not changed the established overall standard for approving a proposed class settlement, *i.e.*,

[5] Rule 23(e)(2)(C)(iv) requires the disclosure of any agreement between the parties in connection with a proposed settlement. Here, in addition to the Stipulation, on July 24, 2025 the Settling Parties executed a settlement Term Sheet and on August 14, 2025 they entered into a Confidential Supplemental Agreement Regarding Requests for Exclusion, concerning the circumstances under which Masimo could terminate the Settlement based upon the number of exclusion requests received. The Term Sheet, Stipulation, and the Supplemental Agreement are the only agreements concerning the Settlement entered into by the Settling Parties.

evaluating whether it is fair, adequate, and reasonable. Fed. R. Civ. P. 23(e)(2).

In considering final approval, the Court may also consider the Ninth Circuit's long-standing approval factors, many of which overlap with the Rule 23(e)(2) considerations: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). The Advisory Committee Notes to the 2018 amendments to Rule 23 explain that the four Rule 23(e)(2) factors are not intended to "displace" any factor previously adopted by the courts, but "rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." Fed. R. Civ. P. 23 Advisory Comm. Notes to 2018 Amendments, Subdivision (e)(2); *see also In re Cal. Pizza Kitchen Data Breach Litig.*, 129 F.4th 667, 674 (9th Cir. 2025) ("The key *Hanlon* factors are now baked into the text of Rule 23(e)," but the remaining ones can still be relevant to the Rule 23(e)(2) analysis.); *Cullen v. RYVYL Inc.*, 2025 WL 3731036, at *5 (S.D. Cal. Dec. 19, 2025), *amended*, 2026 WL 374941 (S.D. Cal. Feb. 9, 2026) ("Accordingly, the Court's analysis will focus on the amended 23(e) factors and address any pertinent *Hanlon* factors.").

All of these factors, whether in Rule 23 or Ninth Circuit jurisprudence, favor approval of the proposed Settlement.

**B. Rule 23(e)(2)(A): The Class Has Been Adequately Represented**

In determining whether to approve a class action settlement, courts consider whether "the class representative and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). "Resolution of two questions determines legal

adequacy: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon,* 150 F.3d at 1020.

Here, Lead Plaintiffs' claims are based on the same common course of alleged conduct by Defendants, are typical of all other Settlement Class Members, and Lead Plaintiffs have no interests antagonistic to the Settlement Class. *See City of Birmingham Relief & Ret. Sys. v. Acadia Pharms., Inc.,* 348 F.R.D. 372, 382-83 (S.D. Cal. 2024) (finding plaintiffs adequately represented the class where lead plaintiffs' claims aligned with the interests of the proposed class and they all suffered injuries from the same conduct).

Furthermore, Lead Plaintiffs and Lead Counsel have adequately represented the Settlement Class in both their vigorous prosecution of the claims and in their negotiation of the Settlement. Lead Plaintiffs and Lead Counsel developed a deep understanding of the facts of the case and merits of the claims by, *inter alia*: (i) conducting an extensive investigation of the claims and defenses; (ii) drafting a detailed amended complaint, which expanded the scope of the initial complaint by adding additional misrepresentations, disclosures, and other allegations in support of the claims at issue, and included the accounts of sixteen former Masimo employees; (iii) responding to Defendants' motion to dismiss and request for judicial notice; (iv) propounding discovery requests; (v) reviewing over 61,500 pages of documents produced in discovery; (vi) negotiating discovery parameters and discovery disputes; (vii) consulting with experts in the fields of loss causation, damages, and accounting; and (viii) exchanging extensive mediation briefing and participating in a mediation. *See generally* Ormsbee Decl. at §§III.-V.

Lead Plaintiffs regularly communicated with Lead Counsel and reviewed material filings in the case, such as the amended complaint and the briefing on Defendants' motion to dismiss. Lead Plaintiffs also completed certifications and declarations in support of case filings. Lead Plaintiff Boston Retirement traveled to

New York to attend the May 28, 2025 mediation. Furthermore, Lead Plaintiffs were involved throughout the settlement discussions and, with an informed understanding, agreed to the Settlement. *See* Exs. 1 and 2.

