Lauren A. Ormsbee (*pro hac vice*)
Nicole M. Zeiss (*pro hac vice*)
David M. Saldamando (*pro hac vice*)
**LABATON KELLER SUCHAROW LLP**
140 Broadway
New York, NY 10005
Telephone: (212) 907-0700
Fax: (212) 818-0477
lormsbee@labaton.com
nzeiss@labaton.com
dsaldamando@labaton.com

*Attorneys for Lead Plaintiffs*
*and Lead Counsel for the Proposed Class*

*[Additional Counsel on Signature Page]*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SERGIO VAZQUEZ, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MASIMO CORPORATION, JOSEPH KIANI, MICAH YOUNG, BILAL MUHSIN, and ELI KAMMERMAN<br><br>Defendants. | Case No.: 3:23-cv-01546-DEB<br><br>**LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Judge: Hon. Daniel E. Butcher<br>Date: May 5, 2026<br>Time: 9:30 a.m.<br>Courtroom: 2B |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES..........................................................................................ii

NOTICE OF MOTION ..............................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES..........................................2

PRELIMINARY STATEMENT ................................................................................2

ARGUMENT................................................................................................................4

I.    AN AWARD OF ATTORNEYS' FEES OF 25% OF THE
      COMMON FUND IS FAIR AND REASONABLE......................................4

      A.    Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees
            from the Common Fund....................................................................4

      B.    A Reasonable Percentage of the Fund Recovered Is the
            Appropriate Method for Awarding Attorneys' Fees in Common
            Fund Cases ......................................................................................5

      C.    The Requested Attorneys' Fees Are Reasonable.............................6

      D.    Analysis Under the *Vizcaino* Factors Justifies a Fee Award of
            25% in this Case...............................................................................8

            1.    The Result Achieved Supports the Fee Request .....................8

            2.    The Substantial Risks of Litigation Support the Fee
                  Request ..................................................................................10

            3.    The Skill Required and the Quality of Work Performed
                  Support the Fee Request........................................................13

            4.    The Contingent Nature of the Fee and the Financial
                  Burden Carried by Counsel Support the Fee Request.............14

            5.    Reaction of the Settlement Class to Date and the
                  Approval of Lead Plaintiffs Support the Fee Request.............16

      E.    A Lodestar Cross-check Confirms that the Requested Fee
            Would Be Reasonable........................................................................18

II.   PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE
      AND WERE NECESSARY TO ACHIEVE THE BENEFIT
      OBTAINED..................................................................................................21

III.  LEAD PLAINTIFFS' REQUEST FOR REIMBURSEMENT
      PURSUANT TO 15 U.S.C § 78u-4(a)(4) ...................................................22

CONCLUSION...........................................................................................................24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Am. Apparel, Inc. S'holder Litig.*,
2014 WL 10212865 (C.D. Cal. July 28, 2014) ..........................................13, 14

*In re Amgen Inc. Sec. Litig.*,
2016 WL 10571773 (C.D. Cal. Oct. 25, 2016) ..........................................18, 23

*Andrews v. Plains All Am, Pipeline L.P.*,
2022 WL 4453864 (C.D. Cal. Sept. 20, 2022) ..............................................7, 8

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ..............................................................16

*In re Apple Inc. Device Performance Litig.*,
2023 WL 2090981 (N.D. Cal. Feb. 17, 2023) ...................................................5

*In re Apple Inc. Sec. Litig.*,
2024 WL 4246282 (N.D. Cal. Sept. 18, 2024) ................................................19

*Baker v. SeaWorld Ent., Inc.*,
2020 WL 4260712 (S.D. Cal. July 24, 2020) ..........................................6, 16, 17

*In re BankAtlantic Bancorp, Inc.*,
688 F.3d 713 (11th Cir. 2012) ..............................................................15

*Bateman Eichler, Hill Richards, Inc. v. Berner*,
472 U.S. 299 (1985) ......................................................................4, 15

*In re Bluetooth Headset Prods. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011) .................................................................6

*Boeing Co. v. Van Gemert*,
444 U.S. 472 (1980) .........................................................................4

*Brown v. China Integrated Energy Inc.*,
2016 WL 11757878 (C.D. Cal. July 22, 2016) ...............................................13

*In re Celera Corp. Sec. Litig.*,
2015 WL 1482303 (N.D. Cal. Mar. 31, 2015) ...............................................10

*Cullen v. RYVYL Inc.*,
2025 WL 3731036 (S.D. Cal. Dec. 19, 2025), *amended on other
grounds*, 2026 WL 374941 (S.D. Cal. Feb. 9, 2026) .....................................5, 23

*Dicker v. TuSimple Holdings, Inc.*,
2024 WL 5181968 (S.D. Cal. Dec. 18, 2024) ..................................................7

*In re Extreme Networks, Inc. Sec. Litig.*,
2019 WL 3290770 (N.D. Cal. July 22, 2019) ................................................18

*Farrar v. Workhorse Grp., Inc.*,
  2023 WL 5505981 (C.D. Cal. July 24, 2023) ...................................................20

*Ferreira v. Funko, Inc.*,
  2022 WL 22877154 (C.D. Cal. Dec. 13. 2022) .................................................23

*Fleming v. Impax Lab'y Inc.*,
  2022 WL 2789496 (N.D. Cal. July 15, 2022) .....................................................7

*In re Genuis Brands Int'l, Inc. Sec. Litig.*,
  97 F.4th 1171 (9th Cir. 2024).............................................................................12

*Glass v. UBS Fin. Servs. Inc.*,
  331 F. App'x. 452 (9th Cir. 2009).......................................................................5

*Hanlon v. Chrysler Corp.*,
  150 F. 3d 1011 (9th Cir. 1998) .......................................................................6, 8

*Harris v. Marhoefer*,
  24 F.3d 16 (9th Cir. 1994) ...........................................................................21, 22

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) .............................................................................................8

*In re Heritage Bond Litig.*,
  2005 WL 1594389 (C.D. Cal. June 10, 2005)................................13, 14, 16, 23

*In re Heritage Bond Litig.*,
  2005 WL 1594403 (C.D. Cal. June 10, 2005).....................................................8

*Hicks v. Stanley*,
  2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ...................................................24

*IBEW Local 697 Pension Fund v. Int'l Game Tech., Inc.*
  2012 WL 5199742 (D. Nev. Oct. 19, 2012).......................................................10

*In re Illumina, Inc. Sec. Litig.*,
  2021 WL 1017295 (S.D. Cal. Mar. 17, 2021)....................................................23

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) .......................................................4, 7, 8

*In re ImmunityBio, Inc. Sec. Litig.*,
  2025 WL 1686263 (S.D. Cal. June 16, 2025) ....................................................13

*Kendall v. Odonate Therapeutics, Inc.*,
  2022 WL 1997530 (S.D. Cal. June 6, 2022) ......................................................20

*In re Lucent Techs., Inc., Sec. Litig.*,
  327 F. Supp. 2d 426 (D.N.J. 2004)...............................................................17, 18

*In re M.D.C. Holdings Sec. Litig.*,
  1990 WL 454747 (S.D. Cal. Aug. 30, 1990) ...................................................5, 6

*Marshall v. Northrop Grumman Corp.*,
2020 WL 5668935 (C.D. Cal. Sept. 18, 2020)....................................................17