Likewise, Lead Counsel had a clear view of the strengths and risks of the case and was equipped to make an informed decision regarding the reasonableness of a potential settlement. *See Jiangchen v. Rentech, Inc.,* 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where counsel "has significant experience in securities class action lawsuits"). Over the course of the litigation, Lead Counsel developed a deep understanding of the facts of the case and the merits of the claims. *See generally* Ormsbee Decl. at §§III.-V. Lead Counsel is highly qualified and experienced in securities litigation, as set forth in its firm resume (*see* Ex. 7-D). Accordingly, the Settlement Class has been, and remains, well represented.

Through their efforts on behalf of the Settlement Class, Lead Counsel and Lead Plaintiffs have concluded that the proposed Settlement is fair, reasonable, and adequate. As courts have often observed, "[S]ignificant weight should be attributed to counsel's belief that settlement is in the best interest of those affected by the Settlement." *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.*, 2010 WL 4027632, at *2 (S.D. Cal. Oct. 14, 2010).

Accordingly, it is respectfully submitted that this factor supports approval of the Settlement.

### C. Rule 23(e)(2)(B): The Settlement Is the Product of Arm's-Length Negotiations Between Experienced Counsel

Rule 23(e)(2)(B) asks whether "the [settlement] proposal was negotiated at arm's length." This consideration (and Rule 23(e)(2)(A) discussed above) "overlaps with certain *Hanlon* factors, such as the non-collusive nature[6] of negotiations, the

[6] The Settlement has none of the indicia of possible collusion identified by the Ninth Circuit, *see In re Bluetooth Headset Prod. Liab. Litig.,* 654 F.3d 935, 947 (9th Cir. 2011), such as a "clear-sailing" fee agreement or a provision that would

extent of discovery completed, and the stage of proceedings." *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *7 (N.D. Cal. July 22, 2019).

Courts have long recognized the importance of arm's-length negotiations. *See, e.g., In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 834767, at *8 (S.D. Cal. Mar. 17, 2025) ("The Ninth Circuit 'put[s] a good deal of stock in the product of an arms-length, non-collusive, negotiated resolution' in approving a class action settlement."). And, "Settlements that follow sufficient discovery and genuine arms-length negotiation are presumed fair." *In re Wireless Facilities, Inc. Sec. Litig. II*, 253 F.R.D. 607, 610 (S.D. Cal. 2008). Moreover, the involvement of an experienced mediator supports the finding that a settlement is free of collusion. *See id*. ("The Settlement was ultimately reached after mediation as a result of [mediator's] proposal, evincing that the settlement was reached via non-collusive means."); *In re Illumina, Inc. Sec. Litig*., 2019 WL 6894075, at *5 (S.D. Cal. Dec. 18, 2019) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

As detailed in the Ormsbee Declaration, the Settlement was achieved after a formal mediation session on May 28, 2025, which included the exchange of robust mediation materials prior to the mediation session. *See generally* Ormsbee Decl. at §V.; Declaration of David M. Murphy of Phillips ADR, dated March 30, 2026, Ex. 6. During the mediation session, Defendants, represented by well-regarded law firms with deep expertise in the defense of securities class actions, vigorously asserted arguments against liability and damages. With Lead Plaintiffs and Defendants still meaningfully apart in their respective settlement positions after the mediation, they agreed to continue negotiations through the Mediator. On June 16,

---

allow settlement proceeds to revert to defendants. *See* Stipulation at ¶12 ("This is not a claims-made settlement. As of the Effective Date, Defendants, and/or any other Person funding the Settlement on a Settling Defendant's behalf, shall not have any right to the return of the Settlement Fund or any portion thereof for any reason.").

2025, after additional discussions between counsel, the Settling Parties accepted the Mediator's proposal to resolve all claims in the Action for $33.75 million in cash, subject to the negotiation of non-financial terms for the Settlement and Court approval. These negotiations were at all times adversarial and at arm's-length, and have produced a result that is in the best interests of the Settlement Class.