*Missouri v. Jenkins*,
491 U.S. 274 (1989) ............................................................................................18

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................8, 15

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)............................................................................7, 8

*In re Oracle Corp. Sec. Litig.*,
No. C 01-00988 SI, 2009 WL 1709050 (N.D. Cal. June 19, 2009),
*aff'd*, 627 F.3d 376 (9th Cir. 2010) ..............................................................15, 16

*In re Pac. Enters. Sec. Litig.*,
47 F.3d 373 (9th Cir. 1995) ................................................................................10

*In re Petco Corp. Sec. Litig.*,
2008 WL 11508458 (S.D. Cal. Sept. 2, 2008) ..............................................8, 15

*In re Progenity, Inc. Sec. Litig.*,
2026 WL 608310 (S.D. Cal. Mar. 4, 2026)...............................................7, 10, 18

*Redwen v. Sino Clean Energy, Inc.*,
2013 WL 12303367 (C.D. Cal. July 9, 2013) .............................................10, 11

*In re Regulus Therapeutics Inc. Sec. Litig.*,
2020 WL 6381898 (S.D. Cal. Oct. 30, 2020)....................................................10

*Robbins v. Koger Props., Inc.*,
116 F.3d 1441 (11th Cir. 1997)..........................................................................16

*Rutti v. Lojack Corp. Inc.*,
2012 WL 3151077 (C.D. Cal. July 31, 2012) ...................................................18

*In re Silver Wheaton Corp. Sec. Litig.*,
2020 WL 4581642 (C.D. Cal. Aug. 6, 2020) ......................................................7

*In re Snap Inc. Sec. Litig.*,
2021 WL 12356004 (C.D. Cal. Mar. 9, 2021) ....................................................7

*In Re Snap Inc. Sec. Litig.*,
2021 WL 667590 (C.D. Cal. Feb. 18, 2021)......................................................16

*In re Stable Rd. Acquisition Corp.*,
2024 WL 3643393 (C.D. Cal. Apr. 23, 2024)....................................................18

*Tait v. BSH Home Appliances Corp.*,
2015 WL 4537463 (C.D. Cal. July 27, 2015) .....................................................5

*Taylor v. Populus Grp., LLC*,
2023 WL 139898 (S.D. Cal. Jan. 9, 2023).........................................................14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) ...................................................................................4, 15

*Vataj v. Johnson*,
  2021 WL 5161927 (N.D. Cal. Nov. 5, 2021)......................................................10

*Vincent v. Hughes Air W. Inc.*,
  557 F.2d 759 (9th Cir. 1977).............................................................................4

*Vincent v. Reser*,
  2013 WL 621865 (N.D. Cal. Feb. 19, 2013)......................................................21

*Vinh Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014).......................................................6

*Vizcaino v. Microsoft Corp.*,
  290 F.3d 1043 (9th Cir. 2002).................................................................*passim*

*Wang v. Dada Nexus Ltd.*,
  2025 WL 1722997 (C.D. Cal. Mar. 14, 2025) ....................................................6

*In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*,
  19 F.3d 1291 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe
  Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994) .............................................4, 8

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
  364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................16

**Docketed Cases**

*In re Alphabet Inc. Sec. Litig.*,
  No. 18-cv-06245, slip op. (N.D. Cal. Sept. 30, 2024).......................................20

*In re Hewlett-Packard Co. Sec. Litig.*,
  No. SACV 11-1404, slip op. (C.D. Cal. Sept. 15, 2014) ....................................7

*In re Intuitive Surgical Sec. Litig.*,
  Case No. 5:13-cv-01920, slip op. (N.D. Cal. Dec. 20, 2018) ...........................24

*In re Opendoor Tech. Inc. Sec. Litig.*,
  No. 2:22-cv-01717-MTL, slip op. (D. Ariz. Jan. 7, 2026)..................................7

*York Cnty. on Behalf of the Cnty. of York Ret. Fund v. HP Inc., et al.*,
  No. 4:20-cv-07835- JSW, slip op. (N.D. Cal. Feb. 13, 2026)............................7

**Statutes**

15 U.S.C. § 78u-4(a)(4) .....................................................................................1, 22

15 U.S.C. § 78u-4(a)(6) .........................................................................................6

LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND EXPENSES
AND MEMO. OF POINTS AND AUTHORITIES IN SUPPORT                    23-cv-01546

v

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Lead Counsel, Labaton Keller Sucharow LLP ("Lead Counsel" or "Labaton"), on behalf of itself and Liaison Counsel Hagens Berman Sobol Shapiro LLP (together "Plaintiffs' Counsel"), will move this Court on May 5, 2026 at 9:30 a.m., before the Honorable Daniel E. Butcher, for an Order, pursuant to Fed. R. Civ. P. 23(e) and 54(d): (i) awarding attorneys' fees in the amount of 25% of the Settlement Fund, created through the settlement of this Action; (ii) awarding Litigation Expenses in the amount of $265,418.12, plus accrued interest, from the Settlement Fund; and (iii) approving Lead Plaintiffs' request for $3,702.74, in the aggregate, related to their representation of the Settlement Class, pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4).[1]

The motion is supported by the following Memorandum of Points and Authorities and the accompanying Declaration of Lauren A. Ormsbee in Support of (I) Motion for Final Approval of Class Action Settlement and Plan of Allocation and (II) Motion for an Award of Attorneys' Fees and Expenses, dated March 31, 2026 ("Ormsbee Decl."), with annexed exhibits, filed herewith.[2]

Pursuant to the Order granting preliminary approval of the Settlement (ECF No. 98), any objections to this motion must be received by April 14, 2026. A

---

[1] The terms of the Settlement are set forth in the Stipulation and Agreement of Settlement ("Stipulation"), dated August 14, 2025. ECF No. 97-2. All capitalized terms used herein are defined in the Stipulation and have the same meanings as set forth therein.

[2] The Ormsbee Declaration is an integral part of this motion and is incorporated herein by reference. For the sake of brevity, the Court is respectfully referred to it for, *inter alia*, a detailed description of the allegations and claims, the procedural history of the Action, the risks faced in pursuing the litigation, the efforts that led to a settlement, and a description of the services provided by Plaintiffs' Counsel. Citations to "¶" in this motion refer to paragraphs of the Ormsbee Declaration.

All references to "Ex." herein are references to exhibits attached to the Ormsbee Declaration. For clarity, citations to exhibits that themselves have attached exhibits, will be referenced as "Ex. _ - _." The first numerical reference is to the designation of the entire exhibit to the Ormsbee Declaration, and the second alphabetical reference is to the exhibit designation within the exhibit itself.

proposed Order will be submitted with Lead Counsel's reply papers on April 28, 2026, after the deadline for objections has passed.

## MEMORANDUM OF POINTS AND AUTHORITIES

### PRELIMINARY STATEMENT

As detailed in the Stipulation, the proposed Settlement, if approved by the Court, will resolve the Action in its entirety in exchange for a cash payment of $33,750,000. Lead Counsel and Lead Plaintiffs believe the Settlement is a very favorable result and it provides substantial and certain compensation to Settlement Class Members while avoiding the significant risks and delay associated with pursuing the Action through class certification, summary judgment, trial, and the inevitable appeals that would follow, including the risk that there might be no recovery at all.