Furthermore, the parties were thoroughly absorbed in the merits of the litigation when they agreed to settle, after fact discovery was underway with more than 61,500 pages of documents produced in discovery, as detailed in the Ormsbee Declaration. There can be no question that Lead Plaintiffs and Lead Counsel had sufficient information to evaluate the merits of the Settlement by the time it was reached. *See Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *7 (S.D. Cal. June 6, 2022) (finding the extent of discovery completed and stage of proceedings support final approval where plaintiffs engaged in a thorough investigation and drafted a detailed amended complaint, briefed a motion to dismiss, and participated in a full day mediation session).

### D. Rule 23(e)(2)(C): The Relief Provided by the Settlement Is Adequate

In determining whether a class-action settlement is "fair, reasonable, and adequate," the Court must consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C). This factor overlaps with the Ninth Circuit factors that consider "the strength of the plaintiffs' case," "amount offered in the settlement," and "the risk, expense, complexity, and likely duration of further litigation" and the risk of maintaining class action status." *Churchill Vill.* 361 F.3d at 575; *Hanlon*, 150 F.3d at 1026.

#### 1. Rule 23(e)(2)(C)(i): Risks of Continued Litigation

"In general, securities fraud class actions are complex cases that are time-consuming and difficult to prove." *Jiangchen*, 2019 WL 5173771, at *6; *see also In*

*re BofI Holding, Inc. Sec. Litig*., 2022 WL 9497235, at *6 (S.D. Cal. Oct. 14, 2022) (listing the many obstacles facing plaintiffs, should the action proceed, and noting that "securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win"); *In re Extreme Networks, Inc. Sec. Litig*., 2019 WL 3290770, at *8 ("Securities actions in particular are often long, hard-fought, complicated, and extremely difficult to win."). Although Lead Plaintiffs and Lead Counsel believe that the claims asserted against Defendants remain strong, they recognize the significant challenges and risks they would face moving forward, as well as the expense and length of continued litigation through the completion of fact discovery, expert discovery, class certification, summary judgment motions, trial, and undoubtedly appeals.

**Falsity:** Lead Plaintiffs faced substantial ongoing challenges with respect to proving that Defendants made materially false and misleading statements, an essential element of Lead Plaintiffs' Section 10(b) claims. Defendants would have sought to convince the Court and a jury that the remaining two categories of statements and omissions sustained by the Court were not actionable or could not be proven.

As to the Future Performance Statements, Defendants would have likely argued that the statements are covered and protected by the PSLRA's Safe Harbor for forward-looking statements, and that meaningful cautionary language accompanied the statements through Defendants' risk disclosures in their SEC filings. Lead Plaintiffs would have countered that even if the Future Performance Statements were deemed forward-looking, the PSLRA Safe Harbor was inapplicable because (i) the associated cautionary language was meaningless, and (ii) Defendants had actual knowledge of the falsity of their misstatements. ¶97.

Defendants would have also likely argued at summary judgment that the Future Performance Statements were inactionable statements of corporate optimism or statements of inactionable puffery. Should the Court have credited such

arguments, the Future Performance Statements may have been dismissed in-part, or in-full, from the Action as a matter of law. ¶98.

Regarding the remaining Sound Acquisition Statement, *i.e.*, the statement concerning Masimo's acquisition and integration of Sound United, there were significant and substantial risks given that only one such statement survived the Court's MTD Order. Specifically, although various Defendants made misrepresentations concerning the Sound United integration, only one such Sound Acquisition Statement—made specifically by Defendant Young—remained. Similar to the Future Performance Statements, Defendants would have likely argued at summary judgment that the Sound Acquisition Statement was inactionable puffery. If the Court ultimately agreed with Defendants, the Sound Acquisition Statement that survived would have been dismissed from the Action. ¶¶100-01.

Even if the alleged misstatements were found to be actionable, there were considerable challenges with respect to proving their falsity. In particular, Defendants would likely argue that the testimony from the confidential witnesses concerning the use of "plugs" to allegedly manipulate Masimo's financial close numbers is undermined by the fact that (i) the Company's independent auditor signed off on Masimo's financial statements; and (ii) there has been no government action taken by the SEC to date in response to whistleblower claims related to the accounting "plugs" allegations. ¶102.