In order to achieve this significant recovery, Lead Counsel vigorously litigated the claims in this securities class action for nearly two years on a fully contingent basis. In litigating the Action, Lead Counsel worked diligently on behalf of the class and expended extensive time and resources to ensure the best possible recovery for class members, all without any guarantee of recovery and compensation. As detailed in the Ormsbee Declaration, Lead Counsel, among other things: (i) conducted a rigorous investigation of the claims at issue, which included reviewing and analyzing Masimo's filings with the U.S. Securities and Exchange Commission ("SEC"), press releases, earnings call transcripts, and research reports, as well as contacting and interviewing many former employees of Masimo; (ii) prepared and filed a detailed amended complaint, which expanded the scope of the initial complaint by adding additional misrepresentations, disclosures, and other allegations in support of the claims at issue, and included the accounts of sixteen former Masimo employees; (iii) responded to Defendants' motion to dismiss and request for judicial notice; (iv) propounded discovery requests; (v) reviewed over

61,500 pages of documents produced in discovery; (vi) negotiated discovery parameters and discovery disputes; (vii) consulted with experts in the fields of loss causation, damages, and accounting; and (viii) exchanged extensive mediation material and participated in arm's-length mediated settlement discussions. ¶¶20-80.

For these efforts, Lead Counsel respectfully requests, on behalf of itself and Liaison Counsel, an award of attorneys' fees of 25% of the Settlement Fund, which includes accrued interest; Litigation Expenses in the amount of $265,418.12, plus accrued interest; and reimbursement in the aggregate amount of $3,702.74 to Lead Plaintiffs, pursuant to the PSLRA, for their efforts on behalf of the Settlement Class.

As discussed herein, as well as in the Ormsbee Declaration, Lead Counsel respectfully submits that the requested fee is fair and reasonable under the circumstances of this case given the excellent recovery obtained for the Settlement Class, the considerable litigation efforts undertaken by counsel, and the risks and challenges presented by the complex issues in this case. The request for attorneys' fees of 25% of the Settlement Fund is the benchmark in this Circuit, and the reasonable lodestar "multiplier" of approximately 1.8 confirms that the fee would be fair. Moreover, the requested fee and expenses have been approved by Lead Plaintiffs Boston Retirement System, Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan, and Central Pennsylvania Teamsters Pension Fund-Retirement Income Plan (collectively, "Lead Plaintiffs"). *See* Ex. 1 at ¶¶7, 11-12; Ex. 2 at ¶¶7, 1-12. Accordingly, it is respectfully submitted that the requested attorneys' fees, Litigation Expenses, and PSLRA request should be awarded in full.

## ARGUMENT

**I.     AN AWARD OF ATTORNEYS' FEES OF 25% OF THE COMMON FUND IS FAIR AND REASONABLE**

### A.     Plaintiffs' Counsel Are Entitled to an Award of Attorneys' Fees from the Common Fund

It is well settled that attorneys who represent a class and achieve a benefit for class members are entitled to a reasonable fee as compensation for their services. The Supreme Court has recognized that "a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980);[3] *see also In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1175 (S.D. Cal. 2007) (quoting *Boeing*, 444 U.S. at 478). Indeed, the Ninth Circuit has expressly reasoned that "a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees." *Vincent v. Hughes Air W., Inc.*, 557 F.2d 759, 769 (9th Cir. 1977). The purpose of this rule, known as the "common fund doctrine," is to prevent unjust enrichment so that "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig. (WPPSS)*, 19 F.3d 1291, 1300 (9th Cir. 1994), *aff'd in part*, *Class Plaintiffs v. Jaffe Schlesinger, P.A.*, 19 F.3d 1306 (9th Cir. 1994).

The Supreme Court has also emphasized that private securities actions, like this Action, are "an essential supplement to criminal prosecutions and civil enforcement actions" brought by the SEC. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 313 (2007); *accord Bateman Eichler, Hill Richards, Inc. v. Berner*, 472 U.S. 299, 310 (1985).

---

[3] All internal quotations and citations are omitted unless otherwise noted.

**B.**     **A Reasonable Percentage of the Fund Recovered Is the Appropriate Method for Awarding Attorneys' Fees in Common Fund Cases**

Although courts within the Ninth Circuit have discretion to employ either the lodestar or percentage method of calculating fees, in *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047-48 (9th Cir. 2002), the Ninth Circuit has expressly approved the use of the percentage method in common fund cases. *See Glass v. UBS Fin. Servs. Inc.*, 331 F. App'x. 452, 456-57 (9th Cir. 2009) (affirming district court's use of percentage of recovery method to award fee). The percentage-of-recovery method "is the most dominant" for "common fund cases" because "of its various advantages, including increased incentive for counsel to litigate and promotion of efficiency." *Cullen v. RYVYL Inc.*, 2025 WL 3731036, at *13 (S.D. Cal. Dec. 19, 2025), *amended on other grounds*, 2026 WL 374941 (S.D. Cal. Feb. 9, 2026); *Tait v. BSH Home Appliances Corp.*, 2015 WL 4537463, at *11 (C.D. Cal. July 27, 2015) ("The percentage-of-recovery method awarding attorneys' fees is preferable in cases with a common-fund recovery as it 'align[s] the lawyers' interests with achieving the highest award for class members, and reducing the burden on the courts that a complex lodestar calculation requires.'"); *In re M.D.C. Holdings Sec. Litig.*, 1990 WL 454747, at *10 (S.D. Cal. Aug. 30, 1990) ("It is clear that plaintiffs' counsel took significant risks throughout the litigation and produced a substantial common fund. In these circumstances it necessarily follows that plaintiffs' counsel are entitled to the award of a fee based on a percentage of the benefit conferred.").

Indeed, "the use of the percentage-of-the fund method in common fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel." *In re Apple Inc. Device Performance Litig.*, 2023 WL 2090981, at *12 (N.D. Cal. Feb. 17, 2023); *see also*

*M.D.C. Holdings*, 1990 WL 454747, at *8 ("[T]his Circuit expressly adopted the percentage of recovery approach for awards of fees in common fund cases.").

Further, the percentage of the fund method is appropriate in common fund cases where "the benefit to the class is easily quantified." *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011); *Baker v. SeaWorld Ent., Inc.*, 2020 WL 4260712, at *8 (S.D. Cal. July 24, 2020) ("Because the benefit to the class is easily quantified in common-fund settlements, the Ninth Circuit has allowed district courts within the Circuit to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar.").

The use of the percentage-of-recovery method also comports with the language of the PSLRA, which states that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount of any damages and prejudgment interest actually paid to the class." 15 U.S.C. § 78u-4(a)(6); *see Wang v. Dada Nexus Ltd.*, 2025 WL 1722997, at *10 (C.D. Cal. Mar. 14, 2025) (noting that "using the percentage method is proper in a securities fraud case"); *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) ("[T]he PSLRA has made percentage-of-recovery the standard for determining whether attorney's fees are reasonable.").