**Scienter:** Lead Plaintiffs would also need to prove that the allegedly false and misleading statements were made with the intent to mislead investors or with deliberate recklessness. As courts have recognized, a defendant's state of mind in a securities case "is the most difficult element of proof and one that is rarely supported by direct evidence." *See In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *3 (C.D. Cal. Oct. 25, 2016); *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172 (S.D. Cal. 2007) (noting that scienter is a "complex and difficult [element] to establish at trial").

Here, the MTD Order ruled that Lead Plaintiffs failed to plead scienter for three of the four Individual Defendants (Kiani, Muhsin, and Kammerman), thus leaving Section 10(b) claims in place only for Defendants Young and Masimo. MTD Order at 18-23. The Court also affirmed that Masimo's scienter was derived from CFO Young's scienter. *See* MTD Order at 23 n.8. Accordingly, proving Young's scienter would have been of paramount importance. Additionally, Lead Plaintiffs would need to obtain document and testimonial evidence sufficient to establish scienter with respect to the Company's purported use of accounting "plugs." ¶105.

Defendants would likely produce documents and elicit testimony to demonstrate that they relied upon financial statements prepared by other corporate employees and blessed by the Company's auditors. Moreover, at summary judgment (or at trial) this Court (or a jury) may have credited Masimo's potential competing inference that Masimo acted swiftly to report lower than expected earnings and adjust its full year guidance, negating an inference of scienter or intent to defraud. ¶106.

Additionally, should the Court or jury have credited Defendants' argument that certain of the statements reflected mere optimism by the Masimo executives, Defendants also would have a strong likelihood of demonstrating that there was no overall intent to deceive the market and, rather, Defendants were merely overly optimistic when making their statements. ¶107.

Indeed, while Lead Plaintiffs believe the discovery produced by Defendants and the non-party former employee demonstrate significant indicia of scienter—such factual questions are ripe for jury determination, and there is no guarantee that a jury would find in Lead Plaintiffs' favor. ¶108.

**Damages:** Another principal challenge in continuing the litigation is the difficulty of proving loss causation and damages. To succeed at trial in a securities fraud case, "a plaintiff [must] prove that the defendant's misrepresentation (or other

fraudulent conduct) proximately caused the plaintiff's economic loss." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 346 (2005). Here, loss causation and damages would have been hotly contested by Defendants, particularly at class certification and summary judgment, and would continue to be challenged in *Daubert* motions, at trial, in post-trial proceedings and appeals.

As a threshold matter, Lead Plaintiffs' loss causation theory was premised on proving two corrective disclosures: (1) the July 17, 2023 public preannouncement of its Q2 2023 earnings (revealing a substantial cut to its full-year guidance); and (2) the August 8, 2023 release of its final quarterly results for Q2 2023. Lead Plaintiffs' damages expert has estimated that maximum damages attributable to the allegedly corrective disclosures were approximately $755.5 million, depending on the trading model and assumptions used. However, Defendants would have likely argued that the two corrective disclosures did not correct—whether in full or in part—the falsity of Defendants' prior misstatements (*i.e.*, the Future Performance Statements and the Sound Acquisition Statement), and thus, there was no "causal connection"[7] between the alleged fraud and the alleged loss. Based upon such arguments, should the Court (or jury) have dismissed one corrective disclosure at any continued stage of the Action, damages would have been severely and greatly reduced. ¶110.

Moreover, Defendants would have likely argued that Lead Plaintiffs' expert would need to, and would be unable to, disaggregate other confounding non-fraud related factors from the corrective disclosures' impact on Masimo's stock price. Defendants likely would have presented complex expert-driven evidence purportedly showing that damages in the Action were much smaller, or none at all, after disaggregation. While Lead Plaintiffs do not concede that disaggregation was or is necessary, they recognize that the impact of non-fraud related information on

[7] *In re Genuis Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1183 (9th Cir. 2024).

the stock price declines on July 17, 2023 and August 8, 2023 would need to be quantified through complicated nuanced analysis. ¶¶111-12. Lead Plaintiffs' expert has estimated that damages could be reduced by more than 60%—to about $272.9 million—if the disaggregation of confounding information was required. ¶113.