### C.    The Requested Attorneys' Fees Are Reasonable

"In applying the percentage of the fund method, the Ninth Circuit has established 25% as a 'benchmark' percentage, which may be adjusted depending on the circumstances of a case." *Vizcaino*, 290 F.3d at 1047; *see also Bluetooth*, 654 F.3d at 942 ("Courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure"); *Hanlon v. Chrysler Corp.*, 150 F. 3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a

benchmark for attorneys' fees."); *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) ("Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark is 25%."); *In re Progenity, Inc. Sec. Litig.*, 2026 WL 608310, at *6 (S.D. Cal. Mar. 4, 2026) ("the Ninth Circuit has determined a benchmark for a reasonable fee award is 25% of the common fund."); *Immune Response*, 497 F. Supp. 2d at 1175 ("The Court of Appeals for the Ninth Circuit has 'established a 25 percent 'benchmark' in percentage-of-the-fund cases….'").

Here, Lead Counsel requests the 25% benchmark as compensation. A review of fee awards in securities and other complex common fund cases within the Ninth Circuit shows that an award of 25% here would be very comparable to awards in similarly sized settlements. *See*, *e.g.*, *York Cnty. on Behalf of the Cnty. of York Ret. Fund v. HP Inc., et al.*, No. 4:20-cv-07835- JSW, slip op. at 1 (N.D. Cal. Feb. 13, 2026) (awarding 30% of $39 million settlement) (Ex. 9);[4] *Fleming v. Impax Lab'y Inc.*, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% of $33 million settlement); *In re Silver Wheaton Corp. Sec. Litig.*, 2020 WL 4581642, at *4 (C.D. Cal. Aug. 6, 2020) (awarding 30% of $41.5 million settlement); *In re Hewlett-Packard Co. Sec. Litig.*, No. SACV 11-1404, slip op. at 2 (C.D. Cal. Sept. 15, 2014) (awarding 25% of $57 million settlement) (Ex. 9); *In re Opendoor Tech. Inc. Sec. Litig.*, No. 2:22-cv-01717-MTL, slip op. at 8 (D. Ariz. Jan. 7, 2026) (approving 25% of $39 million settlement) (Ex. 9). Awards of 25% or more have also been awarded in much larger class action settlements in courts throughout the Ninth Circuit. *See, e.g.*, *Dicker v. TuSimple Holdings, Inc.*, 2024 WL 5181968, at *1 (S.D. Cal. Dec. 18, 2024) (awarding 25% of $189,000,0000 settlement); *In re Snap Inc. Sec. Litig.*, 2021 WL 12356004, at *1 (C.D. Cal. Mar. 9, 2021) (awarding 25% of $154,687,500 settlement); *Andrews v. Plains All Am, Pipeline L.P.*, 2022

---

[4] All unreported "slip" opinions are in a compendium annexed as Exhibit 9 to the Ormsbee Declaration.

WL 4453864, at *4 (C.D. Cal. Sept. 20, 2022) (awarding 32% of $230 million settlement).

As discussed below, Lead Counsel respectfully submits that the requested fee is warranted in this case, given the results achieved, the difficulty and complexity of the claims, the obstacles and challenges faced by Lead Counsel, and the time and labor dedicated by counsel.

### D.    Analysis Under the *Vizcaino* Factors Justifies a Fee Award of 25% in this Case

The guiding principle in the Ninth Circuit is that a fee award must be "reasonable under the circumstances." *WPPSS*, 19 F.3d at 1296; *see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008); *Immune Response*, 497 F. Supp. at 1175. In assessing attorneys' fees under the percentage method, the Court can consider the following factors: (i) the results achieved; (ii) the risk of litigation; (iii) the skill required and quality of the work; (iv) awards made in similar cases; and (v) the contingent nature of the fee and financial burden carried by counsel. *See Vizcaino*, 290 F.3d at 1048-50; *see also In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954-55 (9th Cir. 2015).

The Ninth Circuit has explained that these factors should not be used as a rigid checklist or weighed individually, but, rather, should be evaluated in light of the totality of the circumstances. *Hanlon,* 150 F.3d at 1029.

### 1.    The Result Achieved Supports the Fee Request

Courts have consistently recognized that the result achieved is a key factor to be considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"); *In re Petco Corp. Sec. Litig.*, 2008 WL 11508458, at *3 (S.D. Cal. Sept. 2, 2008) (same); *In re Heritage Bond Litig.,* 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) ("The result achieved is a significant factor to be considered in making a fee award."). Lead Counsel respectfully submits that the $33.75 million Settlement is

an excellent result for the Settlement Class, both quantitatively and when considering the risk of a lesser (or no) recovery if the case proceeded through class certification, summary judgment, trial, and appellate challenges.

According to NERA Economic Research, the $33.75 million recovery is more than twice the $12.5 million median recovery in mid-2025, when the Settlement was reached, and significantly more than the $17 million median recovery for all of 2025. *See* Edward Flores and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: H1 2025 Update* (NERA, Inc. 2025), Ex. 3 at 2; Edward Flores, Svetlana Starykh & Ivelina Velikova, *Recent Trends in Securities Class Action Litigation: 2025 Full-Year Review* (NERA, Inc. Jan. 2026), Ex. 4 at 24.

As discussed in the Ormsbee Declaration and Lead Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation and Memorandum of Points and Authorities in Support ("Settlement Memorandum"), Lead Counsel submits that the Settlement also returns a favorable percentage of the class's alleged damages. ¶10. As explained further *infra*, Lead Plaintiffs' damages expert has estimated that maximum damages attributable to the corrective disclosures during the Class Period (May 4, 2022 through August 8, 2023) were approximately $755.5 million, depending on the trading model and assumptions used. However, if disaggregation of confounding information was required, damages could have been reduced to approximately $272.9 million, a reduction of more than 60%. ¶¶110-113. Accordingly, the Settlement recovers a range of approximately 4.5% to 12.4% of these estimated damages. ¶10. According to NERA's full-year 2025 report, for cases with total NERA-defined investor losses of between $200 million and $399 million, the median percentage of recovery from 2016 to 2025 was 2.7% of estimated losses. *See* Ex. 4 at 27. For cases with NERA

losses of $600 million to $999 million, the median percentage of recovery during this time period was 1.7%. *Id*.

Within the securities class action landscape, Lead Plaintiffs and Lead Counsel believe this is an excellent outcome. Courts in this Circuit have approved settlements with comparable or lower percentage recoveries than obtained here. *See, e.g.*, *Progenity*, 2026 WL 608310, at *8 (granting final approval and request for 25% attorneys' fees where settlement represented approximately 4.8% of class-wide damages, ECF No. 99-1); *Vataj v. Johnson*, 2021 WL 5161927, at *6 (N.D. Cal. Nov. 5, 2021) (approving settlement recovering "slightly more than 2% of [] estimated damages" and noting that it was "consistent with the 2-3% average recovery that the parties identified in other securities class action settlements"); *In re Regulus Therapeutics Inc. Sec. Litig.*, 2020 WL 6381898, at *6 (S.D. Cal. Oct. 30, 2020) (approving settlement recovering 1.99% of maximum estimated damages and finding that "[o]ther courts have found similar recoveries to be fair and reasonable"); *IBEW Local 697 Pension Fund v. Int'l Game Tech.*, *Inc.* 2012 WL 5199742, at *3 (D. Nev. Oct. 19, 2012) (approving settlement representing "about 3.5% of the maximum damages that Plaintiffs believe[d] could be recovered").

In sum, Lead Counsel respectfully submits that the very favorable recovery here supports approval of the fee request.