Issues relating to loss causation and damages would have come down to an unpredictable and hotly disputed "battle of the experts." The uncertainty as to which side's expert's view might be credited by the jury, or the Court, presents a formidable litigation risk in securities actions. *See, e.g., Nguyen v. Radient Pharms. Corp*., 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014) (approving settlement in securities case where "[p]roving and calculating damages required a complex analysis, requiring the jury to parse divergent positions of expert witnesses in a complex area of the law" and "[t]he outcome of that analysis is inherently difficult to predict and risky").

**<u>Favorable and Timely Recovery:</u>** Based on the analyses above, the Settlement recovers a range of approximately 4.5% to 12.4% of estimated damages. In the sphere of securities class actions, Lead Plaintiffs and Lead Counsel believe this is an excellent outcome. ¶143.

According to NERA's full-year 2025 report, for cases with total NERA-defined investor losses of between $200 million and $399 million, the median percentage of recovery from 2016 to 2025 was 2.7% of estimated losses. *See* Ex. 4 at 27. For cases with NERA losses of $600 million to $999 million, the median percentage of recovery during this time period was 1.7%. *Id*. Courts also regularly approve settlements with comparable or lower percentage recoveries than obtained here. *See, e.g., Kendall*, 2022 WL 1997530, at *5 (approving settlement that represented approximately 3.49% of maximum estimate damages); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other

securities class action settlements"); *Azar v. Blount Int'l, Inc.*, 2019 WL 7372658, at *7 (D. Or. Dec. 31, 2019) (approving settlement recovering "4.63 to 7.65 percent of the Class's total damages as Plaintiffs estimated").

Lastly, the Settlement also comes without the considerable risk, expense, and delay of summary judgment, trial, and post-trial litigation. *See, e.g.*, *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993) ("the cost, complexity and time of fully litigating the case all suggest that this settlement was fair"); *In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *9 (S.D. Cal. June 16, 2025) ("In addition to risk and unpredictability, prolonged litigation would also impose substantial costs and delays, especially since 'securities fraud class actions are notably complex, lengthy, and expensive cases to litigate.'").

Here, discovery was underway, but much more would need to be done, and time and costs would accumulate along with more document productions, discovery disputes, expert evidence and testimony, and numerous fact and expert depositions. *See In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("Generally, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.").

Accordingly, in light of all the substantial risks and expense of continued litigation, and compared to the certain and prompt recovery of $33.75 million, Lead Plaintiffs and Lead Counsel believe the Settlement is an excellent result.

#### 2. Rule 23(e)(2)(C)(ii): Effective Process for Distributing Relief to the Settlement Class

Rule 23(e)(2)(C)(ii) instructs courts to consider whether the relief provided to the class is adequate in light of the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

Here, the proceeds of the Settlement will be distributed with the assistance of an experienced claims administrator, A.B. Data. The Claims Administrator will

employ a well-tested protocol for the processing of claims in a securities class action. Specifically, a Claimant will submit, either by mail or online using the case website, the Court-approved Claim Form. Based on the trade information provided by Claimants, the Claims Administrator will determine each Claimant's eligibility to recover by, among other things, calculating their respective "Recognized Claims" based on the Court-approved Plan of Allocation, and ultimately determine each eligible Claimant's *pro rata* portion of the Net Settlement Fund. *See* Stipulation at ¶24. Lead Plaintiffs' claims will be reviewed in the same manner. Claimants will be notified of any defects or conditions of ineligibility and be given the chance to cure and contest the rejection of their claims. Stipulation at ¶30(d)-(e). Any claim disputes that cannot be resolved will be presented to the Court. *Id*.

After the Settlement reaches its Effective Date (*id*. at ¶39) and the claims process is completed, Authorized Claimants will be issued payments in the form of checks and wire transfers. If there are unclaimed funds after the initial distribution, and it would be cost-effective to conduct a further distribution, the Claims Administrator will conduct a further distribution of remaining funds (less the estimated expenses for the additional distribution, Taxes, and unpaid Notice and Administration Expenses). Additional distributions will proceed in the same manner until it is no longer economical to conduct further distributions.