### 2. The Substantial Risks of Litigation Support the Fee Request

The risk involved in litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 (noting "[r]isk is a relevant circumstance" in awarding attorneys' fees); *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379, n.10 (9th Cir. 1995) (finding that attorneys' fees were justified "because of the complexity of the issues and the risks"); *see also In re Celera Corp. Sec. Litig.*, 2015 WL 1482303, at *5 (N.D. Cal. Mar. 31, 2015) ("As with any securities litigation case, it would be difficult for Lead Plaintiff to prove loss causation and damages at trial."); *Redwen*

*v. Sino Clean Energy, Inc.*, 2013 WL 12303367, at \*6 (C.D. Cal. July 9, 2013) (noting that "Courts experienced with securities fraud litigation 'routinely recognize that securities class actions present hurdles to proving liability that are difficult for plaintiffs to clear'").

As set forth in Section VI. of the Ormsbee Declaration, Lead Counsel confronted a number of significant legal and factual challenges during the course of the litigation, including establishing the fundamental element of material falsity of the alleged misstatements and omissions. ¶¶94-103. More specifically, the Court sustained two categories of false and misleading statements: the Future Performance Statements and one Sound Acquisition Statement. ¶94. Each category of allegedly false statements and omissions faced serious counter-arguments from Defendants that the statements were inactionable, either because they were forward-looking and protected by the PSLRA's Safe Harbor provision or they were puffery. ¶¶96-103. Lead Counsel would have countered, and marshalled evidence supporting, that even if the alleged statements were deemed forward-looking, the PSLRA Safe Harbor was inapplicable because (i) the associated cautionary language was meaningless, and (ii) Defendants had actual knowledge of the falsity of their misstatements. ¶97.

In addition to Defendants' anticipated falsity arguments, Defendants also likely would have continued to argue that Lead Plaintiffs could not sufficiently establish scienter at summary judgment and trial. ¶¶104-108. Lead Counsel's efforts were focused on undermining Defendants' likely proffers of documents and testimony demonstrating that they relied upon financial statements prepared by other corporate employees and blessed by the Company's auditors. ¶106. At summary judgment (or at trial) this Court (or a jury) may have credited Masimo's potential competing inference that—according to Defendants—Masimo acted swiftly to report lower than expected earnings and adjust its full year guidance,

negating an inference of scienter or intent to defraud. *Id.* Additionally, should the Court or jury have credited Defendants' argument that certain of the statements reflected mere optimism by the Masimo executives, Defendants also would have a strong likelihood of demonstrating that there was no overall intent to deceive the market, and rather, Defendants were merely overly optimistic when making their statements. ¶107.

As discussed above, a key challenge faced by Lead Counsel was establishing loss causation and damages. Defendants would likely continue to maintain that the two alleged disclosures were not corrective or, at the very least, that damages should be reduced significantly because a portion of the alleged stock price declines was the result of the disclosure of confounding information that was unrelated to the alleged misstatements and omissions. ¶¶109-113. Lead Plaintiffs' loss causation theory was premised on proving two corrective disclosures: (1) the July 17, 2023 public preannouncement of its Q2 2023 earnings (revealing a substantial cut to its full-year guidance); and (2) the August 8, 2023 release of its final quarterly results for Q2 2023. ¶110. Defendants would have likely argued that these two events did not correct—whether in full or in part—the falsity of Defendants' prior misstatements (*i.e.*, the Future Performance Statements and the Sound Acquisition Statement), and thus, there was no "causal connection"[5] between the fraud and the loss. *Id.*

Lead Plaintiffs' damages expert estimated maximum aggregate damages to be approximately $755 million, if both corrective disclosures were maintained. ¶110. However, Lead Counsel would have continued to work diligently to counter Defendants' likely arguments that Lead Plaintiffs' damages expert would be unable to disaggregate the corrective disclosures' impact on Masimo's stock price and the presentation of complex expert evidence purportedly showing that damages were

---

[5] *In re Genuis Brands Int'l, Inc. Sec. Litig.*, 97 F.4th 1171, 1183 (9th Cir. 2024).

much smaller, or none at all. *Id.* If disaggregation of confounding information was required, damages could have been reduced to approximately $272.9 million, a reduction of more than 60%. ¶¶110-113.

Developing this type of intricate and complex factual and expert evidence takes dedication and skill. There were substantial risks that the Court or the jury might not agree with Lead Plaintiffs' evidence, particularly with respect to these expert-driven issues, resulting in no recovery for the Settlement Class and no attorneys' fees for counsel. *See In re ImmunityBio, Inc. Sec. Litig.*, 2025 WL 1686263, at *14 (S.D. Cal. June 16, 2025) ("The substantial risks of no recovery remains if Lead Plaintiff continued to litigate, including the difficulty of establishing scienter and the involvement of expert witnesses on highly technical subject matters."); *Brown v. China Integrated Energy Inc*., 2016 WL 11757878, at *11 (C.D. Cal. July 22, 2016) ("Plaintiffs acknowledge that much of their evidence would have been expert witness testimony that may not have been credited by the factfinder ... and they may have difficulty collecting any judgment they might obtain against Defendants" meaning "the high risks associated with this litigation weigh in favor of awarding Lead Counsel's requested fee.").

Lead Counsel worked diligently to achieve a significant result for the Settlement Class in the face of these very real risks. Under these circumstances, the requested fee is appropriate.

### 3. The Skill Required and the Quality of Work Performed Support the Fee Request

Courts have recognized that "[p]rosecuting complex class actions takes skill and experience, and this is particularly true in securities class actions because the PSLRA makes it difficult to get past the motion to dismiss stage." *ImmunityBio*, 2025 WL 1686263, at *14; *In re Heritage Bond Litig.*, 2005 WL 1594389, at *12 ("prosecution and management of a complex national class action requires unique legal skills and abilities"); *In re Am. Apparel, Inc. S'holder Litig.,* 2014 WL

10212865, at *22 (C.D. Cal. July 28, 2014) (approving fee request and noting that the "difficulty of securities litigation generally [] required skilled counsel familiar with the relevant statutes and case law).

Lead Counsel—a firm that practices extensively in the highly challenging field of securities litigation and has skillfully litigated these types of cases in courts across the country through trial (*see* firm resume of Labaton Keller Sucharow LLP, Ex. 7-D) – engaged in a rigorous and concerted effort to obtain the maximum recovery for the Settlement Class. This case required a wide ranging and deep investigation, a thorough understanding of complex factual and legal issues, fact discovery, and the skill to respond to the host of challenges that Defendants raised during the litigation. *See generally* Ormsbee Declaration. Counsel's efforts have resulted in a notable result for the Settlement Class, particularly in light of the challenges that Defendants were prepared to raise at class certification, summary judgment, and trial.

Accordingly, the quality of the legal services provided over the course of this case, together with Lead Counsel's substantial experience and commitment to the litigation, support the requested fee.

The quality of opposing counsel is also important in evaluating the quality of the work done by Plaintiffs' Counsel. *See, e.g.*, *Taylor v. Populus Grp., LLC*, 2023 WL 139898, at *3 (S.D. Cal. Jan. 9, 2023) ("The quality of opposing counsel is relevant to evaluating the skill required and the quality of Class Counsel's work."); *see also In re Heritage Bond*, 2005 WL 1594389, at *12. Here, Lead Counsel was opposed by very skilled and highly respected lawyers, with a well-deserved reputation for vigorous advocacy in the defense of complex civil cases such as this.