Thereafter, Lead Plaintiffs recommend that any *de minimis* balance that remains in the Net Settlement Fund, after payment of any outstanding Notice and Administration Expenses and Taxes, be donated to the Consumer Federation of America ("CFA"), a non-profit, non-sectarian 501(c) organization, or such other organization approved by the Court. *Id* at ¶27; Ex. 5-B at ¶68. CFA is a non-profit, consumer advocacy organization established in 1968 to advance consumer interests, including those of investors, through policy research, advocacy, and education before the judiciary, Congress, the Executive Branch, federal and state regulatory agencies, and state legislatures. *See generally* www.consumerfed.org (last accessed

March 31, 2026). CFA has been approved as a *cy pres* beneficiary in numerous securities cases, including *In re Conduent Inc. Sec. Litig.*, No. 19-cv-08237 (D. N.J.); *In re StoneCo Ltd. Sec. Litig.*, No. 21-cv-9620 (S.D.N.Y.); *In re Livent Corp. Sec. Litig.*, Case No. 190501229 (Pa. Ct. Com. Pl. 2021); *In re Broadcom Corp. Sec. Litig.*, No. 01-CV-00275-MLR (C.D. Cal.); and *Allison v. Oak Street Health, Inc., et al.*, No. 22-CV-00149 (N.D. Ill.).

**3. Rule 23(2)(C)(iii): Anticipated Legal Fees and Expenses**

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorneys' fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in Lead Counsel's Motion for an Award of Attorneys' Fees and Expenses, submitted herewith, Lead Counsel seeks an award of attorneys' fees of 25% of the Settlement Fund, the Ninth Circuit benchmark, and Litigation Expenses of $265,418.12. Lead Counsel's Fee Motion also includes a request by Lead Plaintiffs in the aggregate amount of $3,702.74 in connection with their efforts on behalf of the class, pursuant to the PSLRA. The attorneys' fee and expense request is not part of any agreement with Settling Defendants, and the Settlement cannot be terminated based on any ruling on the fees or expenses.

**E. Rule 23(e)(2)(D): Settlement Class Members Are Treated Equitably Relative to One Another**

The Settlement does not improperly grant preferential treatment to either Lead Plaintiffs or any segment of the Settlement Class. Rather, all members of the Settlement Class, including Lead Plaintiffs, will receive a distribution from the Net Settlement Fund pursuant to the Plan of Allocation approved by the Court, which is discussed below.[8] All Settlement Class Members that were allegedly harmed as a result of the alleged violations of the Exchange Act, and that submit an eligible

[8] Lead Plaintiffs' request for reimbursement of their reasonable costs and expenses directly related to their participation in the Action, noted above, would not constitute preferential treatment. *See* 15 U.S.C. §78u-4(a)(4) (reimbursement of plaintiffs' costs explicitly contemplated by the PSLRA in addition to receiving their *pro rata* recovery).

claim pursuant to the Stipulation and Plan of Allocation, will receive their *pro rata* share of the Net Settlement Fund based on their "Recognized Claim" under the plan. *See generally* long-form Notice at ¶¶57-60, Ex. 5-B.

## II. THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION

In addition to seeking final approval of the Settlement, Lead Plaintiffs also seek approval of the Plan of Allocation. The Plan of Allocation, drafted with the assistance of Lead Plaintiffs' damages expert, is a fair, reasonable, and adequate method for allocating the proceeds of the Settlement among eligible Claimants and treats all Settlement Class Members equitably, as required by Rule 23(e)(2)(D). The standard for approval of a plan of allocation in a class action is the same as the standard applicable to approval of the settlement as a whole – the plan must be fair, reasonable, and adequate. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also Ali v. Franklin Wireless Corp.,* 2024 WL 5179910, at *9 (S.D. Cal. Dec. 19, 2024). "[A]n allocation formula that has a 'reasonable, rational basis' satisfies the requirement, 'particularly if recommended by competent class counsel.'" *In re Progentiy, Inc. Sec. Litig*., 2026 WL 608310, at *4 (S.D. Cal. Mar. 4, 2026).