**4.   The Contingent Nature of the Fee and the Financial Burden Carried by Counsel Support the Fee Request**

It has long been recognized that attorneys are entitled to a larger fee when their compensation is contingent in nature. *See Vizcaino*, 290 F.3d at 1048-50;

*Petco*, 2008 WL 11508458, at *3 (approving 25% fee award "considering the entire circumstances of this litigation," including "the contingent nature of the fee involved substantial risk for Lead Plaintiff's counsel"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 ("The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee.").

As mentioned, the Supreme Court has found that class actions such as this provide "'a most effective weapon in the enforcement' of the securities laws and are 'a necessary supplement to [SEC] action.'" *Bateman Eichler*, 472 U.S. at 310; *Tellabs,* 551 U.S. at 318-19 (same). Yet, vigorous private enforcement of the federal securities laws can only occur if private plaintiffs can obtain some semblance of parity in representation with that available to large corporate defendants. If this important public policy is to be carried out, courts should award fees that will adequately compensate private plaintiffs' counsel, taking into account the enormous risks undertaken with a clear view of the economics of a securities class action.

Indeed, there have been many class actions in which plaintiffs' counsel took on the risk of pursuing claims on a contingency basis, expended thousands of hours and dollars, yet received no remuneration whatsoever despite their diligence and expertise. For example, in *In re BankAtlantic Bancorp, Inc.*, tried by Labaton, a jury rendered a verdict in plaintiffs' favor on liability in 2010. However, in 2011, the district court granted defendants' motion for judgment as a matter of law and entered judgment in favor of defendants on all claims. *See* No. 07–61542–CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011). In 2012, the Eleventh Circuit affirmed the district court's ruling, finding that there was insufficient evidence to support a finding of loss causation. *See In re BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *see also In re Oracle Corp. Sec. Litig.*, No. C 01-00988 SI, 2009 WL

1709050 (N.D. Cal. June 19, 2009), *aff'd*, 627 F.3d 376 (9th Cir. 2010) (granting summary judgment to defendants after eight years of litigation, and after plaintiff's counsel incurred over $6 million in expenses and worked over 100,000 hours, representing a lodestar of approximately $48 million).

Lead Counsel is aware of many other hard-fought lawsuits where excellent professional efforts by members of the plaintiff's bar produced no fee for counsel. *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing $81 million jury verdict and dismissing case with prejudice); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (overturning plaintiffs' verdict obtained after two decades of litigation). As the court in *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980 (D. Minn. 2005), recognized, "[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy." *Id.* at 994.

Here, because Plaintiffs' Counsel's fee was entirely contingent, the only certainty was that there would be no fee without a successful result and that such result would only be realized after significant amounts of time, effort, and expense had been expended. Unlike counsel for defendants, who are paid and reimbursed for their expenses on a current basis, Plaintiffs' Counsel have received no compensation for their efforts during the course of the Action.

### 5.    Reaction of the Settlement Class to Date and the Approval of Lead Plaintiffs Support the Fee Request

Although not articulated specifically in *Vizcaino*, district courts in the Ninth Circuit also consider the reaction of the class when deciding whether to award the requested fee. *See In re Heritage Bond*, 2005 WL 1594389, at *15 ("The presence or absence of objections . . . is also a factor in determining the proper fee award."); *see also In Re Snap Inc. Sec. Litig.,* 2021 WL 667590, at *4 (finding the minimal reaction from the class supports an award of the requested fee); *SeaWorld*, 2020

WL 4260712, at *9 (finding the fact that "no objections to the settlement have been made" supports the "reasonableness of the requested fee award"); *Marshall v. Northrop Grumman Corp.,* 2020 WL 5668935, at *6 (C.D. Cal. Sept. 18, 2020) (considering response from the class, including that there were very few objections, as a factor weighing in favor of the requested fee).

Here, 45,460 Postcard Notices reporting the maximum amount of the Fee and Expense Application and 37,605 emails with links to the Settlement Website have been sent to potential Settlement Class Members and their brokers, banks, and other nominees. *See* Declaration of Adam D. Walter Regarding (A) Mailing of the Postcard Notice; (B) Publication of the Summary Notice; and (C) Report on Requests for Exclusion and Objections Received to Date, dated March 27, 2026, Ex. 5 ("Mailing Decl.") at ¶¶3-10. The long-form Notice, Postcard Notice, and Claim Form, along with the Stipulation and other relevant documents, were made available on a website dedicated to the Settlement. *Id.* at ¶12. Additionally, the Court-approved Summary Notice was published in *The Wall Street Journal* and transmitted over the internet using *PR Newswire*. *Id.* at ¶¶11.

Although the April 14, 2026 objection deadline has not yet passed, to date no objections to the requested amount of attorneys' fees and expenses, or any of the relief requested, have been filed with the Court or received by Lead Counsel.[6]

In addition, Lead Plaintiffs, which took an active role in the litigation and actively supervised the work of Lead Counsel, support the approval of the requested fee and expenses based on the result obtained, the efforts of Lead Counsel, and the risks in the Action. *See* Ex. 1, Smyth Decl. at ¶¶3-5, 7, 11-12; Ex. 2, Samolewicz Decl. at ¶¶3-5, 7, 11-12. Lead Plaintiffs' endorsement of the Fee and Expense Application further supports its approval. *See, e.g., In re Lucent Techs., Inc., Sec. Litig.,* 327 F. Supp. 2d 426, 442 (D.N.J. 2004) ("Significantly, the Lead Plaintiffs,

---

[6] Lead Counsel will address any future objections in its reply papers, which will be filed with the Court on or before April 28, 2026.

both of whom are institutional investors with great financial stakes in the outcome of the litigation, have reviewed and approved Lead Counsel's fees and expenses request.").

### E.    A Lodestar Cross-check Confirms that the Requested Fee Would Be Reasonable

Although an analysis of counsel's lodestar is not required for an award of attorneys' fees in the Ninth Circuit, it is often considered in order to ensure that an awarded fee would be reasonable. *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *9 (C.D. Cal. Oct. 25, 2016) ("Although an analysis of the lodestar is not required for an award of attorneys' fees in the Ninth Circuit, a cross-check of the fee request with a lodestar amount can demonstrate the fee request's reasonableness."); *Progenity*, 2026 WL 608310, at *6 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."); *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *10 (N.D. Cal. July 22, 2019) (noting that "lodestar may provide a useful perspective on the reasonableness of a given percentage award").

"A lodestar cross-check first computes the plaintiffs' attorneys' reasonable hourly rate for the litigation and multiplies that rate by the number of hours dedicated to the case." *In re Stable Rd. Acquisition Corp.*, 2024 WL 3643393, at *15. Plaintiffs' Counsel's lodestar here, derived by multiplying the hours worked on the litigation by each attorney and professional by their current hourly rates,[7] is $4,693,636.00. *See* Declaration of Lauren A. Ormsbee on behalf of Labaton Keller Sucharow LLP, dated March 30, 2026 ("Labaton Fee and Expense Decl."), Ex. 7-A; Declaration of Lucas E. Gilmore on behalf of Hagens Berman Sobol Shapiro LLP, dated March 25, 2026 ("Hagens Berman Fee and Expense Decl."), Ex. 8-A;

---

[7] The Supreme Court and other courts have held that the use of current rates is proper since such rates compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989); *Rutti v. Lojack Corp. Inc.*, 2012 WL 3151077, at *11 (C.D. Cal. July 31, 2012) ("it is well-established that counsel is entitled to current, not historic, hourly rates") (citing *Jenkins*, 491 U.S. at 284).