Each Authorized Claimant, including Lead Plaintiffs, will receive a distribution pursuant to the Plan, and Lead Plaintiffs will be subject to the same formulas as other class members. *See Cullen*, 2025 WL 3731036, at *5 ("Lead Plaintiff will receive the same level of pro rata recovery as all other similarly situated Settlement Class Members. Thus, the proposed Settlement Allocation treats class members equitably relative to each other."). "[A] plan of allocation . . . fairly treats class members by awarding a pro rata share to every Authorized Claimant, even as it sensibly makes interclass distinctions based upon, *inter alia*, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue." *Redwen v. Sino Clean Energy Inc.*, 2013 WL 12303367, at *8 (C.D. Cal. July 7, 2013).

Here, the objective of the Plan of Allocation is to distribute the Net Settlement Fund equitably among those Settlement Class Members who suffered economic losses with respect to shares of Masimo publicly traded common stock purchased or otherwise acquired during the Class Period. Lead Counsel developed the Plan in consultation with Lead Plaintiffs' damages expert. A Recognized Loss Amount will be calculated for each share purchased by a Claimant, using the transactional information provided by Claimants in their Claim Forms. ¶¶131-33. The Recognized Loss Amount calculations are based on Lead Plaintiffs' expert's analysis of alleged artificial inflation. ¶133. The sum of a Claimant's Recognized Loss Amounts per share is their "Recognized Claim." Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund based on their Recognized Claims. *Id*.

The Plan of Allocation was fully described in the long-form Notice and, to date, there has been no objection to the proposed plan. *See* Ex. 5-B at ¶¶54-69.

It is respectfully submitted that the proposed Plan of Allocation will result in a fair distribution of the available proceeds among Settlement Class Members who submit valid claims.

## III. NOTICE PROGRAM AND REACTION OF THE SETTLEMENT CLASS TO DATE

Notice of a class action settlement must be directed "in a reasonable manner to all class members who would be bound" by the Settlement. Fed. R. Civ. P. 23(e)(1)(B). In granting preliminary approval of the Settlement, the Court approved Lead Plaintiffs' proposed notice plan. *See* ECF No. 98 at ¶¶7-13. The notice program's combination of individually mailed Postcard Notices to all Settlement Class Members who could be identified with reasonable effort, supplemented by the Summary Notice in a widely circulated publication, transmission over a business newswire, and publication on internet websites, satisfied all requirements of Rule 23, due process, and the PSLRA. *See, e.g.*, *Cullen v. RYVYL Inc.*, 2025 WL

2836651, at *16 (S.D. Cal. Aug. 20, 2025) (approving similar notice program that included mailing postcard notices to potential class members and nominees followed by publication notice and posting notice on a settlement website); *Dicker v. TuSimple Holdings, Inc.,* No. 3:22-CV-01300-BEN-MSB, slip op at 4 (S.D. Cal. Sept. 5, 2024) (same), Ex. 9.[9]

As detailed in the accompanying Mailing Declaration, as of March 27, 2026, notice of the Settlement has been disseminated to 83,065 potential Settlement Members or their Nominees, which includes 45,460 mailed Postcard Notices and 37,605 emails with links to the Settlement Website. *See* Ex. 5 at ¶10. In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire* on March 3, 2026. *Id*. at ¶11. The Claims Administrator also maintains a dedicated settlement website, www.MasimoSecuritiesSettlement.com. *Id*. at ¶12. Claim Forms can be submitted to the Claims Administrator by mail or using the settlement website. *Id*. at ¶13.

Notice of a class action settlement "is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill*, 361 F.3d at 575. The contents of the notices here provided the necessary information for Settlement Class Members to make an informed decision regarding the Settlement and contained all of the information required by Rule 23(c)(2)(B) and the PSLRA, 15 U.S.C. § 78u-4(a)(7).

While the objection and exclusion deadline – April 14, 2026 – has not yet passed, to date, no objections have been received by Lead Counsel or docketed by the Court, and no requests for exclusion have been received. The reaction to date supports approval of the Settlement and the proposed Plan of Allocation. Lead

[9] All unreported "slip" opinions are annexed as Exhibit 9 to the Ormsbee Declaration.