Ex. 10 (Summary Table of Lodestars and Expenses). As detailed in the Ormsbee Declaration and in the accompanying fee declarations, more than 8,200 hours of attorney and professional time were expended for the benefit of the Settlement Class. *See* Ex. 10. Throughout the litigation, Lead Counsel implemented effective project management and sought to maintain an appropriate level of staffing on all tasks.

Plaintiffs' Counsel's rates here ranged from $1,050 to $1,450 per hour for partners, $825 to $1,025 per hour for of counsels, $400 to $700 for associates, $350 to $550 for staff attorneys and other attorneys, and $175 to $455 for paralegals. *See* Exs. 7-A, 8-A. Lead Counsel submits that these rates are reasonable. *See, e.g., In re Apple Inc. Sec. Litig.,* 2024 WL 4246282, at *5 fn.3 (N.D. Cal. Sept. 18, 2024) (finding the rates for counsel, including Labaton, "are reasonable and commensurate with those charged by attorneys with similar experience in the market"). They are also comparable to or less than those used by peer defense-side law firms litigating matters of similar magnitude and complexity. Sample defense firm rates in 2025, gathered by Labaton annually from bankruptcy court filings nationwide, often exceeded these rates. ¶158; Ex. 11.

The substantial work of Plaintiffs' Counsel was necessary for the success of the litigation. As set forth in the Ormsbee Declaration, Lead Plaintiffs and their counsel: (i) conducted a rigorous investigation of the claims at issue, which included reviewing and analyzing Masimo's SEC filings, press releases, earnings call transcripts, and research reports, as well as contacting and interviewing many former employees of Masimo; (ii) prepared and filed a detailed amended complaint, which expanded the scope of the initial complaint by adding additional misrepresentations, disclosures, and other allegations in support of the claims at issue, and included the accounts of sixteen former Masimo employees; (iii) responded to Defendants' motion to dismiss and request for judicial notice; (iv)

propounded discovery requests; (v) reviewed over 61,500 pages of documents produced in discovery; (vi) negotiated discovery parameters and discovery disputes; (vii) consulted with experts in the fields of loss causation, damages, and accounting; and (viii) exchanged extensive mediation material and participated in arm's-length mediated settlement discussions. *See generally* Ormsbee Decl. at §§III.-V. The substantial time devoted to the Action reflects the dedicated effort needed to prosecute the claims and bring them to a favorable resolution.

Here, the requested fee of 25%, if awarded, would represent a reasonable "multiplier" of 1.8 of Plaintiffs' Counsel's total lodestar. ¶159. The Ninth Circuit has recognized that attorneys in common fund cases are frequently awarded an enhancement multiple of their lodestar, rewarding them "for taking the risk of nonpayment by paying them a premium over their normal hourly rates for winning contingency cases." *Vizcaino,* 290 F.3d at 1051. In *Vizcaino,* the Ninth Circuit affirmed a 3.65 multiplier, noting that a range of multiples from 1.0 to 4.0 are frequently awarded. *Id.*; *see also Kendall v. Odonate Therapeutics, Inc.*, 2022 WL 1997530, at *7 (S.D. Cal. June 6, 2022) (awarding fee in $12.75 million settlement representing a 2.36 multiplier); *In re Alphabet Inc. Sec. Litig.,* No. 18-cv-06245, slip op. at 12-13 (N.D. Cal. Sept. 30, 2024) (approving fee in $350 million settlement representing a 4.58 multiplier) (Ex. 9); and *Farrar v. Workhorse Grp., Inc.*, 2023 WL 5505981, at *9 (C.D. Cal. July 24, 2023) (approving fee in $35 million settlement representing a 3.14 multiplier).

Furthermore, additional work will be required of Lead Counsel on an ongoing basis, including: preparation for, and participation in, the final approval hearing; and supervising the claims administration process being conducted by the Claims Administrator. However, Lead Counsel will not seek payment for this additional work.

It is respectfully submitted that the lodestar cross-check here confirms that the requested fee would be reasonable.

## II. PLAINTIFFS' COUNSEL'S EXPENSES ARE REASONABLE AND WERE NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Lead Counsel's application includes a request for payment of $265,418.12 in Litigation Expenses, which were reasonably incurred and necessary to prosecute the Action. These expenses are explained in Plaintiffs' Counsel's firm fee and expense declarations filed herewith. *See* Exs. 7-C, 8-C. This amount is below the $400,000 maximum that the notices informed potential Settlement Class Members counsel may apply for. To date, there have been no objections to this request.

"Attorneys who created[] a common fund are entitled to the reimbursement of expenses they advanced for the benefit of the class." *Vincent v. Reser,* 2013 WL 621865, at *5 (N.D. Cal. Feb. 19, 2013). In assessing whether counsel's expenses are compensable in a common fund case, courts look at whether the particular costs are of the type that would normally be paid by a fee-paying client in the private non-contingent marketplace. *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) ("Harris may recover as part of the award of attorney's fees those out-of-pocket expenses that 'would normally be charged to a fee paying client.'"). The amount of Litigation Expenses here is consistent with the stage of the litigation.

The largest component of the expenses relates to the retention of Lead Plaintiffs' experts. These costs total $81,593.75 or approximately 31% of Plaintiffs' Counsel's expenses. ¶165. As noted above, Lead Counsel retained economic experts and an accounting expert to provide analysis of the complex issues underlying the key elements of the Lead Plaintiffs' claims (loss causation, damages, falsity, and materiality) and Defendants' purported defenses (negative causation and falsity). One expert firm also prepared the proposed Plan of Allocation for the

proceeds of the Settlement. These experts were essential to the prosecution of the Action. *Id.*

Lead Counsel also worked closely with potential witnesses who were cited in the Complaint. Lead Counsel retained individual counsel for these witnesses, incurring $45,385.02 (17% of total expenses) in expenses. Lead Counsel also consulted with one of the witnesses given their familiarity with and expertise concerning the internal controls and accounting matters at issue in the Action, incurring $7,600 in expenses. ¶166.

The costs of electronic discovery totaled $13,601.45 or approximately 5% of total expenses. Lead Counsel retained third-party vendors to host the document productions in their sophisticated electronic databases and litigation support platforms. ¶167.

Lead Plaintiffs' share of the costs in connection with the extensive mediation efforts of the Mediator, David M. Murphy, Esq., was $45,852.50 (17% of total expenses). ¶168.

The other expenses for which Lead Counsel seeks payment are the types of expenses that are necessarily incurred in complex commercial litigation. *See* Exs. 7-C; 8-C. It is respectfully submitted that Plaintiffs' Counsel's expenses were reasonable and necessary to the litigation of the Action and should be approved.