Plaintiffs will address any objections and exclusion requests, if any, in its reply submission.

## IV. FINAL CERTIFICATION OF THE SETTLEMENT CLASS

The Court previously granted preliminary certification to the Settlement Class pursuant to Rules 23(a) and (b)(3). *See* ECF No. 98. Because nothing has occurred since then to cast doubt on the propriety of class certification for settlement purposes, and no objections to certification have been received to date, the Court should grant final class certification.

## CONCLUSION

For all the foregoing reasons, Lead Plaintiffs respectfully request that the Court grant final approval of the proposed Settlement and approve the proposed Plan of Allocation for the distribution of the Net Settlement Fund. Proposed orders, including the Judgment negotiated by the Settling Parties as part of the Settlement, will be filed with Lead Plaintiffs' reply submission on or before April 28, 2026, after the deadline for objection or requesting has passed.

Dated: March 31, 2026

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

By: *Lauren A. Ormsbee* /s/ Lauren A. Ormsbee

Lauren A. Ormsbee (*pro hac vice*)
Nicole M. Zeiss (*pro hac vice*)
David Saldamando (*pro hac vice*)
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
lormsbee@labaton.com
nzeiss@labaton.com
dsaldamando@labaton.com

*Attorneys for Lead Plaintiffs Boston Retirement System, Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan and Central Pennsylvania Teamsters Pension Fund-Retirement Income Plan 1987, and Lead Counsel for the Proposed Class*

Lucas E. Gilmore (SBN 250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
Lucasg@hbsslaw.com

*Liaison Counsel for the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on March 31, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all registered ECF participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 31, 2026

/s/ *Lauren A. Ormsbee*
Lauren A. Ormsbee

**Mailing Information for a Case 3:23-cv-01546-DEB Vazquez v. Masimo Corporation et al.**

Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- Adam Marc Apton

aapton@zlk.com

- Marshall A. Camp

mcamp@hueston.com, docketing@hueston.com, mschneider@hueston.com

- Robert James Ellison

robert.ellison@lw.com, robert-ellison-6864@ecf.pacerpro.com

- James M. Fee

jfee@labaton.com, 7935099420@filings.docketbird.com, ElectronicCaseFiling@labaton.com

- Christine M. Fox

cfox@labaton.com, ndonlon@labaton.com, vvibar@labaton.com, ElectronicCaseFiling@labaton.com, kjudd@labaton.com, 6312349420@filings.docketbird.com

- Robert Matthew Garsson

robgarsson@quinnemanuel.com

- Lucas E. Gilmore

lucasg@hbsslaw.com, sf_filings@hbsslaw.com

- Matthew J. Grier

mgrier@labaton.com, ElectronicCaseFiling@labaton.com, 2099396420@filings.docketbird.com

- John Charles Hueston

jhueston@hueston.com, docketing@hueston.com, lhiles@hueston.com

- Harry Arthur Olivar, Jr.

harryolivar@quinnemanuel.com

- Lauren Amy Ormsbee

LOrmsbee@labaton.com, 4457202420@filings.docketbird.com

- Jennifer Pafiti

jpafiti@pomlaw.com, efile@pomlaw.com

- Jeffrey F. Robertson

jeffrey.robertson@srz.com, courtfilings@srz.com, evan.melluzzo@srz.com, ecf-1822127e5d6b@ecf.pacerpro.com

- Valerie Suzanne Roddy

valerieroddy@quinnemanuel.com, ecf-8cc00a9b9174@ecf.pacerpro.com, calendar@quinnemanuel.com

- David Saldamando

dsaldamando@labaton.com

- Lisa Marie Strejlau

lstrejlau@labaton.com

- Michael E. Swartz

michaelswartz@quinnemanuel.com, michael-swartz-3349@ecf.pacerpro.com

- Jonathan D. Uslaner

JonathanU@blbglaw.com, managingclerk@blbglaw.com

- Carol C. Villegas

cvillegas@labaton.com, 5739893420@filings.docketbird.com, electroniccasefiling@labaton.com

- Thomas A. Zaccaro

tzaccaro@hueston.com, mgreen@hueston.com

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

(No manual recipients)