## III.   LEAD PLAINTIFFS' REQUEST FOR REIMBURSEMENT PURSUANT TO 15 U.S.C § 78U-4(A)(4)

The PSLRA, 15 U.S.C. § 78u-4(a)(4), permits an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." Here, Boston Retirement System is seeking $2,307.50 related to the approximately 25 hours it dedicated to the Action (Ex. 1 at ¶¶8-10), and Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan and Central Pennsylvania Teamsters Pension

Fund-Retirement Income Plan is seeking $1,395.24 related to the approximately 12 hours it dedicated to the Action (Ex. 2 at ¶¶8-10). "Courts have the discretion under the PSLRA to grant payments to class representatives." *Ferreira v. Funko, Inc.*, 2022 WL 22877154, at *12 (C.D. Cal. Dec. 13. 2022) (citing *In re Heritage Bond Litig.*, 2005 WL 1594389, at *4).

As explained in their declarations, Lead Plaintiffs, since 2023, were in regular contact with Lead Counsel concerning the issues of law and fact in the case, and the overall strategies for the prosecution of the Action, through various phone calls, in-person meetings, and emails. Lead Plaintiffs also completed certifications and declarations in support of case filings, and received and reviewed material court filings, in both draft and final form, including complaints and the briefing for Defendants' motion to dismiss. Further, Lead Plaintiff Boston Retirement attended the May 2025 mediation, and both Lead Plaintiffs were consulted over the course of the settlement discussions with Defendants, and ultimately gave Lead Counsel settlement authority for, and approved, the Settlement. Ex. 1 at ¶¶4-5; Ex. 2 at ¶¶4-5.

Many cases have approved reasonable payments to compensate representatives for the time, effort, and expenses they devoted on behalf of a class. *See, e.g., Cullen*, 2025 WL 3731036, at *16 (granting request for $5,000 incentive award to lead plaintiff for similar efforts); *In re Illumina, Inc. Sec. Litig.*, 2021 WL 1017295, at *8 (S.D. Cal. Mar. 17, 2021) (awarding $25,000 to one plaintiff and $1,000 each to two other plaintiffs and finding that "Incentive awards … are discretionary and are intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action ..."); *In re Amgen Inc. Sec. Litig.*, 2016 WL 10571773, at *10 (reasoning that "courts have awarded reasonable payments to compensate class representatives for the time, effort, and expenses devoted to litigating on behalf of

the class" and awarding the State of Connecticut $30,983.99); *In re Intuitive Surgical Sec. Litig.*, Case No. 5:13-cv-01920, slip op. at 4 (N.D. Cal. Dec. 20, 2018) (awarding $49,754.18 and $9,100.00 to class representatives) (Ex. 9).

As explained in one decision, courts "award such costs and expenses both to reimburse the named plaintiffs for expenses incurred through their involvement with the action and lost wages, as well as to provide an incentive for such plaintiffs to remain involved in the litigation and to incur such expenses in the first place." *Hicks v. Stanley*, 2005 WL 2757792, at *10 (S.D.N.Y. Oct. 24, 2005).

Lead Counsel respectfully submits that the amounts sought here are reasonable based on Lead Plaintiffs' active involvement in the Action.

## CONCLUSION

For all the foregoing reasons, Lead Counsel respectfully requests that the Court award: (i) attorneys' fees of 25% of the Settlement Fund; (ii) Litigation Expenses of $265,418.12, plus accrued interest; and (iii) $2,307.50 to Boston Retirement System and $1,395.24 to Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan and Central Pennsylvania Teamsters Pension Fund-Retirement Income Plan, pursuant to the PSLRA. A proposed order will be submitted with Lead Counsel's reply papers, after the April 14, 2026 deadline for objections has passed.

Dated: March 31, 2026

Respectfully submitted,

**LABATON KELLER SUCHAROW LLP**

By: /s/ *Lauren A. Ormsbee*
Lauren A. Ormsbee (*pro hac vice*)
Nicole M. Zeiss (*pro hac vice*)
David Saldamando (*pro hac vice*)
140 Broadway
New York, New York 10005
Tel: (212) 907-0700
Fax: (212) 818-0477
lormsbee@labaton.com
nzeiss@labaton.com
dsaldamando@labaton.com

*Attorneys for Lead Plaintiffs Boston Retirement System, Central Pennsylvania Teamsters Pension Fund-Defined Benefit Plan and Central Pennsylvania Teamsters Pension Fund-Retirement Income Plan 1987, and Lead Counsel for the Proposed Class*

Lucas E. Gilmore (SBN 250893)
**HAGENS BERMAN SOBOL SHAPIRO LLP**
715 Hearst Avenue, Suite 300
Berkeley, CA 94710
Tel: (510) 725-3000
Fax: (510) 725-3001
lucasg@hbsslaw.com

*Liaison Counsel for the Proposed Class*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 31, 2026, I authorized the electronic filing of the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List served via ECF on all registered participants only.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on March 31, 2026

/s/ *Lauren A. Ormsbee*
Lauren A. Ormsbee

Mailing Information for a Case 3:23-cv-01546-DEB *Vazquez v. Masimo Corp. et al.*

Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- Adam Marc Apton

aapton@zlk.com

- Marshall A. Camp

mcamp@hueston.com, docketing@hueston.com, mschneider@hueston.com

- Robert James Ellison

robert.ellison@lw.com, robert-ellison-6864@ecf.pacerpro.com

- James M. Fee

jfee@labaton.com, 7935099420@filings.docketbird.com, ElectronicCaseFiling@labaton.com

- Christine M. Fox

cfox@labaton.com, ndonlon@labaton.com, vvibar@labaton.com, ElectronicCaseFiling@labaton.com, kjudd@labaton.com, 6312349420@filings.docketbird.com

- Robert Matthew Garsson

robgarsson@quinnemanuel.com

- Lucas E. Gilmore

lucasg@hbsslaw.com, sf_filings@hbsslaw.com

- Matthew J. Grier

mgrier@labaton.com, ElectronicCaseFiling@labaton.com, 2099396420@filings.docketbird.com

- John Charles Hueston

jhueston@hueston.com, docketing@hueston.com, lhiles@hueston.com

- Harry Arthur Olivar, Jr.

harryolivar@quinnemanuel.com

- Lauren Amy Ormsbee

LOrmsbee@labaton.com, 4457202420@filings.docketbird.com

- Jennifer Pafiti

jpafiti@pomlaw.com, efile@pomlaw.com

- Jeffrey F. Robertson

jeffrey.robertson@srz.com, courtfilings@srz.com, evan.melluzzo@srz.com, ecf-1822127e5d6b@ecf.pacerpro.com

- Valerie Suzanne Roddy

valerieroddy@quinnemanuel.com, ecf-8cc00a9b9174@ecf.pacerpro.com, calendar@quinnemanuel.com

- David Saldamando

dsaldamando@labaton.com

- Lisa Marie Strejlau

lstrejlau@labaton.com

- Michael E. Swartz

michaelswartz@quinnemanuel.com, michael-swartz-3349@ecf.pacerpro.com

- Jonathan D. Uslaner

JonathanU@blbglaw.com, managingclerk@blbglaw.com

- Carol C. Villegas

cvillegas@labaton.com, 5739893420@filings.docketbird.com, electroniccasefiling@labaton.com

- Thomas A. Zaccaro

tzaccaro@hueston.com, mgreen@hueston.com

MAILING LIST                                                   23-cv-01546

**Manual Notice List**

The following is the list of attorneys who are not on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

(No manual recipients)